1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

9
10

EVAN BROWN, Individually and on Behalf
of All Others Similarly Situated,

11

                            Plaintiff,

12

        v.

13
14
15
16
17

PAPA MURPHY'S HOLDINGS INC.,
JEAN M. BIRCH, WELDON SPANGLER,
NOAH A. ELBOGEN, BENJAMIN
HOCHBERG, YOO JIN KIM,
ALEXANDER C. MATINA, DAVID
MOUNTS, JOHN SHAFER,
KATHERINE L. SCHERPING, ROB
WEISBERG and NORTH POINT
ADVISORS LLC,

                            Defendants.

18

No. _____

CLASS ACTION COMPLAINT

DEMAND FOR JURY TRIAL

1. VIOLATIONS OF SECTION 14(e)
   OF THE SECURITIES EXCHANGE
   ACT OF 1934

2. VIOLATIONS OF SECTION 20(a)
   OF THE SECURITIES EXCHANGE
   ACT OF 1934

19
20
21

        Plaintiff Evan Brown ("Plaintiff"), by his undersigned attorneys, alleges upon personal

knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

22

## NATURE OF THE ACTION

23
24
25
26

        1.        This action is brought as a class action by Plaintiff against Papa Murphy's

Holdings Inc. ("Papa Murphy's" or the "Company"), the Company's financial advisor, North

Point Advisors LLC ("North Point"), and the members of the Company's board of directors

(collectively referred to as the "Board" or the "Individual Defendants" and, together with Papa

Murphy's and North Point, the ("Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78n(e) and 78t(a), respectively.  Plaintiff's claims arise in connection with the tender offer ("Tender Offer") by MTY Food Group Inc., through its subsidiaries (collectively "MTY"), used to acquire all of the issued and outstanding shares of Papa Murphy's (the "Transaction").

2.     On April 10, 2019, Papa Murphy's entered into an agreement and plan of merger (the "Merger Agreement"), whereby shareholders of Papa Murphy's common stock will receive $6.45 in cash for each share of Papa Murphy's stock they own (the "Offer Price").

3.     On April 25, 2019, in order to convince Papa Murphy's shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement" or "RS") with the Securities and Exchange Commission ("SEC"). Therein, the Defendants touted the fairness of the Offer Price to the Company's shareholders, but misled investors with respect to the Company's financial projections, the value of the Company, and the fairness of the Offer Price.

4.     Defendant North Point created a downwardly revised set of projections (the "Base Case") to illegitimately lower management's significantly higher projections (the "Management Case") for use in the valuation analyses underlying their fairness opinion. Without the use of these adulterated projections, North Point would not have been able to find the Offer Price "fair" to Papa Murphy's shareholders.

5.     The Board, aware of the illegitimate alterations, touted North Point's misleading fairness opinion as a positive factor and recommended Papa Murphy's shareholders tender their shares in the Tender Offer based on the misleading fairness opinion.

6.     The Tender Offer expired at one minute after 11:59 p.m. (12:00 midnight), New York City time, on May 22, 2019 (the "Expiration Date") and Papa Murphy's shareholders were cashed out of their shares for the inadequate Offer Price.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

7.    For these reasons and as set forth in detail herein, Defendants have violated Sections 14(e) and 20(a) of the Exchange Act.  Accordingly, Plaintiff seek to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

9.    The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Papa Murphy's maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a shareholder of Papa Murphy's.

12.    Defendant Papa Murphy's is a Delaware corporation and maintains its principal executive office at 8000 NE Parkway Drive, Suite 350, Vancouver, Washington, 98662. Papa

Murphy's is a franchisor and operator of the largest Take 'n' Bake pizza brand and the 5th largest pizza chain in the United States, selling pizzas ready for customers to bake at home. Prior to the consummation of the Transaction, the Company's common stock traded on the Nasdaq under the ticker symbol "FRSH". Papa Murphy's is listed as the filer of the Recommendation Statement, and acted through the Individual Defendants.

13.    Individual Defendant Jean M. Birch was, at all relevant times, a director of Papa Murphy's and the Chairman of the Board.

14.    Individual Defendant Weldon Spangler was, at all relevant times, a director of Papa Murphy's and the Chief Executive Officer of the Company. Mr. Spangler signed the Recommendation Statement and certified that, after making due inquiry, to the best of his knowledge and belief, the information set forth therein is true, complete and correct.

