1

2

3

4

5

6                                        THE HONORABLE J. RICHARD CREATURA

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

9

10   EVAN BROWN, Individually and on Behalf
     of All Others Similarly Situated,                No. 19-cv-05514-JRC

11
                              Plaintiff,             AMENDED CLASS ACTION COMPLAINT

12
           v.                                         DEMAND FOR JURY TRIAL

13   PAPA MURPHY'S HOLDINGS INC.,                        1. VIOLATIONS OF SECTION 14(e)
     JEAN M. BIRCH, WELDON SPANGLER,                       OF THE SECURITIES EXCHANGE
14   NOAH A. ELBOGEN, BENJAMIN                             ACT OF 1934
     HOCHBERG, YOO JIN KIM,
15   ALEXANDER C. MATINA, DAVID                          2. VIOLATIONS OF SECTION 20(a)
     MOUNTS, JOHN SHAFER,                                  OF THE SECURITIES EXCHANGE
16   KATHERINE L. SCHERPING, ROB                           ACT OF 1934
     WEISBERG and NORTH POINT
17   ADVISORS LLC,

18                            Defendants.

19         Lead Plaintiff Evan Brown ("Plaintiff"), by his undersigned attorneys, alleges upon

20   personal knowledge with respect to himself, and upon information and belief based upon, *inter*

21   *alia*, the investigation of counsel as to all other allegations herein, as follows:

22                                **NATURE OF THE ACTION**

23         1.      This action is brought as a class action by Plaintiff against Papa Murphy's

24   Holdings Inc. ("Papa Murphy's" or the "Company"), the Company's financial advisor, North

25   Point Advisors LLC ("North Point"), and the members of the Company's board of directors

26   (collectively referred to as the "Board" or the "Individual Defendants" and, together with Papa

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Murphy's and North Point, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78n(e) and 78t(a), respectively.  Plaintiff's claims arise in connection with the tender offer ("Tender Offer") by MTY Food Group Inc., through its subsidiaries (collectively "MTY"), used to acquire all of the issued and outstanding shares of Papa Murphy's (the "Transaction").

2.      On April 10, 2019, Papa Murphy's entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which shareholders of Papa Murphy's common stock received $6.45 in cash for each share of Papa Murphy's stock they owned (the "Merger Consideration").

3.      On April 25, 2019, in order to convince Papa Murphy's shareholders to tender their shares, the Defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement" or "RS") with the Securities and Exchange Commission ("SEC"). Therein, the Defendants touted the fairness of the Merger Consideration to the Company's shareholders, but misled investors with respect to the Company's financial projections, the value of the Company, and the fairness of the Merger Consideration.

4.      Defendant North Point created a downwardly revised set of projections (the "Base Case") to illegitimately lower management's significantly higher projections (the "Management Case") for use in the valuation analyses underlying their fairness opinion. The Base Case Projections were concocted solely for use in connection with North Point's fairness opinion, and were not even disclosed to potential bidders. Without the use of the adulterated, manufactured Base Case projections, the Merger Consideration would not have fallen within the misleading implied equity value per share ranges set forth on page 38 of the Recommendation Statement. Indeed, even utilizing the illegitimately prepared Base Case projections,   the resulting share range value was $6.28 to $12.34—meaning the Merger

Consideration came in just above the bottom end of this misleading range that was created in order to justify on otherwise unjustifiable finding of fairness.

5.    The Board, aware of the original management projections, the illegitimate alterations, and the use of the illegitimate projections in the valuation analyses, nevertheless touted North Point's misleading fairness opinion as a positive factor and recommended Papa Murphy's shareholders tender their shares in the Tender Offer based on the misleading fairness opinion.

6.    The Tender Offer expired at one minute after 11:59 p.m. (12:00 midnight), New York City time, on May 22, 2019 (the "Expiration Date") and Papa Murphy's shareholders were cashed out of their shares for the inadequate Merger Consideration.