15.    Individual Defendant Noah A. Elbogen was, at all relevant times, a director of the Company.

16.    Individual Defendant Benjamin Hochberg was, at all relevant times, a director of the Company.

17.    Individual Defendant Yoo Jin Kim was, at all relevant times, a director of the Company.

18.    Individual Defendant Alexander C. Matina was, at all relevant times, a director of the Company.

19.    Individual Defendant David Mounts was, at all relevant times, a director of the Company.

20.    Individual Defendant John Shafer was, at all relevant times, a director of the Company.

21.    Individual Defendant Katherine L. Scherping was, at all relevant times, a director of the Company.

22.     Individual Defendant Rob Weisberg was, at all relevant times, a director of the Company.

23.     Defendant North Point was Papa Murphy's financial advisor in connection with the Transaction, and thus directed numerous communications related to the Transaction into Washington and generated significant compensation by engaging in business in Washington. North Point is a private investment bank.

24.     The defendants identified in paragraphs 13-22 are referred to as the "Individual Defendants" and together with Papa Murphy and North Point they are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Papa Murphy's (the "Class"). Excluded from the Class are Defendants, MTY, members of the immediate family of an Individual Defendant or any such person's legal representative, heir, successor or assign.

26.     This action is properly maintainable as a class action because:

   a.     The Class is so numerous that joinder of all members is impracticable. As of April 25, 2019, there were 17,029,528 shares of Papa Murphy's common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Papa Murphy's will be ascertained through discovery;

   b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

      i)     whether Defendants misrepresented or omitted material information concerning the Transaction in the Recommendation Statement, in violation of Section 14(e) of the Exchange Act;

ii)    whether the Individual Defendants violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class suffered damages as a result of the Transaction and Defendants' violations of law;

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.    Background to the Transaction

27.    Papa Murphy's, incorporated on March 29, 2010, is a holding company. The Company, together with its subsidiaries, is a franchisor and operator of the Take 'N' Bake pizza chain in the United States. The Company franchises the right to operate Take 'N' Bake pizza franchises and operates Take 'N' Bake pizza stores owned by the Company. The Company operates through three segments: Domestic Company Stores, Domestic Franchise, and International. Its Domestic Franchise segment consists of its domestic franchised stores, which

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

represent its system-wide stores and derives its revenues from franchise and development fees and the collection of franchise royalties from the Company's franchise owners located in the United States. The Domestic Company Stores segment consists of its Company-owned stores in the United States and derives its revenues from retail sales of pizza and side items to the general public. Its International segment consists of its stores outside of the United States, all of which are franchised and derives its revenues from franchise and development fees and the collection of franchise royalties from franchises located outside the United States.

28.    On September 29, 2018, the Board, including invited representatives of North Point, to present its capabilities, the state of the markets, and the potential valuation of the Company, among other things, in connection with a potential engagement. On October 12, 2018, the Board selected North Point to act as its financial advisor in respect of a potential strategic transaction. The parties executed North Point's engagement letter that same day.

29.    MTY, is a Canada-based company, which franchises and operates quick-service restaurants. The Company operates in four segments: Franchising, which includes revenue from royalties, supplier contributions, franchise fees, rent, and the construction and renovation of restaurants; Corporate, which includes the direct sale of prepared food to customers; Distribution, which includes distribution of raw materials to restaurants of its Valentine and Franx banners; and processing, which includes the sale of ingredients and prepared food to restaurant chains, distributors, and retailers. The Company's quick-service restaurants operate under various banners, such as Tiki-Ming, Sukiyaki, La Cremiere, Au Vieux Duluth Express, Carrefour Oriental, Panini Pizza Pasta, Franx Supreme, Croissant Plus, Villa Madina, Cultures, Thai Express, Vanellis, Kim Chi, Yogen Fruz, Sushi Shop, Koya Japan, Vie & Nam, Tandori, O'Burger, Tutti Frutti, Taco Time, Country Style, Buns Master, and Valentine.

**II.     The Materially Incomplete and Misleading Recommendation Statement**

30.     On April 25, 2019, Papa Murphy's filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by MTY.  As alleged herein, the Recommendation Statement contained material misrepresentations of fact that forced Papa Murphy's shareholders to decide whether to tender their shares without adequate information and misled them about the fairness of the Offer Price.