7.    For these reasons and as set forth in detail herein, Defendants violated Sections 14(e) and 20(a) of the Exchange Act.  Accordingly, Plaintiff seeks to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

9.    The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Papa Murphy's maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides

in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **PARTIES**

11.    Plaintiff was, at all relevant times, a shareholder of Papa Murphy's.

12.    Defendant Papa Murphy's is a Delaware corporation and maintains its principal executive office at 8000 NE Parkway Drive, Suite 350, Vancouver, Washington, 98662. Papa Murphy's is a franchisor and operator of the largest Take 'n' Bake pizza brand and the 5th largest pizza chain in the United States, selling pizzas ready for customers to bake at home. Prior to the consummation of the Transaction, the Company's common stock traded on the Nasdaq under the ticker symbol "FRSH". As a result of the Transaction, Papa Murphy's became a wholly owned subsidiary of MTY. Papa Murphy's is listed as the filer of the Recommendation Statement, and acted through the Individual Defendants.

13.    Individual Defendant Jean M. Birch was, at all relevant times, a director of Papa Murphy's and the Chairman of the Board.

14.    Individual Defendant Weldon Spangler was, at all relevant times, a director of Papa Murphy's and the Chief Executive Officer of the Company. Mr. Spangler signed the Recommendation Statement and certified that, after making due inquiry, to the best of his knowledge and belief, the information set forth therein is true, complete and correct.

15.    Individual Defendant Noah A. Elbogen was, at all relevant times, a director of the Company.

16.    Individual Defendant Benjamin Hochberg was, at all relevant times, a director of the Company.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

17.     Individual Defendant Yoo Jin Kim was, at all relevant times, a director of the Company.

18.     Individual Defendant Alexander C. Matina was, at all relevant times, a director of the Company.

19.     Individual Defendant David Mounts was, at all relevant times, a director of the Company.

20.     Individual Defendant John Shafer was, at all relevant times, a director of the Company.

21.     Individual Defendant Katherine L. Scherping was, at all relevant times, a director of the Company.

22.     Individual Defendant Rob Weisberg was, at all relevant times, a director of the Company.

23.     Defendant North Point was Papa Murphy's financial advisor in connection with the Transaction, and thus directed numerous communications related to the Transaction into Washington and generated significant compensation by engaging in business in Washington. North Point is a private investment bank.

24.     The defendants identified in paragraphs 13-22 are referred to as the "Individual Defendants" and together with Papa Murphy and North Point they are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other former public shareholders of Papa Murphy's (the "Class").  Excluded from the Class are Defendants, MTY, members of the immediate family of an Individual Defendant or any such person's legal representative, heir, successor or assign.

26.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable. As of April 25, 2019, there were 17,029,528 shares of Papa Murphy's common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Papa Murphy's will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

      i)      whether Defendants misrepresented or omitted material information concerning the Transaction in the Recommendation Statement, in violation of Section 14(e) of the Exchange Act;

      ii)     whether the Individual Defendants violated Section 20(a) of the Exchange Act; and

      iii)    whether Plaintiff and other members of the Class suffered damages as a result of the Transaction and Defendants' violations of law;

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    Overview of the Relevant Business Entities**

27.    Papa Murphy's was incorporated on March 29, 2010 as a holding company. The Company, together with its subsidiaries, is a franchisor and operator of the Take 'N' Bake pizza chain in the United States. The Company franchises the right to operate Take 'N' Bake pizza franchises and operates Take 'N' Bake pizza stores owned by the Company. The Company operates through three segments: Domestic Company Stores, Domestic Franchise, and International. Its Domestic Franchise segment consists of its domestic franchised stores, which represent its system-wide stores and derives its revenues from franchise and development fees and the collection of franchise royalties from the Company's franchise owners located in the United States. The Domestic Company Stores segment consists of its Company-owned stores in the United States and derives its revenues from retail sales of pizza and side items to the general public. Its International segment consists of its stores outside of the United States, all of which are franchised and derives its revenues from franchise and development fees and the collection of franchise royalties from franchises located outside the United States.