31.     The Recommendation Statement discloses two distinct sets of financial projections. First, Papa Murphy's management prepared the Management Case on a reasonable basis in accordance with industry practice to reflect their best currently available estimates and judgments of the expected future results of the Company operations and financial condition through. The Management Case already accounts for various risks that the Company may face in trying to achieve its operations plan, and thus "reflects certain proprietary assumptions regarding management's ability to effectively implement current strategic priorities, including brand relevance and convenience initiatives, the Company's ability to retain and grow the customer base during the process and risks relating to alignment and investment of the Company's franchisees with any shifts in the Company's strategy." RS at 42.

32.     In connection with the Company's exploration of strategic alternatives, Papa Murphy's provided the Management Case both to prospective bidders and to North Point to perform the financial analyses underlying their fairness opinion. In providing the Management Case to North Point, Papa Murphy's assured North Point that Papa Murphy's management was "not aware of any information or facts that would make any information provided to North Point incomplete or misleading in any material respect." RS at 39.

33.     However, despite these assurances, Papa Murphy's proceeded to illegitimately lower management's best estimate of the Company's system-wide same store sales growth and arbitrarily cap it from 2020 through 2023 at 2.5% to create a second set of financial projections, the Base Case.

34.     By artificially limiting the sales growth North Point materially lowered the corresponding year projections of EBITDA and cash flows—the two main metrics used to perform their financial analyses. And only by utilizing these materially lower financial projections was North Point able to fit the Offer Price into a range of fairness to convince Papa Murphy's shareholders to tender their shares in the Tender Offer.

35.     This point is clearly illustrated in the summary of North Point's Discounted Cash Flow Analysis ("DCF") provided in the Recommendation Statement on page 38. As a highly respected professor explained in one of the most thorough law review articles regarding valuation analyses bankers perform in support of fairness opinions:

> [A] discounted cash flow analysis is conducted by discounting back at a chosen discount rate the projected future free cash flows and terminal value of an asset. In performing this analysis there are three central choices, which must be made, each of which can significantly affect the final valuation. These are the correct forecasted free cash flows to utilize, the appropriate discount rate, and the terminal value of the asset. There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars.

Steven M. Davidoff, Fairness Opinions, 55 Am. U. L. Rev. 1557, 1573-78 (2006).

36.     Discount rate ranges usually vary 1%-2%, but here, North Point decided to vary the discount rate by a staggering 5%—11.4% to 16.4%. Yet this unusual and highly impactful measure was still not enough to lower the implied value range far enough to count the Offer Price as "fair." Therefore, North Point had to manipulate the cash flows themselves through the creation of the Base Case. Finally, after increasing the discount rates and decreasing the unlevered free cash flow projections, North Point was able to just barely fit the $6.45 Offer Price into the $6.28 to $12.34 range of implied equity values per share. Thus, it is clear that North Point illegitimately lowered the Management Case and created the Base Case in order to artificially find the Offer Price as "fair" consideration for Papa Murphy's shares.

37.     Accordingly, the statement that "North Point prepared the base case in order to reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons…" is false and/or misleading. *See* RS at 38, 41, 44. Nor could it be true. The Management Case already accounted for the Company's risks, and Papa Murphy's management assured North Point that the Management Case contained all material information.

38.     The text of North Point's actual fairness opinion letter—included in the Recommendation Statement as Annex A—further rebuts the truthfulness of this justification for North Point's downward revisions to the Management Case. The fairness opinion letter explicitly states:

> Without limiting the generality of the foregoing, for the purpose of this opinion, we have assumed, ***without independent verification***, that with respect to financial forecasts, estimates and other forward looking information reviewed by us, that such information has been reasonably prepared based upon assumptions reflecting the best currently available estimates and judgments of the management of the Company as to the expected future results of operations and financial condition of the Company.
>
> ***Although we have not independently verified the accuracy and completeness of the information we considered, we advise you that nothing has come to our attention during the course of this engagement that has caused us to believe that it was unreasonable for us to utilize and rely on the information we have reviewed.***

RS at A-2 (emphasis added).[1] This statement confirms that North Point had no legitimate basis to disregard or tinker with the Management Case, and that North Point **did not** in fact "prepare[] the base case in order to reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons…" RS at 38, 41, 44.