28.    On October 12, 2018, the Board hired North Point to act as its financial advisor in connection with a potential strategic transaction. The parties executed North Point's engagement letter that same day, which provided that North Point would receive $250,000 upon the submission of a fairness opinion and $3,050,000 that was entirely contingent upon the successful completion of the Transaction. In other words, North Point had a significant financial incentive to deem the Transaction "fair", which it could only have done by using the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

illegitimately prepared Base Case. Furthermore, North Point is a relatively small investment bank that provides advisement services on mergers and acquisitions, divestitures, sales transactions, investment management, and financial advisory. From publicly available information, it appears that North Point frequently operates in the franchised restaurant space, acting as financial advisors in the sales of Jamba, Jimmy John's, and in 2016 a sale of Kahala Brands[1] to MTY.

29.    MTY, is a Canada-based company, which franchises and operates quick-service restaurants. The Company operates in four segments: Franchising, which includes revenue from royalties, supplier contributions, franchise fees, rent, and the construction and renovation of restaurants; Corporate, which includes the direct sale of prepared food to customers; Distribution, which includes distribution of raw materials to restaurants of its Valentine and Franx banners; and processing, which includes the sale of ingredients and prepared food to restaurant chains, distributors, and retailers. The Company's quick-service restaurants operate under various banners, such as Tiki-Ming, Sukiyaki, La Cremiere, Au Vieux Duluth Express, Carrefour Oriental, Panini Pizza Pasta, Franx Supreme, Croissant Plus, Villa Madina, Cultures, Thai Express, Vanellis, Kim Chi, Yogen Fruz, Sushi Shop, Koya Japan, Vie & Nam, Tandori, O'Burger, Tutti Frutti, Taco Time, Country Style, Buns Master, and Valentine.

## II.    Background to the Transaction

30.    Prior to the announcement of the Transaction on April 11, 2019, Papa Murphy's was in the midst of a significant turnaround. Between January and mid-March 2019, the Company's stock price increased approximately 36%, to a high of $6.20 just weeks before the Transaction was announced. In other words, the Merger Consideration that was misleadingly touted to Papa Murphy's shareholders in the Recommendation Statement as a "fair" price that provided a "significant premium," RS at 26, was in fact a mere 4% higher than the Company's

---

[1]    Kahala managed franchised brands such as Cold Stone Creamery®, Blimpie®, Samurai Sam's Teriyaki Grill®, Johnnie's New York Pizzeria™, Planet Smoothie®, Tasti D-Lite™, Maui Wowi®, and Pinkberry®.

trading price just weeks prior to the deal's announcement. That minuscule premium compared to the Company's high trading price was omitted in the section of the Recommendation Statement touting the "significant premium" to shareholders. RS at 26.

31.    The dramatic increase in the Company's' stock price during the winter of 2019—just weeks prior to the announcement of the Transaction—was spurred by a string of positive news regarding the Company's financial performance and future growth prospects.

32.    On November 7, 2019, Papa Murphy's held a conference call to discuss the third quarter 2018 financial results, heralding the quarter as a success, and touting the results as a step in the right direction for the Company. Defendants Spangler stated:

> Results in the third quarter included a system-wide comparable store sales decline of 2.1% compared to the prior year's third quarter, and adjusted EBITDA of $4.7 million. While the third quarter same-store sales percentage was still negative, the results represented *our best percentage change in same-store sales in 12 quarters. We are also pleased to note that sales trend have continued to improve and are currently tracking slightly positive through the first five weeks of the fourth quarter. Though, we are maintaining a conservative outlook for the balance of the quarter.*
>
> The comp sales improvement continues to be driven by the adoption of key marketing messages, as well as by progress on our strategic initiatives. During the quarter, we saw an increasing number of markets comp positively, 39 domestic DMAs in total up from 31, which demonstrated comp growth in the second quarter. These DMAs have fully adopted marketing initiatives with a low, broad and consistent value message, have gone all in on these initiatives and have synchronized all marketing channels to drive traffic to the stores.

33.    The Company's CFO, Nik Rupp, then proceeded to provide an update on full-year outlook for fiscal 2018 stating, "full-year system-wide comparable store sales are expected to decline low single-digits. . . ."