39.     Further, North Point's opinion that the Offer Price "was fair from a financial point of view to such stockholders" is also false and/or misleading. *See* RS at 30. Moreover, the

---

[1] No doubt wary of the impact of these statements, in the preparation of the Recommendation Statement, the Board excised the emphasized portions from the summary of North Point's fairness opinion and the corresponding paragraph on page 39 of the Recommendation Statement. *Compare* RS at A-2 *with* RS at 39.

Base Case projections themselves and the implied equity values per share ranges calculated utilizing the illegitimate Base Case projections are misleading as well.

40.    Additionally, on pages 26-29 of the Recommendation Statement, the Board listed the "material" factors and benefits for recommending Papa Murphy's shareholders tender their shares in the Tender Offer, including the following:

> The written opinion of North Point to the effect that, as of April 10, 2019, and based upon and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations of the review undertaken by North Point as set forth in its opinion, the consideration to be received by the holders of the Shares pursuant to the Merger Agreement was fair from a financial point of view, to such holders of the Shares. The full text of North Point's written opinion is attached hereto as Annex A. For further discussion of the North Point opinion, see "*Item 4—The Solicitation or Recommendation—Opinion of the Company's Financial Advisor*" below.

RS at 28. The Board knew that the Management Case reflected the most accurate view of the Company's future financial performance, as evidenced by the fact that the Company created the Management Case and gave assurances to North Point that it was accurate. The Board also knew, or should have known, that North Point illegitimately lowered these projections to fit the inadequate Offer Price within the implied value range of their DCF and find the Transaction "fair from a financial point of view" to Papa Murphy's shareholders. Accordingly, the Board knew, or should have known, that North Point's fairness opinion was misleading, but still offered it as a "material" reason for Papa Murphy's shareholders to tender their shares in the Tender Offer. Therefore, the Board's endorsement and recommendation based on the misleading fairness opinion is misleading itself.

41.    In sum, the misrepresentation of the above-referenced information rendered statements in the Recommendation Statement materially false and/or misleading in contravention of the Exchange Act.

III.    **The Materially Misleading Recommendation Statement Caused Papa Murphy's Shareholders Harm**

42.    The Offer Price is inadequate consideration for Papa Murphy's shareholders and does not reflect fair value for the Company. As discussed above, North Point was only able to find the Offer Price "fair" as a result of illegitimate downward adjustments to the Company's financial projections. Indeed, in their DCF analysis, North Point found the company to be worth up to $12.34—nearly *double* the Offer Price.

43.    Moreover, the $6.45 Offer Prices represents a derisory 4% premium to the Company's trading price less than a month earlier on March 14, 2019. Further, a superior offer to the Offer Price existed as "Company A" offered $6.64 per share to purchase the Company. Additionally, the Recommendation Statement concedes that the Company's executive officers and the members of the Board have interests in the Transaction "that are different from, or in addition to, those of the Company's other stockholders." RS at 29. These interests include, but are not limited to, affiliations with various hedge funds or similar financial entities whose interests differ from Papa Murphy's common shareholders, lucrative golden parachute compensation, retention agreements with MTY, and vesting of stock options that would result from the consummation of the Transaction.

44.    The material misrepresentations in the Recommendation Statement misled Papa Murphy's shareholders to tender their shares into the undervalued Tender Offer. Accordingly, Papa Murphy's shareholders were misled and harmed millions of dollars.

45.    The materially misleading Recommendation Statement prompted Papa Murphy's shareholders to accept the unfair Offer Price in exchange for their shares rather than recoup a greater value through appraisal remedies available in the Transaction. RS at 45. The material misrepresentations in the Recommendation Statement caused Papa Murphy's shareholders to forfeit and not enforce their appraisal rights.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

46.     In sum, the Offer Price the Company's shareholders received was unfair and inadequate because the intrinsic value of their shares materially exceeded the Offer Price.

## COUNT I

**Claims Against Papa Murphy's and the Individual Defendants for Violations of Section 14(e) of the Exchange Act**

47.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.     Papa Murphy's and the Individual Defendants caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Transaction.

49.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

50.     Papa Murphy's and the Individual Defendants violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to Papa Murphy's shareholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

51.     Papa Murphy's and the Individual Defendants were negligent in allowing the Recommendation Statement to be disseminated with the above-referenced materially misleading statements regarding the Company's projections and the value of the Company.  As directors and officers of Papa Murphy's, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

shareholders to ensure that it did not contain untrue statements of material fact and did not omit material facts.  The Individual Defendants were negligent in carrying out their duty.