34.    The call concluded with Spangler stating: "We are pleased with the progress we are making and the accelerating business momentum we are beginning to achieve. We continue to believe that our focused strategy of improving convenience and relevance and enhancing people and process, alongside increased activation of our low, broad and consistent marketing

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

initiative, *will drive profitable and sustainable comp sales growth in both the short and the long-term.*"

35.    On February 4, 2019—two months before the Transaction was announced—Papa Murphy's issued a release announcing that its preliminary 2018 fourth quarter and fiscal year results were "better than guidance and *sales trends [were] improving.*" The release quoted defendant Spangler, Papa Murphy's CEO, who stated:

> We are very pleased with the continued progress of our strategic initiatives and the impact they had on our results in Q4 2018. *We saw positive same store sales in October, marking our first period of same store sales growth in 37 months. Momentum has continued into 2019, and we expect our strategic and cost saving initiatives to continue to deliver in 2019.* With our improved results, we were also able to pay down our term loan to $79.5 million at the end of the quarter.

36.    On March 14, 2019—four weeks before the Transaction was announced—a press release issued by Papa Murphy's through Business Wire announced that the Company had reported its fourth quarter and fiscal year 2018 results, and specifically noted that it performed better than guidance and consistent with previously reported results. The release quoted defendant Spangler, Papa Murphy's CEO, who stated:

> We are very pleased with the continued progress of our strategic initiatives and the impact they had on our results in the fourth quarter. *We saw positive comparable store sales growth in October, marking our first period of comparable store sales growth in 37 months.* We continue to believe that we have the right initiatives in place to drive long-term success for Papa Murphy's and we are excited for the year ahead.

37.    That same day, the Company held another conference call to discuss the fourth quarter 2018 financial results. Once again, Spangler and Rupp were pleased about the positive trending results—which exceeded previous guidance. Spangler stated:

> Fourth quarter results included a system-wide comparable store sales decline of 1.3% and adjusted EBITDA of $5.9 million, both of which came in ahead of internal expectations. Results represented continued sequential improvement and included positive same-store sales in the month of October. We continue to believe that our comp sales improvement is being driven by the adoption of key marketing messages as well as by progress on our strategic initiatives.
> ...

AMENDED CLASS ACTION COMPLAINT - 10
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

The decrease in comparable store sales for the quarter was impacted by continued competitive value dealing. But as you heard from Weldon, we are countering this with growth in our e-commerce sales, delivery and more targeted digital marketing efforts that should help close both convenience and relevance gaps versus our peers. We believe that as our key marketing strategies ramp up in terms of adoption and traction and we continue to roll our critical technology components, we will see this gap close, and the system will return to positive comp sales growth.

38.    CFO Rupp proceeded to again up the expectations for the Company going forward, providing fiscal year 2019 outlook for "Full-year system-wide comparable store sales growth in the range of flat to low single-digit positive. . . .", and Defendant Spangler ended the call with positive remarks about the year past and the years to come:

Thank you, Nik. 2018 was a year where we built a solid foundation for long-term sustainable growth. Towards that end, we launched our new e-commerce platform and app, rolled out delivery and developed new creative in conjunction with enhanced social and digital marketing efforts. We also took great strides to rebuild trust and engagement with our franchise owners and solidified executional processes. Our goal remains to provide the highest quality pizza and guest experience in the industry and drive renewed growth in our customer base through our strategic initiatives. We continue to believe that we have the right strategic initiatives in place to drive long-term success for Papa Murphy's, and we're extremely excited for the year ahead.

39.    Shortly after these announcements, on March 19, 2019, the Board unanimously approved the entry into an Exclusivity Agreement with MTY that would grant it exclusivity with respect to sales process for a limited period of time, subject to the negotiation of specific terms.

40.    Between the announcement of Q4 2018 financial results on March 14, 2019 and the North Point's presentation of their fairness opinion to the Board on April 10, 2019, the Company did not issue any negative news or press releases. Thus, there was no legitimate reason for North Point to reduce management's financial projections during that period.