52.    Papa Murphy's is imputed with the negligence of the Individual Defendants, who are each directors and/or senior officers of Papa Murphy's.

53.    As a direct result of Papa Murphy's and the Individual Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and other Papa Murphy's shareholders are impeded from making a decision on a fully informed basis and are induced to tender their shares and accept the inadequate Offer Price in connection with the Transaction.  The false and/or misleading Recommendation Statement used to solicit the tendering of shares impedes Plaintiff and other Papa Murphy's shareholders from making a fully informed decision regarding the Tender Offer and is an essential link in consummating the Transaction, which will deprive them of full and fair value for their Papa Murphy's shares.  At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Papa Murphy's and the Individual Defendants were aware of and/or had access to the true facts concerning the process involved in selling Papa Murphy's, the projections for Papa Murphy's, and Papa Murphy's true value, which is greater than the Offer Price Papa Murphy's shareholders will receive.

54.    The misrepresentations in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in the Tender Offer.  In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to shareholders.

55.    As a direct and proximate result of the dissemination of the misleading Recommendation Statement Papa Murphy's and the Individual Defendants used to obtain shareholder approval of the Transaction, Plaintiff and the Class have suffered damages and actual economic losses (*i.e.* the difference between the value they received as a result of the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Transaction and the true value of their shares) in an amount to be determined at trial.  By reason of the misconduct detailed herein, Papa Murphy's and the Individual Defendants are liable pursuant to Section 14(e) of the Exchange Act.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

56.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.    The Individual Defendants acted as controlling persons of Papa Murphy's within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Papa Murphy's and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and/or misleading.

58.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction.  They were thus directly involved in the making of the Recommendation Statement.

60.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

61.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

## COUNT III

**Claims Against North Point for Violations of Section 14(e) of the Exchange Act**

62.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."  15 U.S.C. § 78n(e).

64.    North Point violated this clause of Section 14(e) because they negligently made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in the Recommendation Statement to be disseminated to Papa Murphy's shareholders in order to solicit them to tender their shares in the Tender Offer.

65.    As identified above the Recommendation Statement contained false and/or misleading statements regarding North Point's fairness opinion and the Base Case. North Point was aware of and/or had access to the true facts concerning the Company's financial projections and the valuation analyses performed by North Point, which indicate that the Company is worth

more than the Offer Price. Therefore, North Point was at least negligent in making the material misstatements related to its fairness opinion and the Base Case.

66.     Accordingly, North Point negligently made untrue statements of material fact in connection with the Tender Offer in violation of Section 14(e) of the Exchange Act.

67.     As a direct and proximate result of the dissemination of the misleading Recommendation Statement used to obtain shareholder approval of the Transaction, Plaintiff and the Class have suffered damages and actual economic losses (i.e. the difference between the value they received as a result of the Transaction and the true value of their shares) in an amount to be determined at trial.  By reason of the misconduct detailed herein, North Point is liable pursuant to Section 14(e) of the Exchange Act.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as Class Representatives and their counsel as Class Counsel;

B.     Declaring that the Recommendation Statement was materially false or misleading;

C.     Awarding Plaintiff and the members of the Class compensatory and/or rescissory damages against Defendants;

D.     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs;

E.     Awarding extraordinary, equitable, and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

F.     Awarding such other relief as this Court may deem just and proper.

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

## JURY DEMAND

2      Plaintiff demands a trial by jury.

3

4   DATED:  June 7, 2019

5                                    **LOCAL COUNSEL:**

6                                    **BRESKIN JOHNSON TOWNSEND,**
                                     **PLLC**
7

8                                    *s/ Roger Townsend*
                                     Roger M. Townsend, WSBA No. 25525
9                                    1000 Second Avenue, Suite 3670
                                     Seattle, Washington  98104
10                                   Tel: 206-652-8660
                                     Fax: 206-652-8290
11                                   rtownsend@bjtlegal.com

12                                   **OF COUNSEL:**

13
                                     **MONTEVERDE & ASSOCIATES PC**
14                                   Juan E. Monteverde
                                     The Empire State Building
15                                   350 Fifth Avenue, Suite 4405
                                     New York, New York 10118
16                                   Tel:  212-971-1341
                                     Fax:  212-202-7880
17                                   jmonteverde@monteverdelaw.com

18
                                     *Counsel for Plaintiff*
19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 18
(No._____)