41.    MTY was fully aware of the steal it pulled off in light of Papa Murphy's strong and improving growth prospects. Upon the announcement of the Transaction on April 11, 2019, MTY issued an investor presentation that touted Papa Murphy's long-term growth prospects. The presentation noted that Papa Murphy's was "building momentum after implementation of

refreshed corporate strategy and refocus on the brand," and that the Company had "positive momentum from new digital ordering platform launched and other recent initiatives."

42.    Despite six consecutive months of positive trending announcements regarding same store sales growth and Company management's statements indicating that they were conservative in their outlook, North Point decided to, and the Board allowed it to, slash management's legitimately prepared projections and utilize the significantly lower Base Case projections in conjunction with its fairness opinion.

## III.    The Materially False and Misleading Recommendation Statement

43.    On April 25, 2019, Defendants authorized the filing of the Recommendation Statement with the SEC in order to solicit shareholder support for the Tender Offer commenced by MTY. As alleged herein, the Recommendation Statement contained misrepresentations of material fact that misled Papa Murphy's shareholders about the fairness of the Merger Consideration and the legitimacy of the Base Case projections.

44.    As noted above, Papa Murphy's management prepared the Management Case on a reasonable basis in accordance with industry practice to reflect their best currently available estimates and judgments of the expected future results of the Company's operations and financial condition. The Management Case was based on Papa Murphy management's already conservative outlook, already accounted for various risks that the Company may face in trying to achieve its operations plan, and thus "reflect[ed] certain proprietary assumptions regarding management's ability to effectively implement current strategic priorities, including brand relevance and convenience initiatives, the Company's ability to retain and grow the customer base during the process and risks relating to alignment and investment of the Company's franchisees with any shifts in the Company's strategy." RS at 42.

45.    In connection with the Company's exploration of strategic alternatives, Papa Murphy's management provided the Management Case both to prospective bidders and to North Point to perform the financial analyses underlying their fairness opinion. In providing the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Management Case to North Point, Papa Murphy's management assured North Point that Papa Murphy's management was "not aware of any information or facts that would make any information provided to North Point incomplete or misleading in any material respect." RS at 39.

46.     However, despite these assurances, North Point proceeded to illegitimately lower management's best estimate of the Company's system-wide same store sales growth and arbitrarily cap it from 2020 through 2023 at 2.5% to create a second set of financial projections, the Base Case. These adjustments were not reflective of Papa Murphy's actual future business prospects and were entirely inconsistent with the positive trend in same store sales growth announced in the Company's earnings statements and press releases during the months immediately preceding the announcement of the Transaction. As noted above, around the time the Base Case projections were suddenly prepared for use in connection with the fairness opinion, the Company had announced back to back quarters with the best percentage change in same-store sales in years. Furthermore, Papa Murphy's management had indicated that it was already being conservative with its own assumptions regarding future growth. Simply put, there was no legitimate basis to suddenly reduce the same store sales growth percentage, and the Base Case was created in order to justify the purported fairness of the Merger.

47.     By artificially lowering management's legitimately held beliefs regarding same store sales growth, North Point materially lowered the corresponding year projections for EBITDA and cash flows—the two main metrics it used to perform its financial analyses. And only by utilizing these materially lower financial projections was North Point able to fit the Merger Consideration into a range of fairness to convince Papa Murphy's shareholders to tender their shares in the Tender Offer.

48.     This point is clearly illustrated in the summary of North Point's Discounted Cash Flow Analysis[2] ("DCF") provided in the Recommendation Statement on page 38. As a highly respected professor explained in one of the most thorough law review articles regarding valuation analyses bankers perform in support of fairness opinions:

> [A] discounted cash flow analysis is conducted by discounting back at a chosen discount rate the projected future free cash flows and terminal value of an asset. In performing this analysis there are three central choices, which must be made, each of which can significantly affect the final valuation. These are the correct forecasted free cash flows to utilize, the appropriate discount rate, and the terminal value of the asset. There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars.

Davidoff at 1577-78.

49.     By utilizing the illegitimately prepared Base Case projections, North Point was able to just barely fit the $6.45 Merger Consideration into the $6.28 to $12.34 range of implied equity values per share. Without manufacturing the Base Case projections, North Point would not have been able to frame the Merger Consideration as "fair" consideration for Papa Murphy's shareholders.

50.     Accordingly, the statement that "North Point prepared the base case in order to reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons…" was false and/or misleading. *See* RS at 38, 41, 44. This statement was offered to mislead Papa Murphy's shareholders and make the creation of the Base Case projections appear legitimate, but, in reality, the Management Case already fully accounted for the Company's risks, and Papa Murphy's management assured North Point that the Management Case contained all material information.

---

[2]     In cash out transactions, like the Transaction here, discounted cash flow analyses are the most important valuation analysis a financial advisor can perform in valuing the target company. Steven M. Davidoff, Fairness Opinions, 55 Am. U. L. Rev. 1557, 1575 (2006).

AMENDED CLASS ACTION COMPLAINT - 14
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

51.     The text of North Point's actual fairness opinion letter—included in the Recommendation Statement as Annex A—further rebuts the truthfulness of this false or misleading justification for North Point's downward revisions to the Management Case. The fairness opinion letter explicitly states:

> Without limiting the generality of the foregoing, for the purpose of this opinion, we have assumed, without independent verification, that with respect to financial forecasts, estimates and other forward looking information reviewed by us, that such information has been reasonably prepared based upon assumptions reflecting the best currently available estimates and judgments of the management of the Company as to the expected future results of operations and financial condition of the Company.

> Although we have not independently verified the accuracy and completeness of the information we considered, we advise you that nothing has come to our attention during the course of this engagement that has caused us to believe that it was unreasonable for us to utilize and rely on the information we have reviewed.

RS at A-2. This statement confirms that North Point had no legitimate basis to disregard or tinker with the Management Case, and that North Point **did not** in fact "prepare[] the base case in order to reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons…" RS at 38, 41, 44. Rather, it "prepared the base case" because it needed the lower numbers to render its fairness opinion.

52.     Further, North Point's statements that the Merger Consideration "was fair from a financial point of view to [Papa Murphy's] stockholders" RS at 28, 30, was also false and/or misleading. As set forth herein, North Point could not have gotten the Merger Consideration within the range of fairness without utilizing the illegitimately lowered Base Case projections, which were prepared by North Point itself. North Point was expressly told that the Management Case was prepared on a reasonable basis in accordance with industry practice and that the Company's management was not aware of any information or facts that would make the projections it provided to North Point misleading. North Point nevertheless took it upon itself to prepare the illegitimate Base Case projections. North Point thus knew that the Merger

Consideration was not actually fair from a financial point of view to Papa Murphy's stockholders.

53.    Moreover, the Base Case projections themselves, disclosed on page 43 of the Recommendation Statement, were material misrepresentations of the Company's valuation and therefore materially misleading to Papa Murphy's shareholders. As noted above, the Base Case projections were not prepared by management, were meaningfully lower than management's projections and inconsistent with the Company's financial performance and management's statements made during the months preceding the announcement of the Transaction, and were not provided to bidders. Rather, the Base Case projections were concocted by North Point in order to render its fairness opinion. The downward revised Base Case projections thus misled Papa Murphy's shareholders and caused them to believe that the value of Company and its future prospects were much worse than they actually were.

54.    Likewise, the implied equity value per share range set forth in the summary of North Point's Discounted Cash Flow analysis on page 38 of the Recommendation Statement was a misleading statement, because that range was calculated utilizing the illegitimately lowered Base Case projections and therefore presented the value of shareholders' shares in a misleadingly low manner.

55.    Additionally, on pages 26-29 of the Recommendation Statement, the Board listed the "material" factors and reasons for recommending Papa Murphy's shareholders tender their shares in the Tender Offer, including the following:

> The written opinion of North Point to the effect that, as of April 10, 2019, and based upon and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations of the review undertaken by North Point as set forth in its opinion, the consideration to be received by the holders of the Shares pursuant to the Merger Agreement was fair from a financial point of view, to such holders of the Shares. The full text of North Point's written opinion is attached hereto as Annex A. For further discussion of the North Point opinion, see "*Item 4—The Solicitation or Recommendation—Opinion of the Company's Financial Advisor*" below.

RS at 28. The Board knew that the Management Case reflected the only accurate view of the Company's future financial performance, as evidenced by the fact that the Company's management created the Management Case and gave assurances to North Point that it was accurate. The Board also knew that North Point illegitimately lowered those projections to fit the inadequate Merger Consideration within the implied value range of their DCF and misleadingly tout the Transaction as "fair from a financial point of view" to Papa Murphy's shareholders. Accordingly, the Board knew that North Point's fairness opinion was misleading, but still offered it as a "material" reason for Papa Murphy's shareholders to tender their shares in the Tender Offer. Therefore, the Board's endorsement and recommendation of the Merger based on the "written opinion of North Point" was itself a misleading statement. RS at 28. Indeed, by citing the illegitimate fairness opinion as a reason that supported the Board's recommendation of the Merger, the Individual Defendants created an aura of legitimacy with respect to the fairness opinion that they knew it did not deserve.

56.    Similarly, the statements in the Recommendation Statement that the Merger was "fair to and in the best interests of the Company and its stockholders" RS at 16, 26, were false or misleading because the Board knew that the "fairness" of the Merger was premised upon the illegitimately prepared Base Case projections that were inconsistent with management's actual views about the Company's future prospects.

57.    In sum, the above-referenced statements were materially false or misleading, and misled Papa Murphy's shareholders with respect to the purported fairness of the Merger Consideration and the actual value of their shares.

## IV.    The Materially False and Misleading Recommendation Statement Caused Papa Murphy's Shareholders Financial Harm

58.    The Merger Consideration was inadequate consideration for Papa Murphy's shareholders and did not reflect the fair value of their shares. As discussed above, North Point was only able to find the Merger Consideration "fair" as a result of illegitimate downward

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

adjustments to the Company's financial projections. Indeed, in their DCF analysis, North Point found the company to be worth up to $12.34—nearly *double* the Merger Consideration.

59.    Moreover, the $6.45 Merger Considerations represented a derisory 4% premium to the Company's trading price less than a month before the Transaction was announced. Further, other bidders had valued the Company's shares at up to $6.64 per share.

60.    Additionally, the Company's executive officers and the members of the Board had interests in the Transaction that were different from, or in addition to, those of the Company's other stockholders. These interests included, but were not limited to, lucrative golden parachute compensation, retention agreements with MTY, and vesting of stock options that would result from the consummation of the Transaction.

61.    Furthermore, the investor presentation MTY issued upon the announcement of the Transaction on April 11, 2019 stated that certain members of Papa Murphy's "seasoned management team" would "continue to operate the brand independently."

62.    The material misrepresentations in the Recommendation Statement misled Papa Murphy's shareholders to tender their shares into the undervalued Tender Offer. Accordingly, Papa Murphy's shareholders were misled and harmed millions of dollars in the aggregate.

63.    The materially misleading Recommendation Statement also prompted Papa Murphy's shareholders to accept the unfair Merger Consideration in exchange for their shares rather than recoup a greater value through appraisal remedies available in the Transaction. The material misrepresentations in the Recommendation Statement caused Papa Murphy's shareholders to forfeit and not enforce their appraisal rights.

64.    In sum, the Merger Consideration the Company's shareholders received was unfair and inadequate because the intrinsic value of their shares materially exceeded the Merger Consideration. Furthermore, the materially misleading Recommendation Statement was an essential link in the consummation of the unfair Transaction.

## **COUNT I**

**Claims Against Papa Murphy's and the Individual Defendants for Violations of Section 14(e) of the Exchange Act**

65.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.    Defendants caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Transaction.

67.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."  15 U.S.C. § 78n(e).

68.    Papa Murphy's and the Individual Defendants violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to Papa Murphy's shareholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

69.    Papa Murphy's and the Individual Defendants were negligent in allowing the Recommendation Statement to be disseminated with the above-referenced materially misleading statements regarding the Company's projections, the value of the Company, and the purported fairness of the Merger and the reasons that supported its fairness.  As directors and officers of Papa Murphy's, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's shareholders to ensure that it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

70.     Papa Murphy's is imputed with the negligence of the Individual Defendants, who are each directors and/or senior officers of Papa Murphy's.

71.     As a direct result of Papa Murphy's and the Individual Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and other Papa Murphy's shareholders were impeded from making a decision on a fully informed basis and were induced to tender their shares and accept the inadequate Merger Consideration.  The false and/or misleading Recommendation Statement used to solicit the tendering of shares impeded Plaintiff and other Papa Murphy's shareholders from making a fully informed decision regarding the Tender Offer and was an essential link in consummating the Transaction, which deprived them of full and fair value for their Papa Murphy's shares.

72.     At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Papa Murphy's and the Individual Defendants were aware of and/or had access to the true facts concerning the process involved in selling Papa Murphy's, the projections for Papa Murphy's, and Papa Murphy's true value, which is greater than the Merger Consideration Papa Murphy's shareholders received.

73.     The misrepresentations in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in the Tender Offer.  In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to shareholders.

74.     As a direct and proximate result of the dissemination of the misleading Recommendation Statement Papa Murphy's and the Individual Defendants used to obtain shareholder approval of the Transaction, Plaintiff and the Class have suffered damages and actual economic losses (*i.e.* the difference between the value they received as a result of the Transaction and the true value of their shares) in an amount to be determined at trial.  By reason

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of the misconduct detailed herein, Papa Murphy's and the Individual Defendants are liable pursuant to Section 14(e) of the Exchange Act.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

75.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.     The Individual Defendants acted as controlling persons of Papa Murphy's within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Papa Murphy's and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and/or misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction.  They were thus directly involved in the making of the Recommendation Statement.

79.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

80.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

## COUNT III

**Claims Against North Point for Violations of Section 14(e) of the Exchange Act**

81.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

82.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."  15 U.S.C. § 78n(e).

83.     North Point violated this clause of Section 14(e) because they made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in the Recommendation Statement that they knew would be disseminated to Papa Murphy's shareholders in order to solicit them to tender their shares in the Tender Offer.

84.     As identified above, the Recommendation Statement contained false and/or misleading statements regarding North Point's fairness opinion and the Base Case. North Point was aware of and had access to the true facts concerning the Company's financial projections and value, which indicated that the Company was worth more than the Merger Consideration.

85.     Accordingly, North Point made untrue statements of material fact in connection with the Tender Offer that it knew would be included in the Recommendation Statement, in violation of Section 14(e) of the Exchange Act.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

86.     As a direct and proximate result of the dissemination of the misleading Recommendation Statement used to obtain shareholder approval of the Transaction, Plaintiff and the Class have suffered damages and actual economic losses (i.e. the difference between the value they received as a result of the Transaction and the true value of their shares) in an amount to be determined at trial.  By reason of the misconduct detailed herein, North Point is liable pursuant to Section 14(e) of the Exchange Act.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as Class Representatives and their counsel as Class Counsel;

B.     Awarding Plaintiff and the members of the Class compensatory and/or rescissory damages against Defendants, including pre-judgment and post-judgment interest;

C.     Awarding Plaintiff and the members of the Class reasonable attorneys' fees, expert fees, and other costs;

D.     Awarding extraordinary, equitable, and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

E.     Awarding such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  November 8, 2019

**LOCAL COUNSEL:**

**BRESKIN JOHNSON TOWNSEND,**

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PLLC**

*s/ Roger Townsend*
Roger M. Townsend, WSBA No. 25525
1000 Second Avenue, Suite 3670
Seattle, Washington  98104
Tel: 206-652-8660
Fax: 206-652-8290
rtownsend@bjtlegal.com

**OF COUNSEL:**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*