THE HONORABLE BENJAMIN H. SETTLE

(On Reference to The Honorable J. Richard Creatura)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| EVAN BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>PAPA MURPHY'S HOLDINGS INC., JEAN M. BIRCH, WELDON SPANGLER, NOAH A. ELBOGEN, BENJAMIN HOCHBERG, YOO JIN KIM, ALEXANDER C. MATINA, DAVID MOUNTS, JOHN SHAFER, KATHERINE L. SCHERPING, ROB WEISBERG and NORTH POINT ADVISORS LLC,<br><br>                              Defendants. | CASE NO. 19-cv-5514 BHS-JRC<br><br>LEAD PLAINTIFF'S OPPOSITION TO THE PAPA MURPHY'S DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM<br><br>NOTE ON MOTION CALENDAR: Friday, April 10, 2020 |

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

SUMMARY OF FACTUAL ALLEGATIONS................................................................... 1

GOVERNING LEGAL STANDARDS............................................................................. 5

I.     THE MOTION TO DISMISS STANDARD................................................... 5

II.    THE ELEMENTS OF A SECTION 14(e) CLAIM....................................... 5

ARGUMENT ................................................................................................................... 8

I.   PLAINTIFF SUFFICIENTLY PLED MATERIAL MISTATEMENTS............................ 8

    A.   The Base Case Projections were materially false or misleading, the safe  harbor does not apply, and the cautionary language Defendants point to is insufficient to shield them on a motion to dismiss.................................................................................... 10

    B.   Plaintiff sufficiently pled his claim premised upon the summary of the Discounted Cash Flow Analysis contained in the Recommendation Statement ....................................... 17

    C.   Plaintiff sufficiently pled his claim premised upon the statement identifying  the fairness opinion as a "material factor" supporting the board's determination and recommendation ................................................................................................ 19

    D.   Plaintiff sufficiently pled his claim premised upon the statement that "North  Point prepared the base case in order to reflect the risk that the full benefits of the management case may not be achieved"........................................................................ 21

II.    PLAINTIFF SUFFICIENTLY PLED NEGLIGENCE ...................................... 24

III.   PLAINTIFF SUFFICIENTLY PLED LOSS CAUSATION............................................ 27

IV.   SHAREHOLDERS MAY BRING PRIVATE SECTION 14(e) CLAIMS BASED ON  A NEGLIGENCE THEORY ................................................................................... 29

V.    PLAINTIFF'S SECTION 20(a) CLAIM MAY NOT BE DISMISSED ........................... 30

CONCLUSION .............................................................................................................. 30

## TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE(S)**

*In re Advance Auto Parts, Inc.*,
   No. 18-212-RGA, 2020 U.S. Dist. LEXIS 21271 (D. Del. Feb. 7, 2020) ............................. 15

*Arnold v. Soc'y for Sav. Bancorp*,
   650 A.2d 1270 (Del. 1994) ............................................................................... 7, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 5

*Azar v. Blount Int'l, Inc.*,
   No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) ........ 25-27, 29, 30

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................. 8

*Baum v. Harman Int'l Indus.*,
   408 F. Supp. 3d 70 (D. Conn. 2019) .................................................................... 13

*Beck v. Dobrowski*,
   559 F.3d 680 (7th Cir. 2009) .............................................................................. 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 5

*Bradshaw v. Jenkins*,
   No. C83-771R., 1984 U.S. Dist. LEXIS 24101 (W.D. Wash. Aug. 27, 1984) ..........................6

*Brown v. Brewer*,
   No. CV 06-3731-GHK (JTLx), 2008 U.S. Dist. LEXIS 108904 (C.D. Cal. July 14, 2008) .. 28

*Brown v. Brewer*,
   No. CV 06-3731-GHK (SHx),
   2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) .......................................... 7, 23, 25

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................................. 15

*In re Convergent Techs. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ................................................................................ 7

*Durning v. First Bos. Corp.*,
   815 F.2d 1265 (9th Cir. 1987) ............................................................................ 7, 8

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................. 30

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

ii

*In re Envision Healthcare Corp.*,
  No. 18-1068-RGA, 2019 U.S. Dist. LEXIS 128237 (D. Del. Aug. 1, 2019) ....... 12, 13, 25, 29

*In re Envision Healthcare Corp.*,
  No. 18-cv-01068-RGA, 2019 U.S. Dist. LEXIS 159356 (D. Del. Sept. 19, 2019) ................ 11

*Fargo v. San Juan Bautista*,
  857 F.2d 638 (9th Cir. 1988) .................................................................................. 26

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) .............................................................................. 8, 16

*Freidus v. Barclays Bank Pub. Ltd. Co.*,
  734 F.3d 132 (2d Cir. 2013) ................................................................................. 11

*Golub v. Gigamon Inc.*,
  No. 17-CV-06653-WHO, 2019 U.S. Dist. LEXIS 149898 (N.D. Cal. Sept. 3, 2019) ..... 14-15

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) ................................................................................. 30

*Gonzalez v. Arizona*,
  624 F.3d 1162 (9th Cir. 2010) .............................................................................. 26

*Gould v. Am.-Hawaiian S.S. Co.*,
  535 F.2d 761 (3d Cir. 1976) .......................................................................... 7, 23, 25

*Hayes v. Crown Cent. Petrol. Corp.*,
  78 F. App'x 857 (4th Cir. 2003) ........................................................................... 18

*In re Hot Topic Sec. Litig.*,
  No. CV 13-02939 SJO (JCx),
  2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) ........................................ 13, 27, 29

*Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.*,
  870 F. Supp. 2d 1015 (D. Haw. 2012) .................................................................... 27

*Kahn v. Lynden, Inc.*,
  705 F. Supp. 1458 (W.D. Wash. 1989) ................................................................... 6

*Karp v. First Conn. Bancorp, Inc.*,
  No.: RDB-18-2496, 2019 U.S. Dist. LEXIS 162819 (D. Md. Sept. 24, 2019) ..................... 29

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................. 8

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

iii

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ........................................................................ 5

*Laborers' Local #231 Pension Fund v. Cowan*,
  No. 17-478, 2018 U.S. Dist. LEXIS 110545 (D. Del. July 2, 2018) ..................................... 20

*Lane v. Page*,
  649 F. Supp. 2d 1256 (D.N.M. 2009) .................................................................. 11

*Lane v. Page*,
  727 F. Supp. 2d 1214 (D.N.M. 2010) .................................................................. 28

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ....................................................................... 27

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ......................................................................... 8

*Marx v. Comput. Scis. Corp.*,
  507 F.2d 485 (9th Cir. 1974) ............................................................... 10, 15, 17

*In re Maxim Integrated Prods.*,
  574 F. Supp. 2d 1046 (N.D. Cal. 2008) ................................................................ 25

*Miller v. IBM*,
  138 F. App'x 12 (9th Cir. 2005) ...................................................................... 27

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) ....................................................................... 7, 18

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................... 6, 27

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ......................................................................... 27

*NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*,
  No. 3:16-cv-01756-YY, 2017 U.S. Dist. LEXIS 165139 (D. Or. Oct. 3, 2017) ............. 23, 24

*In re Ocera Therapeutics Secs. Litig.*,
  No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16, 2018) ................. 14

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ......................................................................... 27

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) .......................................................................... 5

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

iv

*Parsons v. Jefferson-Pilot Corp.*,
  789 F. Supp. 697 (M.D.N.C. 1992) ................................................................ 7, 23, 25

*Plaine v. McCabe*,
  797 F.2d 713 (9th Cir. 1986) ................................................................................ 6, 28

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ............................................................................ 11, 15

*Schreiber v. Burlington N., Inc.*,
  472 U.S. 1 (1985) ....................................................................................................... 30

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) .................................................................................... 8

*Smith v. Robbins & Myers*,
  969 F. Supp. 2d 850 (S.D. Ohio 2013) ............................................................... 19, 20

*TSC Indus. v. Northway*,
  426 U.S. 438 (1976) ................................................................................................. 7, 8

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d 964 (N.D. Cal. 2009) ...................................................................... 11

*Va. Bankshares v. Sandberg*,
  501 U.S. 1083 (1991) ............................................................................................ 11, 16

*Varjabedian v. Emulex Corp.*,
  888 F.3d 399 (9th Cir. 2018) ......................................................................... 6, 26, 30

*Varjabedian v. Emulex Corp.*,
  No. SACV 15-00554-CJC(JCGx),
  2020 U.S. Dist. LEXIS 40037 (C.D. Cal. Feb. 25, 2020) ......................................... 26, 29-30

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................... 27

*Wilson v. Great Am. Indus.*,
  855 F.2d 987 (2d Cir. 1988) ................................................................................. 7, 25

*Zucco Partners, L.L.C. v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..................................................................................... 26

**STATUTES**

15 U.S.C. § 78n(e) ............................................................................................. 5, 7, 15, 18

15 U.S.C. § 78u-4(b)(1) .............................................................................................. 8

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

v

15 U.S.C. § 78u-4(b)(2) ........................................................................................ 26

15 U.S.C. § 78u-5(b)(2)(C) ........................................................................ 6, 10, 14

**RULES**

Fed. R. Civ. P. 8 .................................................................................................. 27

Fed. R. Civ. P. 9 .................................................................................................. 27

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 5, 8

**OTHER AUTHORITIES**

Steven M. Davidoff, *Fairness Opinions*,
    55 Am. U. L. Rev. 1557 (Aug. 2006)................................................................ 22

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

vi

## INTRODUCTION

The Recommendation Statement[1] concerning MTY's tender offer to acquire Papa Murphy's misled stockholders regarding Papa Murphy's financial prospects, the purported fairness of the Merger Consideration, and the purported legitimacy of the Base Case Projections. The Base Case was a case of financial projections that was suddenly prepared by Papa Murphy's financial advisor, North Point, and utilized solely in connection with its fairness opinion, despite the fact that Papa Murphy's management had already prepared meaningfully higher Management Case Projections which—unlike the Base Case—accurately reflected Papa Murphy's standalone prospects and the value of shareholders' shares. Indeed, the Management Case reflected *management's best and only* estimates regarding Papa Murphy's expected future financial performance, was based on management's already conservative outlook, and already fully accounted for various risks that the Company may face in trying to achieve its operations plan, including risks related to same store sales growth. ¶ 44. Conversely, the meaningfully lower Base Case Projections were prepared by North Point and were needed in order to make the inadequate $6.45 per share Merger Consideration fall within—*rather than completely below*—the value range for the most important financial analysis underlying a banker's fairness opinion, the Discounted Cash Flow Analysis. ¶ 4.

As elaborated on below, the Complaint sufficiently pleads four material misstatements, and all of the Papa Murphy's Defendants' arguments in support of dismissal fail. Furthermore, in order to simplify and streamline this litigation, Plaintiff has voluntarily dismissed North Point without prejudice, and its separate motion to dismiss is therefore no longer at issue.

## SUMMARY OF FACTUAL ALLEGATIONS

In the fall of 2018, the Papa Murphy's Defendants began a strategic review process to sell the Company. ¶ 28. To facilitate the sales process, Papa Murphy's management prepared financial

---

[1] All capitalized terms not defined herein have the same meaning set forth in the Amended Class Action Complaint ("Complaint") (ECF No. 22). Citations denoted as "¶_" refer to the Complaint.

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

projections for the Company for years 2019-2023 on a reasonable basis in accordance with industry practice to reflect their best available estimates and judgments regarding the expected future results of the Company (the "Management Case Projections"). ¶¶ 44, 52. The Management Case was based on Papa Murphy management's already conservative outlook, and accounted for various risks that the Company may have faced in trying to achieve its operations plan. ¶¶ 44, 46. The Company provided the Management Case to prospective bidders to aid in their evaluation of the Company, and to North Point to use in connection with its fairness opinion. ¶ 45.

During the sales process, North Point provided multiple rounds of valuation analyses utilizing the Management Case Projections. Recommendation Statement at 17, 18, 25. However, once the inadequate Merger Consideration of $6.45 per share was agreed upon, the Management Case Projections presented a major problem for North Point: they revealed the Merger Consideration fell below the range of fairness in its most important valuation analyses. ¶ 49.

Back in October 2018, North Point agreed to act as the Company's financial advisor in exchange for $250,000 upon their submission of a fairness opinion and $3,050,000, entirely contingent upon the successful completion of the Transaction. ¶ 28. In other words, if North Point could not produce an opinion of "fairness" for the Transaction, then they wouldn't receive a dime for the six months of work they performed during the sales process. To remedy the situation, North Point created a new set of lowered financial projections, which allowed them to fit the Merger Consideration into the range of fairness (the "Base Case Projections"). ¶ 4. By capping the same store sales growth rate at 2.5%, North Point was able to meaningfully lower the financial projections that would serve as the inputs to their valuation analyses and bring down the low end of the resulting per share equity value ranges to a figure just lower than the Merger Consideration. ¶ 46-47. Indeed, while Defendants attempt to portray the reduction in projections as insignificant, they were not:

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

| Projected Metric | Case | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| System-Wide Same Store Sales Growth | Management | 1.9% | 4.3% | 4.5% | 3.6% | 3.5% |
| | Base | 1.9% | 2.5% | 2.5% | 2.5% | 2.5% |
| | *Percent Change* | - | *-41.9%* | *-44.4%* | *-30.6%* | *-28.6%* |
| Total Revenue | Management | $107.2 | $112.9 | $120.0 | $123.8 | $128.5 |
| | Base | $107.2 | $111.2 | $116.3 | $119.3 | $123.1 |
| | *Percent Change* | - | *-1.5%* | *-3.1%* | *-3.6%* | *-4.2%* |
| EBITDA | Management | $22.4 | $25.2 | $28.5 | $30.5 | $32.1 |
| | Base | $22.4 | $23.0 | $23.8 | $24.8 | $26.9 |
| | *Percent Change* | - | *-8.7%* | *-16.5%* | *-18.7%* | *-16.2%* |
| Cash Flow from Continuing Operations | Management | $16.5 | $19.5 | $23.1 | $24.7 | $26.4 |
| | Base | $16.5 | $18 | $19.8 | $20.6 | $22.9 |
| | *Percent Change* | - | *-7.7%* | *-14.3%* | *-16.6%* | *-13.3%* |

The adjustment to the Management Case was contrary to management's view of the Company, which management assured North Point represented their best available estimates. ¶¶ 44, 51. Moreover, the reduction to the projections was inconsistent with management's statements during the six months leading up to Transaction. ¶¶ 32-40.

For example, on November 7, 2018, Papa Murphy's held a conference call to discuss the third quarter 2018 financial results, which represented the Company's "*best percentage change in same-store sales in 12 quarters.*" ¶ 32. Heralding the quarter as a success and touting the results, Individual Defendant Spangler noted that although the sales trends continued to improve and results were tracking positive, the Company would maintain a conservative outlook for the future. *Id*. The call concluded with Spangler stating that the Company's actions should drive "sales growth in both the short and the long-term." *Id*.

Similarly, on February 4, 2019—two months before the Transaction was announced— Papa Murphy's issued a release announcing that its preliminary 2018 fourth quarter and fiscal year results were "better than guidance and *sales trends [were] improving.*" ¶ 35. The release quoted Individual Defendant Spangler, who stated: "*We saw positive same store sales in October, marking our first period of same store sales growth in 37 months. Momentum has continued into*

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

3

*2019, and we expect our strategic and cost saving initiatives to continue to deliver in 2019.*" *Id.* And on March 14, 2019—four weeks before the Transaction was announced—Papa Murphy's issued another press release announcing that the Company performed better than internal guidance and consistent with previously reported results. ¶ 36. That same day, the Company held another conference call to discuss the fourth quarter 2018 financial results. ¶ 37. Once again, Spangler and Papa Murphy's CFO, Nik Rupp, were pleased about the positive trending results—which exceeded previous guidance. *Id.*

Prior to the announcement of the Transaction on April 11, 2019, Papa Murphy's was in the midst of a significant turnaround. ¶ 30. Between January and mid-March 2019, the Company's stock price increased approximately 36%, to a high of $6.20 just weeks before the Transaction was announced. *Id.* In other words, the Merger Consideration that was misleadingly touted to Papa Murphy's shareholders in the Recommendation Statement as a "fair" price that provided a "significant premium," was in fact a mere 4% higher than the Company's trading price just weeks prior to the deal's announcement. *Id.* Yet despite six consecutive months of positive trending announcements regarding same store sales growth that outperformed the Company's expectations, North Point decided to slash management's legitimately prepared projections and utilize the significantly lower Base Case projections in conjunction with its fairness opinion. ¶ 42.

As alleged in the Complaint and elaborated on below, the Papa Murphy's Defendants were responsible for the contents of the Recommendation Statement. ¶¶ 14, 69. They violated Section 14(e) by allowing the Recommendation Statement to include the Base Case Projections, which they did not believe in and knew did not accurately reflect Papa Murphy's actual expected future prospects, along with a summary of North Point's misleading Discounted Cash Flow Analysis. They also allowed the Recommendation Statement to misleadingly cite North Point's fairness opinion as a material factor that supported their decision to recommend the Merger to shareholders, despite the fact that they knew the fairness opinion was predicated on the baseless

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

4

Base Case Projections. And they failed to correct the statement in the Recommendation Statement that provided a pretextual and misleading explanation as to why North Point created the meaningfully lower Base Case Projections. As set forth below, the Papa Murphy's Defendants must be held accountable for failing to fulfill their legal obligation to ensure that the Recommendation Statement did not contain materially false and misleading statements.

## GOVERNING LEGAL STANDARDS

### I.   THE MOTION TO DISMISS STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court must accept all factual allegations in the complaint as true (even if doubtful in fact), and construe the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face," but "detailed factual allegations are not required." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### II.   THE ELEMENTS OF A SECTION 14(e) CLAIM

Section 14(e) governs untrue statements of material fact with respect to tender offers. 15 U.S.C. § 78n(e). The statute makes it "unlawful for any person to make any untrue statement of a material fact…in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." *Id*.

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

5

In analyzing the sufficiency of the Complaint, the Court must be cognizant of important differences between a claim under Section 14(e) and claims under other federal securities statutes. First, scienter is not required to state a claim under Section 14(e). *Varjabedian v. Emulex Corp.*, 888 F.3d 399, 401, 408 (9th Cir. 2018). Second, the PSLRA safe harbor is facially inapplicable to forward-looking statements "made in connection with a tender offer[.]" 15 U.S.C. § 78u-5(b)(2)(C). Accordingly, Defendants' heavy reliance on cases involving claims that require scienter or where the safe harbor applied is misplaced.

In light of *Varjabedian*, a plaintiff may proceed with a Section 14(e) claim if they have sufficiently pled that a defendant negligently made a material misstatement or omission in a recommendation statement that was an essential link in consummating a tender offer transaction,[2] and that the resulting transaction caused them injury. *See Varjabedian*, 888 F.3d at 401 ("We now hold that Section 14(e) of the Exchange Act requires a showing of negligence, not scienter."); *Plaine v. McCabe*, 797 F.2d 713, 716, 722 (9th Cir. 1986) (reversing order granting defendants summary judgment in Section 14(e) action premised upon "certain information regarding projection of future revenues" and "the financial opinions rendered by" financial advisors, and explaining Section 14(e) was intended "to compensate plaintiffs injured by violations" "whether

---

[2] In *Plaine*, the Ninth Circuit favorably cited to the causation standard established by the Supreme Court in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). *Mills* involved a claim under Section 14(a) of the Exchange Act, "a section that is similar in purpose to section 14(e)." *Plaine*, 797 F.2d at 721. In *Mills*, the Supreme Court established a legal presumption connecting materiality and transaction causation. *Mills*, 396 U.S. at 385. As the Ninth Circuit explained *Mills*' holding, "the plaintiff succeeds in proving causation once the misstatement or omission has been shown to be 'material.'" *Plaine*, 797 F.2d at 721. The Ninth Circuit also noted that "[c]ourts have applied the same causation standard under § 14(e)." *Id.* at 721 n.15. Thus, materiality and causation are directly linked to each other. *Id.*; *see also Bradshaw v. Jenkins*, No. C83-771R., 1984 U.S. Dist. LEXIS 24101, at *5-9 (W.D. Wash. Aug. 27, 1984) (explaining that in *Mills* the Supreme Court "found that causation could be shown without proof that the outcome of the merger vote was affected by reliance on the misrepresentations or nondisclosures in the proxy statement" and holding that a plaintiff "has standing to assert a § 14(a) claim whether or not she was misled or deceived by the proxy materials in question"); *Kahn v. Lynden, Inc.*, 705 F. Supp. 1458, 1463-64 (W.D. Wash. 1989) (holding, in light of *Plaine*, that a plaintiff need not establish reliance on the defendants' misrepresentations or omissions in order to assert a claim under Section 14(e)).

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

6

the measure of damages is out-of-pocket loss, benefit of the bargain, or some other appropriate standard.").

Furthermore, as officers and directors of Papa Murphy's, the Papa Murphy's Defendants were responsible for the contents of the Recommendation Statement. *See Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 768, 778 (3d Cir. 1976) ("[S]ection 14(a) of the Act imposed on [director] Casey a federal fiduciary duty not to approve a materially false or misleading proxy statement."); *Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 703 (M.D.N.C. 1992) (deeming "[e]ach of the directors wo reviewed the proxy statement" to be "equally as negligent for failing to notice" the allegedly misleading word); *see also Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1277 (Del. 1994). And, "[a]s a matter of law, the preparation of a [recommendation] statement by corporate insiders containing materially false or misleading statements…is sufficient to satisfy the [] negligence standard." *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *81 (C.D. Cal. June 17, 2010); *Wilson v. Great Am. Indus.*, 855 F.2d 987, 995 (2d Cir. 1988).

Because the causation and negligence elements are directly linked to materiality, the key inquiry at this stage is whether the Complaint sufficiently pleads a materially false or misleading statement. "The test for determining whether or not a fact is material is whether 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1268 n.4 (9th Cir. 1987) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1975)). And while Section 14(e) prohibits "untrue statement[s] of a material fact[,]" 15 U.S.C. § 78n(e), "literal truth is not the standard for determining whether statements in a prospectus are misleading." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). "'Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors.'" *Id.* (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991)).

Importantly, materiality is a "fact-specific inquiry" that "depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988). "Similarly, whether a public statement is misleading…is a mixed question to be decided by the trier or fact." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). When assessing the materiality of information that is "contingent or speculative in nature, it is difficult to ascertain whether the 'reasonable investor' would have considered the [] information significant at the time." *Basic Inc.*, 485 U.S. at 232. "The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *TSC Indus.*, 426 U.S. at 450. Accordingly, a complaint may only be dismissed on materiality grounds "when the adequacy of the disclosure is 'so obvious that reasonable minds [could] not differ.'" *SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011) (quoting *Durning,* 815 F.2d at 1268).

## ARGUMENT

## I.   PLAINTIFF SUFFICIENTLY PLED MATERIAL MISTATEMENTS

At the outset, it is important to correctly identify and characterize Plaintiff's disclosure claims. In compliance with 15 U.S.C. § 78u-4(b)(1),[3] the Complaint specifies each allegedly false or misleading statement, the reasons why those statements are false or misleading, and the facts on which the allegations made on information and belief were formed. Specifically, in a section

---

[3] The statute's straightforward specificity requirement did not "alter[] the usual contours of a Rule 12(b)(6) ruling." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). Indeed, the statute does not change the well-settled principle that, on a motion to dismiss, Plaintiff is not required to convince the Court that the alleged misstatements were *material as a matter of law*; rather, the Complaint may only be dismissed on materiality grounds if the alleged misstatements are immaterial as a matter of law, meaning the adequacy of the disclosure is so obvious that reasonable minds could not differ. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008, 1014 (9th Cir. 2018) (applying both § 78u-4(b)(1) and the well-settled principle).

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

entitled "The Materially False and Misleading Recommendation Statement", the Complaint identifies the following four material misstatements:

1) "the Base Case projections themselves, disclosed on page 43 of the Recommendation Statement", which "were not prepared by management, were meaningfully lower than management's projections and inconsistent with the Company's financial performance and management's statements made during the months preceding the announcement of the Transaction, and were not provided to bidders", and "misled Papa Murphy's shareholders and caused them to believe that the value of Company and its future prospects were much worse than they actually were." (¶ 53);

2) The summary of North Point's Discounted Cash Flow Analysis and the resulting implied equity value range set forth on page 38 of the Recommendation Statement, which was misleading "because that range was calculated utilizing the illegitimately lowered Base Case projections and therefore presented the value of shareholders' shares in a misleadingly low manner" (¶ 54);

3) The statements on pages 26-28 of the Recommendation Statement identifying North Point's fairness opinion as a "material factor" that supported the Board's determination that the terms of the Merger were "fair to, advisable and in the best interests of, the Company and its stockholders" and its decision "to recommend that the Company's stockholders accept the Offer and tender their Shares in the Offer," which were misleading because "by citing the illegitimate fairness opinion as a reason that supported the Board's recommendation of the Merger, the Individual Defendants created an aura of legitimacy with respect to the fairness opinion that they knew it did not deserve." (¶ 55); and

4) The statement that "North Point prepared the base case in order to reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons…" (¶¶ 50-51), which was false and/or misleading because North Point did not actually "prepare[] the base case *in order to* reflect the risk that the full benefits of the management case may not be

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

9

achieved for a variety of reasons," but rather, in order to have projections it could use to get the Merger Consideration to fall within its Discounted Cash Flow valuation range.

The Papa Murphy's Defendants have muddled the governing standards and applicable analysis. They devote significant portions of their brief to discussing *omissions* claims and cases—where the plaintiff alleges the proxy or recommendation statement failed to disclose a material piece of information. However, this is not an omissions case; rather, as noted above, Plaintiff alleges that the Recommendation Statement *contained* (rather than omitted) four statements that were materially false or misleading. The Papa Murphy's Defendants also fail to grapple with the well-settled body of Ninth Circuit authority discussing when projections are actionable misstatements, and erroneously invoke the PSLRA's safe harbor provision, which is facially inapplicable here. 15 U.S.C. § 78u-5(b)(2)(C). As set forth below, all four of the challenged statements are actionable, and the Papa Murphy's Defendants' motion to dismiss should be denied in its entirety.

> A.   **The Base Case Projections were materially false or misleading, the safe harbor does not apply, and the cautionary language Defendants point to is insufficient to shield them on a motion to dismiss**

Plaintiff first claims that the Base Case Projections themselves were an untrue statement of material fact. ¶ 53. It is well-settled that a forecast "may be regarded as a 'fact' within the meaning of the" federal securities laws. *Marx v. Comput. Scis. Corp.*, 507 F.2d 485, 489 (9th Cir. 1974). "Nor can there be doubt that the forecast of earnings [is] a 'material' fact[,]" as "earnings projections of a company constitute a prime factor in estimating the worth of its stock." *Id*. A forecast is actionable as an "untrue" statement if, at the time the statement was made, the maker "did not then believe earnings would be in that amount or knew that there was reason to believe they would not be." *Id*. at 490. "In addition, because such a statement implies a reasonable method of preparation and a valid basis…it would be 'untrue' absent such preparation or basis." *Id*. In other words, "[i]n the Ninth Circuit, a projection is a 'factual misstatement if (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

10

undisclosed facts tending seriously to undermine the statement's accuracy.'" *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 972 (N.D. Cal. 2009) (quoting *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996)).

Contrary to Defendants' argument, allegations of disbelief "are not the same as allegations of fraud." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013). Furthermore, in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), the Supreme Court explained what types of allegations and ultimate proof would be appropriate to sufficiently attack "the truth of directors' statements of reasons or belief"—namely, "circumstantial evidence bearing on the facts that would reasonably underlie the reasons claimed and the honesty of any statement that those reasons are the basis for a recommendation or other action." *Id*. at 1092-93. The Supreme Court also explained that the same type of facts would support the conclusion "that the statement also expressly or impliedly asserted something false or misleading about its subject matter" or "was defective as to its subject matter." *Id*. at 1095-96;[4] *see also In re Envision Healthcare Corp.*, No. 18-cv-01068-RGA, 2019 U.S. Dist. LEXIS 159356, at *5 (D. Del. Sep. 19, 2019); *Lane v. Page*, 649 F. Supp. 2d 1256, 1291 (D.N.M. 2009) ("When it comes to the underlying facts that will support a conclusion that a statement is objectively or subjectively false, there may be significant overlap."). This is sometimes referred to in the case law as objective falsity. *In re Envision Healthcare Corp.*, 2019 U.S. Dist. LEXIS 159356, at *5. Here, Plaintiff has pled sufficient facts to challenge the Base Case Projections as materially untrue statements.

First, the Complaint sufficiently alleges that the Papa Murphy's Defendants did "not actually believe[]" in the Base Case Projections, but nevertheless elected to include those projections in the Recommendation Statement. *Provenz*, 102 F.3d at 1487. Specifically, the Complaint alleges that: (i) the Base Case Projections were not prepared by Papa Murphy's

---

[4] Specifically, in *Virginia Bankshares* the plaintiff pointed to "facts about the Bank's assets and its actual and potential level of operation to prove" *both* that the directors' description of a $ 42 per share merger price as "high" and "fair" "*was misleading about its subject matter and* a false expression of the directors' reasons" *Id*. at 1094 (emphasis added).

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

11

management, which instead prepared the significantly higher Management Case Projections (¶¶ 4, 46); (ii) the Base Case Projections were prepared by North Point solely for use in connection with its fairness opinion, and were not relied upon during the Company's strategic review process (¶ 4); (iii) nothing negative occurred in the months preceding the announcement of the Merger that would warrant any reduction (let alone a meaningful reduction) to the already conservative Management Case (¶ 40); (iv) the Papa Murphy's Defendants only provided bidders with the Management Case Projections, not the Base Case Projections (¶¶ 4, 53); (v) the Papa Murphy's Defendants indicated or knew that the meaningfully higher Management Case Projections reflected management's best estimates, were already conservative, and were fully consistent with the Company's strong financial performance in the quarters immediately preceding the announcement of the Merger (¶¶ 44, 46, 51); and (vi) same store sales growth figures during the months immediately prior to the Merger announcement were positive and exceeded internal expectations (¶¶ 32-38). And while the Papa Murphy's Defendants contend these allegations are insufficient to allege "that the Papa Murphy's board 'knew' that the management case was the only accurate view of the Company's prospects," ECF No. 25 at 12, courts have found similar factual allegations sufficient to plead that directors did not actually believe in a particular case of projections.[5]

For example, in *In re Envision Healthcare Corp.*, No. 18-1068-RGA, 2019 U.S. Dist. LEXIS 128237 (D. Del. Aug. 1, 2019), the court cited: (i) "the timing of the preparation of the" lower projections "in relation to the overtures" of the buyer "and other potential bidders"; (ii) "the lack of any meaningful change between" the date the higher projections and the lower projections were prepared; (iii) "the fact that the [lower projections] were not given to" the buyer;

_____

[5] Furthermore, contrary to the Papa Murphy's Defendants' argument, there is nothing "nonsensical" about one case of projections being "the only reasonable projections", and another case of projections being unreasonable and not legitimately reflecting the expected future financial prospects of a company. Under the Papa Murphy Defendants' logic, projections could never be actionable as false or misleading statements because "the future is not knowable." ECF No. 25 at 12. That is obviously not the law.

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

12

and (iv) "statements made by executives regarding confidence in the [higher projections] as factual support for the allegations in the amended complaint." *Id*. at *10, *14.

Similarly, in *In re Hot Topic Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014), the court pointed to the fact that the higher projections "were used by management and the Board throughout" the strategic review process "without any doubt as to the appropriateness of the assumptions underlying the projections," which the court stated showed "that the Board members…knew of the alleged accuracy of the [higher projections]." *Id*. at *19. The court also pointed to the fact that the higher projections were discussed at a board meeting "with no mention of their inadequacy or inaccuracy, suggesting that the Board accepted the suitability of the [higher projections]", and that "the Board knew of the [lower projections] and approved their inclusion in the Proxy Statement and their use by Guggenheim in developing the Fairness Opinion." *Id*. at *20. The *Hot Topic* Court concluded that "[t]aken together, these factual allegations are sufficient to give rise to the 'strong inference' that the remaining Individual Defendants knew that the [higher projections] were appropriate and nonetheless approved the use of alternative projections in the Proxy Statement and in the Fairness Opinion." *Id*.

Lastly, in *Baum v. Harman Int'l Indus.*, 408 F. Supp. 3d 70 (D. Conn. 2019), the court found allegations that the company's CEO indicated that the initial higher projections were "conservative" and "expressed confidence in Harman's revenue growth overall" as sufficient to plead the director defendants knew that certain statements about the projections were false. *Id*. at 87 (citing the CEO's generalized statement that "[l]onger term, we are confident that we will see accelerated revenue expansion from our automotive backlog. . . .").

Here, Plaintiff points to facts that are substantively similar to those that the courts in *Envision*, *Hot Topic*, and *Baum* indicated were sufficient to allege that officers and directors did not believe in certain projections or knew that statements regarding certain projections were false. *Supra*. And, importantly, unlike those cases, here the safe harbor does not foreclose a claim

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

13

predicated on the projections themselves being actionable misstatements, because the challenged statements were "made in connection with a tender offer." 15 U.S.C. § 78u-5(b)(2)(C).

The Papa Murphy's Defendants' heavy reliance on *In re Ocera Therapeutics Sec. Litig.*, No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16, 2018) is misplaced. There, the projections that were allegedly unreasonable and illegitimate (referred to as the November Projections) were "prepared by the Company's management" (*id*. at *8)—*not by the company's financial advisor*. This is a significant difference. Indeed, the fact that the Base Case Projections here were not prepared by management, but rather, were prepared by a banker whose sole task was to sell the Company, and the fact that the Base Case Projections were meaningfully lower than the numbers prepared by the people with the best insight regarding the Company's future (management), is highly probative that the Base Case Projections were not actually believed in by the Papa Murphy's Defendants—including the Company's CEO Defendant Spangler, who was undoubtedly intricately involved in preparing the meaningfully higher Management Case Projections. Furthermore, *Ocera* is poorly reasoned in several respects, as another district court in this circuit recently noted. *Infra*. Indeed, *Ocera* is now on appeal, and set for oral argument in the Ninth Circuit on May 15, 2020.

The Papa Murphy's Defendants' reliance on *Golub v. Gigamon Inc.*, No. 17-CV-06653-WHO, 2019 U.S. Dist. LEXIS 149898 (N.D. Cal. Sept. 3, 2019) is similarly misplaced. The claim in *Gigamon* was based upon the announcement of positive financial results *months after* the proxy statement was filed, which the Court deemed tantamount to alleged fraud by hindsight. *Id*. at *9-10. Here, by contrast, the statements by Papa Murphy's and its management that are inconsistent with there being any legitimate basis to reduce the Management Case Projections were made during the period *preceding* the filing of the Recommendation Statement. ¶¶ 32-38. This was the exact basis on which Judge Orrick distinguished *Golub* from *Envision*. As Judge Orrick explained in *Golub*: "Further, although the plaintiffs in *Envision* also brought a Section 14(a) claim based on a proxy that used the lower of two projections prepared by management, like *Azar*, this was

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

done after a favorable quarter. As the magistrate judge observed, there was no meaningful change during the time period between the preparation of the two projections. That is not the case here. For that reason, *Envision*, like *Azar*, is unhelpful to Golub." 2019 U.S. Dist. LEXIS 149898 at *31, n.5. In other words, this case is much more analogous to *Envision* than *Golub*.

Furthermore, Plaintiff sufficiently alleges there was "no reasonable basis for" the Base Case Projections. *Provenz*, 102 F.3d at 1487. "A projection lacks a reasonable basis, and is thus actionable, if it was 'made with either (1) an inadequate consideration of the available data or (2) the use of unsound forecasting methodology.'" *In re Advance Auto Parts, Inc.*, No. 18-212-RGA, 2020 U.S. Dist. LEXIS 21271, at *6-7 (D. Del. Feb. 7, 2020) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997)). Here, the Base Case Projections were prepared with both inadequate consideration of the available data and by using an unsound forecasting methodology. Specifically, the Base Case Projections were artificially capped utilizing a 2.5% same store sales growth rate, despite the fact that Papa Murphy's management—the ones with unique insight and expertise regarding the Company's prospects—indicated that a 3.5% to 4.5% annual increase was the appropriate metric. ¶ 46; Recommendation Statement at 38, 41, 43. The use of a 2.5% same store sales growth rate was thus unsound, and inconsistent with the available data, *i.e.*, the Management Case Projections and the quarterly results preceding the announcement of the Merger, which the Management Case Projections and their associated 3.5%-4.5% growth rate were based upon. ¶¶ 32-42, 44, 46.

Defendants also contend they are not liable because they included the Base Case Projections in the Recommendation Statement. ECF No. 25 at 5, 14. Defendants have the law backwards; they were not required to "reveal all projections" *Provenz*, 102 F.3d at 1488, and they were prohibited from revealing projections that were materially false or misleading. *See* 15 U.S.C. § 78n(e); *Marx*, 507 F.2d at 489; *Provenz*, 102 F.3d at 1487. In other words, the Papa Murphy's Defendants are liable under Section 14(e) *precisely because* they elected to include the materially false and misleading Base Case Projections in the Recommendation Statement.

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

The Papa Murphy's Defendants also contend—as a matter of law on a motion to dismiss—that the Base Case Projections were not misleading because the Recommendation Statement disclosed the *purported* reason why North Point created the Base Case Projections, that those projections assumed a lower annual increase in same store sales than the meaningfully higher Management Case, and warned "of the significant risks and limitations on the Company's ability to achieve the projected financial results of either the management case or the base case." ECF No. 25 at 15-17. As an initial matter, Plaintiff also alleges that the *purported* reason provided in the Recommendation Statement as to why North Point created the Base Case Projections *was a misleading statement in its own right*. *Infra*. Furthermore, while Defendants do not refer to it by name, this argument can only be understood as an attempt to invoke the bespeaks caution doctrine, which does not provide a basis for dismissal here.

"[T]he bespeaks caution doctrine reflects nothing more than the unremarkable proposition that statements must be analyzed in context." *Fecht*, 70 F.3d at 1082 (internal quotation marks omitted). The doctrine does not change the principle "that whether a statement in a public document is misleading may be determined as a matter of law only when reasonable minds could not disagree as to whether the *mix* of information in the document is misleading. Inclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading." *Id*. (citing *Virginia Bankshares,* 501 U.S. at 1097 ("a misleading statement will not always lose its deceptive edge simply by joinder with others that are true. . . .")). "A motion to dismiss for failure to state a claim will succeed only when the documents containing defendants' challenged statements include *enough* cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading." *Fecht*, 70 F.3d at 1082 (internal quotation marks and citations omitted).

Here, as the Papa Murphy's Defendants acknowledge, the generalized warnings regarding risks and limitations on the Company's ability to achieve the projections *applied to both the base case and the management case*, ECF No. 25 at 16, which only caused reasonable shareholders to

erroneously draw an equivalency between the legitimacy of the reasonably prepared Management Case and the Base Case Projections that the Papa Murphy's Defendants did not actually believe in. If anything, the Recommendation Statement's description of the Base Case left Papa Murphy's shareholders with the *erroneous impression* that the Management Case was unreasonably aggressive, when it was not. *See* Recommendation Statement (ECF No. 27-1, Ex. A) at 38 ("North Point prepared the base case in order to reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons.").

The bottom line is that by electing to include the Base Case Projections in the Recommendation Statement despite not actually believing in those projections, the Papa Murphy's Defendants created an aura of legitimacy and reasonableness regarding those projections that they did not deserve. None of the language Defendants point to dissuaded reasonable Papa Murphy's shareholders from erroneously believing that the unreasonable Base Case Projections "constitute[d] a prime factor in estimating the worth of [their] stock." *Marx*, 507 F.2d at 489. And the Court cannot conclude—as a matter of law on a motion o dismiss—that the cautionary language Defendants point to was sufficient to render the Base Case Projections and the related challenged statements not misleading or immaterial as a matter of law.

**B.     Plaintiff sufficiently pled his claim premised upon the summary of the Discounted Cash Flow Analysis contained in the Recommendation Statement**

Plaintiff also alleges that the summary of North Point's Discounted Cash Flow Analysis on page 38 of the Recommendation Statement and the resulting implied equity value per share range was a misleading statement, because the range was calculated utilizing the illegitimately lowered Base Case Projections and therefore presented the value of shareholders' shares in a misleadingly low manner. ¶ 54. The Papa Murphy's Defendants attempt to characterize this claim as a challenge to an opinion statement, specifically to North Point's "fairness opinion." ECF No. 25 at 9-10. However, this particular claim is predicated on the fact that the Papa Murphy's Defendants elected to include in the Recommendation Statement a summary of a valuation

analysis—the Discounted Cash Flow Analysis—that they knew provided a misleadingly low value of Papa Murphy's shares because it was calculated utilizing projections (the Base Case) that they knew were unreasonably low and that they did not actually believe in. *Supra*. The challenged statement—*a summary of a banker's financial analysis*—is not a statement of opinion simply because the analysis was performed in conjunction with a so-called "fairness opinion." Rather, it is merely a depiction of a valuation analysis that a banker performed.

The Papa Murphy's Defendants were under no obligation to include a summary of every single valuation analysis that North Point conducted in the Recommendation Statement; indeed, the Recommendation Statement notes that "[t]he summary set forth below does not purport to be a complete description of the financial analyses performed or factors considered by, or underlying the opinion of, North Point[.]" Recommendation Statement at 31. And the Papa Murphy's Defendants were prohibited from including a summary of a valuation analysis that they knew was materially misleading because it was prepared utilizing baseless projections. *See* 15 U.S.C. § 78n(e).

Furthermore, the fact that the summary of the Discounted Cash Flow Analysis on page 38 of the Recommendation Statement may accurately reflect what North Point actually did to arrive at its calculation does not render the summary inactionable. "[L]iteral truth is not the standard for determining whether statements in a prospectus are misleading…[s]ome statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *Miller*, 519 F.3d at 886. Here, the summary of the Discounted Cash Flow Analysis misled shareholders, because the valuation range contained therein was premised upon baseless projections and was thus misleadingly low. Courts have found similar claims premised upon allegedly misleading valuation ranges to be actionable.

For example, in *Hayes v. Crown Central Petroleum Corp.*, 78 F. App'x 857, 864 (4th Cir. 2003), the Fourth Circuit reversed and remanded the district court's order dismissing plaintiff's Section 14(a) claim against a corporation and its board premised upon defendants'

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

18

misrepresentation of a selected companies analysis in a merger proxy statement. The plaintiffs in *Hayes*, just like here, alleged that "the purported range of share values in the proxy statement was inaccurate," because if defendants had incorporated different EBITDA multiples into their calculations the "per share reference range" would have been higher. *Id.* at 863-64. The Fourth Circuit found that the district court failed to properly consider the issue, and held that "[i]f the price per share of Crown stock should have been valued as high as $ 32.26 per share, rather than $ 7.79 per share as presented in the proxy statement, this information clearly would have been material as it would have significantly altered the total mix made available to shareholders, who had to decide whether to accept the offer of $ 10.50 per share under the terms of the merger." *Id.* at 864. The same reasoning applies here, as Plaintiff alleges that the implied per share reference range set forth on page 38 of the Recommendation Statement would have been meaningfully higher if it had been conducted utilizing solely the Management Case, which the Papa Murphy's Defendants knew was the legitimate case of projections.

Similarly, in *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850 (S.D. Ohio 2013), plaintiffs alleged that a company and its directors violated Sections 14(a) and 20(a) in connection with their misleading summaries of the financial advisor's Companies Analysis and Transactions Analysis. Plaintiffs alleged that the advisor applied low multiples in order to lower the share price ranges, and that if the advisor had used reasonable multiples, the merger consideration would have fallen below the share price ranges. 969 F. Supp. 2d at 872-73. The court found the claims premised upon the misleading valuation analysis summaries to be actionable. *Id*. The same outcome is warranted here.

C. **Plaintiff sufficiently pled his claim premised upon the statement identifying the fairness opinion as a "material factor" supporting the board's determination and recommendation**

Plaintiff also challenges the statements on pages 26-28 of the Recommendation Statement identifying North Point's fairness opinion as a "material factor" that supported the Board's determination that the terms of the Merger were "fair to, advisable and in the best interests of, the

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

19

Company and its stockholders" and its decision "to recommend that the Company's stockholders accept the Offer and tender their Shares in the Offer." ¶ 55. Plaintiff alleges these statements were misleading because "by citing the illegitimate fairness opinion as a reason that supported the Board's recommendation of the Merger, the Individual Defendants created an aura of legitimacy with respect to the fairness opinion that they knew it did not deserve." *Id*. A motion to dismiss a claim predicated on a virtually identical statement was recently denied in *Laborers' Local #231 Pension Fund v. Cowan*, No. 17-478, 2018 U.S. Dist. LEXIS 110545 (D. Del. July 2, 2018), and the same outcome is warranted here.

In *Cowan*, the plaintiff challenged "Lionbridge's statement identifying Union Square's fairness opinion as a 'positive reason' supporting its completed decision to approve the merger." *Id*. at *29. The plaintiff alleged the challenged statement was materially misleading because the board knew the fairness opinion relied in-part on projections that were unreasonably low. *Id*. The court reasoned the statement was actionable, explaining:

> [A]t this preliminary stage we find Lionbridge's belief Union Square's fairness opinion is a positive reason supporting its decision to approve the merger may be an actionable statement under Section 14. Reading Lionbridge's opinion, a reasonable investor could take from the statement Lionbridge placed confidence in Union Square's analysis and opinion. A reasonable investor could take Lionbridge believed Union Square accurately analyzed Lionbridge's potential financial growth and concluded $5.75 to be fair consideration for a Lionbridge share…The board allegedly knew its projections and Union Square's fairness opinion did not account for acquisition based growth but simultaneously expressed confidence in the same opinion to its shareholders. Pension Fund states a claim under Section 14 based on the board's expressed belief Union Square's fairness opinion is a positive reason supporting its decision to approve the merger.

*Id*. at *29-30, *34.

The *Cowan* Court concluded that the "facts a reasonable investor could have taken from the statement of opinion" conflict with "knowledge held by the board concerning the accuracy or potential flaws in Union Square's analysis." *Id*. at *30. The same holds true here.

Furthermore, the *Cowan* Court rejected the defendants' bespeaks caution argument, explaining:

> Disclaimers cautioning shareholders the projections numbers may differ materially from actual results and should not be relied upon as being predictive of actual results are not equivalent to cautioning shareholders of the board's expressed reliance on Union Square's fairness opinion. The disclaimers do not caution shareholders to the board's confidence in Union Square's fairness opinion and do not provide reasons why shareholders should not place undue value in the statement Union Square's fairness opinion is a 'positive reason' supporting the board's decision to approve the merger.

The same reasoning warrants rejecting the Papa Murphy's Defendants' bespeaks caution argument as it relates to the challenged statement here. *See* ECF No. 25 at 16-18 (citing similar warnings).

> **D.    Plaintiff sufficiently pled his claim premised upon the statement that "North Point prepared the base case in order to reflect the risk that the full benefits of the management case may not be achieved"**

Plaintiff also alleges the statement that appeared three times in the Recommendation Statement purporting to provide the reason why North Point prepared the Base Case was materially false or misleading. ¶¶ 50-51. The challenged statement asserted that "North Point prepared the base case *in order to* reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons, a factor which in its judgment prospective bidders also take into account." *Id*. (quoting Recommendation Statement at 38, 41, 44) (emphasis added).

Plaintiff alleges that North Point did not actually "prepare[] the base case *in order to* reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons," but rather, in order to have projections it could use to get the Merger Consideration to fall within its Discounted Cash Flow valuation range. ¶¶ 4, 49-53. This allegation is supported by the fact that, in its fairness opinion letter, North Point admitted that it assumed the financial forecast provided by management (*i.e.*, the Management Case) was reasonably prepared based upon assumptions reflecting the best currently available estimates and judgments of Papa Murphy's management as to the expected future results and financial condition of the Company,

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

21

and that nothing had come to North Point's attention that caused it to believe that it was unreasonable for it to utilize and rely on the information from management that it reviewed. ¶ 51. North Point's "assumption" regarding the reasonableness of the Management Case was predicated upon discussions with Papa Murphy's management. ¶ 50; Recommendation Statement at 31. This allegation is also supported by the fact that North Point had no legitimate reason to believe that the Management Case "may not be achieved"—as alleged in the Complaint, Papa Murphy's management was conservative in its outlook and assumptions regarding future growth. ¶¶ 32, 42, 44, 46. Furthermore, North Point must have been aware of Papa Murphy's strong third and fourth quarter 2018 financial results and management's statements regarding those results, which indicated that same-store sale growth was improving and had reached its best levels in years. ¶¶ 32-38; Recommendation Statement at 31 (noting that North Point reviewed and analyzed publicly available financial data and financial statements, and held discussions with members of the board, senior management, and representatives of the Company). Lastly, the Complaint alleges that North Point had a significant financial motivation to slash the Management Case by preparing the Base Case and then attempt to legitimize that slash to shareholders. Specifically, North Point needed to prepare the Base Case in order to get the Merger Consideration to fall within its Discounted Cash Flow valuation range, ¶¶ 4, 47-52, and it needed shareholders to approve the Merger in order to receive virtually all of its $3.3 million fee. ¶ 28.[6] These allegations, when viewed collectively and in the light most favorable to Plaintiff, plausibly establish that North Point did not actually "prepare[] the base case *in order to* reflect the risk that the full benefits of the management case may not be achieved for a variety of reasons," but rather,

---

[6] The significant conflict of interest created by such contingent fees has been well documented. *See* Steven M. Davidoff, *Fairness Opinions*, 55 AM. U.L. REV. 1557, 1586-87 (Aug. 2006) ("The investment bank therefore has a hefty incentive to ensure that the contemplated transaction for which it will issue a fairness opinion progresses to completion. But, conflict arises where a bank is asked to opine and advise on a transaction that it stands to benefit from only if the transaction transpires. In fact, under the fee structure explicated above the bank will not be paid if it cannot find fairness.").

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

in order to have projections it could use to get the Merger Consideration to fall within its Discounted Cash Flow valuation range.

For their part, the Papa Murphy's Defendants were the ones with ultimate responsibility for the contents of the Recommendation Statement, including the challenged statement *purporting* to provide the reason why North Point prepared the Base Case. *Infra*. And, based on the same facts noted above, the Papa Murphy's Defendants knew that the cited reason (*i.e.*, that the Base Case was prepared "in order to reflect the risk that the full benefits of the management case may not be achieved") *was pure pretext*. Yet, the Papa Murphy's Defendants nevertheless allowed the Recommendation Statement to contain the challenged statement that falsely or misleadingly described North Point's rationale for preparing the Base Case, and they should accordingly be held liable. *See Gould*, 535 F.2d at 768, 778 ("[S]ection 14(a) of the Act imposed on [director] Casey a federal fiduciary duty not to approve a materially false or misleading proxy statement….Casey and the other McLean Industries directors owed a duty to the plaintiffs under section 14(a) of the Act fully and fairly to disclose the material facts in the proxy materials they issued to them. This duty they negligently failed to perform."); *Parsons*, 789 F. Supp. at 703 (deeming "[e]ach of the directors wo reviewed the proxy statement" to be "equally as negligent for failing to notice" the allegedly misleading word); *Brown v. Brewer*, 2010 U.S. Dist. LEXIS 60863, at *81 ("As a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the [] negligence standard.") (internal quotation marks omitted).

The challenged statement at issue here is analogous to the statement in a similar action where a motion to dismiss was denied. In *NECA-IBEW Pension Tr. Fund (The Decatur Plan) v. Precision Castparts Corp.*, No. 3:16-cv-01756-YY, 2017 U.S. Dist. LEXIS 165139 (D. Or. Oct. 3, 2017), the plaintiff alleged the following statement was materially false or misleading: "'[T]he Company Forecasts did not assume any acquisitions other than those that were previously announced or completed *because of the inherent uncertainty* of consummating acquisitions with

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

third parties on terms that would be attractive to the Company or at all.'" *Id*. at *18. The court emphasized the meaning of the word "because", which purported to convey the reason why the challenged forecast did not include future acquisitions. *Id*. at *26-27. The plaintiff alleged that the relevant revised forecast did not assume future acquisitions—*not because* of the inherent uncertainty of consummating acquisitions—but rather, because the preparers of the revised projections "needed to suppress the true value of the company in order to personally benefit from the Acquisition." *Id*. at *27. The court found the plaintiff's allegations were sufficient, and pointed to statements made by the Chairman and CEO Donegan that were purportedly inconsistent with an acquisition strategy being inherently uncertain. *Id*. at *26. It also cited the company's business operations at the time the revised forecasts were adjusted to eliminate acquisitions, as its operations were also purportedly inconsistent with the pretextual reason offered to explain why acquisitions were excluded from the revised forecasts. *Id*. at *27.

Here, Plaintiff points to similar facts in support of his allegation that the challenged statement *purporting* to provide the reason why North Point prepared the Base Case was pretextual. Specifically, Plaintiff points to statements made by Papa Murphy's management along with the Company's financial performance in the quarters immediately preceding the announcement of the Merger, which are *inconsistent* with there being a legitimate "risk" that the Management Case was overly aggressive and that the Base Case Projections legitimately accounted for such risk. ¶¶ 32-38. And, as noted above, Plaintiff also alleges that the preparer of the Base Case Projections (North Point) had a strong financial motivation "to suppress the true value of the company in order to personally benefit from the Acquisition." *Precision Castparts Corp.*, 2017 U.S. Dist. LEXIS 165139 at *27. Thus, the same outcome in *Precision Castparts* is warranted here—the Papa Murphy's Defendants' motion to dismiss should be denied.

## II.   PLAINTIFF SUFFICIENTLY PLED NEGLIGENCE

As noted above, it is well-settled that directors and officers of a corporation have a duty to ensure that communications seeking shareholder approval of a transaction do not contain

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

24

material misstatements or omit material information. *E.g., Gould*, 535 F.2d at 768, 778; *Arnold*, 650 A.2d at 1277; *In re Maxim Integrated Prods.*, 574 F. Supp. 2d 1046, 1066 (N.D. Cal. 2008) ("As directors, Defendants Byrd, Karros, Sampels, Gifford, Bergman, Wazzan, and Hagopian had a duty to exercise reasonable care in ensuring that Maxim complied with state and federal laws."). Accordingly, numerous courts have correctly held that when such documents contain a materially false or misleading statement or omission, the officers and directors—who had a duty to ensure the document did not contain material misstatements or omissions—were negligent as a matter of law. *E.g., Wilson*, 855 F.2d at 995; *Brown*, 2010 U.S. Dist. LEXIS 60863 at *81; *Parsons*, 789 F. Supp. at 703; *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *28 (D. Or. Mar. 20, 2017) (explaining how "materiality is related to negligence."); *In re Envision Healthcare Corp.*, 2019 U.S. Dist. LEXIS 128237 at *24-25 (same). In other words, materiality goes hand-in-hand with negligence, and, because Plaintiff has sufficiently pled material misstatements, his Complaint cannot be dismissed for failure to plead negligence. Indeed, the Complaint also plainly alleges that "the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's shareholders to ensure that it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty." ¶ 69.

The Papa Murphy's Defendants attempt to run from this well-settled body of authority. They ask this Court to ignore the core holding of *Varjabedian*—that negligence rather than scienter is all that is necessary to state a claim under the first clause of Section 14(e)—and instead seek to pounce upon dictum from the same opinion to impose a scienter requirement upon Lead Plaintiff. Specifically, Defendants contend that Lead Plaintiff "must plead a highly unreasonable [misrepresentation or] omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care." ECF No. 25 at 21. The portion of the *Varjabedian* opinion Defendants seek to illogically twist was plainly dictum, where the Ninth Circuit declined to "reach the question" of *materiality*, but also added a "*see*" citation to *Zucco*

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Partners* and parenthetically quoted the standard for pleading *scienter* in a securities fraud omissions case based upon recklessness. *Varjabedian*, 888 F.3d at 408 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (discussing the standard for pleading recklessness in a Section 10(b) securities fraud action)). Surely, the *Varjabedian* panel did not mean to eviscerate its core holding—that negligence rather than scienter is all that is required to plead a violation of Section 14(e)'s first clause—by creating a scienter pleading standard in connection with a materiality analysis in the very same opinion. The dictum Defendants cite should thus be disregarded by this Court, as it is of no persuasive value whatsoever. *See Gonzalez v. Arizona*, 624 F.3d 1162, 1190-91 (9th Cir. 2010) (explaining dictum includes statements "made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention.").

In fact, the same exact argument that the Papa Murphy's Defendants make here was recently rejected by the district court in the *Varjabedian* case on remand from the Ninth Circuit. *Varjabedian v. Emulex Corp.*, No. SACV 15-00554-CJC(JCGx), 2020 U.S. Dist. LEXIS 40037, at *19 (C.D. Cal. Feb. 25, 2020) (rejecting the *Ocera* Court's flawed analysis). The *Varjabedian* District Court also correctly held that 15 U.S.C. § 78u-4(b)(2)(A) does not apply to negligence-based actions under Section 14(e), because negligence is not a "state of mind." *Id*. at *28. Indeed, the Ninth Circuit has made this point clear: "State of mind is not at issue where either negligence or gross negligence are alleged." *Fargo v. City of San Juan Bautista,* 857 F.2d 638, 642 (9th Cir. 1988); *see also Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (holding § 78u-4(b)(2)(A) does not apply in negligence-based actions under Section 14(a))). Regardless, even if Plaintiff was required to plead a "strong inference" of negligence, he has done so based upon the above-referenced factual allegations. *See Azar* 2017 U.S. Dist. LEXIS 39493 at *28 ("the Amended Complaint here sufficiently alleges that the Proxy was materially misleading because it omitted the September Projections and also alleges that Defendants prepared, reviewed, or disseminated

the Proxy. It sufficiently alleges, with particularly, a strong inference of negligence."); *Hot Topic*, 2014 U.S. Dist. LEXIS 180513 at *20 (pointing to factual allegations similar to those alleged here and concluding they were "sufficient to give rise to the 'strong inference' that the remaining Individual Defendants knew that the LRP Projections were appropriate and nonetheless approved the use of alternative projections in the Proxy Statement and in the Fairness Opinion.").

The Papa Murphy's Defendants also illogically cite purported facts regarding how they *conducted the strategic review process* as evidence that they were not negligent. ECF No. 25 at 22. However, as the above-cited cases indicate, the relevant inquiry is whether the Papa Murphy's Defendants were negligent *in preparing and reviewing the Recommendation Statement*, and their purported conduct in conducting the sales process is completely irrelevant. Indeed, as the Papa Murphy's Defendants acknowledge, "Section 14(e) is a disclosure statute" ECF No. 25 at 1, and it prohibits untrue statements in tender offer documents. The basis for liability has nothing to do with the sales process.

In sum, the Papa Murphy's Defendants' negligence-related arguments are meritless.

## III.   PLAINTIFF SUFFICIENTLY PLED LOSS CAUSATION

The loss causation inquiry required by 15 U.S.C. § 78u-4(b)(4) "requires no more than the familiar test for proximate cause." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). "'[L]oss causation is a 'context-dependent' inquiry as there are an 'infinite variety' of ways for a tort to cause a loss.'" *Id*. at 753 (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016)). The loss causation inquiry is unique in the context of Section 14 actions because of the presumption of transaction causation established by the Supreme Court in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).[7]

---

[7] Although largely irrelevant, Defendants cite *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Incorp.*, 774 F.3d 598, 605 (9th Cir. 2014) for the proposition that Rule 9(b) applies here. However, *Apollo Group* makes clear that its holding was driven purely by the fact that Section 10(b) claims are fraud claims, and limited its holding to "a securities fraud action." 774 F.3d at 605. In an action under Section 14(e), "where fraud is not an essential element of a claim, only allegations [] of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations

LEAD PLAINTIFF'S OPPOSITION TO PAPA MURPHY'S DEFENDANTS' MOTION TO DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

27

In *Mills*, the Supreme Court established a presumption that where a plaintiff has identified a material misstatement or omission in a proxy, and the proxy was an essential link in the consummation of the transaction at issue, a finding of transaction causation automatically follows; plaintiffs need *not* prove that "the particular defect in the solicitation materials [] was an essential link in the accomplishment of the transaction." *Id*. at 385. It is imperative that the Court recognize the role *Mills* plays in connecting a proxy misstatement with economic loss; indeed, as noted above, The Ninth Circuit in *Plaine* explained that "[c]ourts have applied the same causation standard under § 14(e)" that the Supreme Court recognized in *Mills*. *Plaine*, 797 F.2d at 721 n.15.

In light of *Mills*' holding linking materiality and transaction causation, in a Section 14 action, the chain of causation from the material misstatement to economic loss is as follows: (i) if plaintiff has sufficiently pled a material misstatement in a proxy or recommendation statement that was an "essential link" in consummating the transaction at issue, they are entitled to the presumption of transaction causation set forth in *Mills*, and (ii) if the plaintiff alleges that the transaction undercompensated shareholders for their shares, then they have sufficiently pled economic loss and connected the proxy misstatements with the alleged economic harm. *See Brown v. Brewer*, No. CV 06-3731-GHK (JTLx), 2008 U.S. Dist. LEXIS 108904, at *21 (C.D. Cal. July 14, 2008) (noting the impact of *Mills* in assessing causation); *Lane v. Page*, 727 F. Supp. 2d 1214, 1239-43 (D.N.M. 2010) (same).

In other words, at the pleading stage, Plaintiff was simply required to plead that the Merger Consideration undercompensated Papa Murphy's shareholders for the fair value of their shares, and that the materially false and misleading Recommendation Statement was an essential link in

of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also Miller v. Int'l Bus. Mach. Corp.*, 138 F. App'x 12, 17 (9th Cir. 2005) (finding negligent misrepresentation claim only needs to satisfy Rule 8); *Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.*, 870 F. Supp. 2d 1015, 1038 (D. Haw. 2012) (same). Indeed, by its plain terms Rule 9(b) applies to allegations of fraud.

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

28

the consummation of the unfair Merger. Plaintiff did so by alleging that his shares were worth up to $12.34, and citing to the derisory 4% premium to the Company's trading price less than a month before the Transaction was announced, the alternative offers for the Company at up to $6.64 per share, and alleging shareholders were induced, via the false and misleading Recommendation Statement, to accept the inadequate Merger Consideration which was only deemed "fair" utilizing unreasonably lowered projections. ¶¶ 58-64. Nothing more was required to plead loss causation. *See Azar*, 2017 U.S. Dist. LEXIS 39493 at *33 (plaintiff need "not plead a precise figure at which the Company's stock should have been valued" so long as the allegations "make plausible the claim that the Company's stock was worth more"); *Hot Topic*, 2014 U.S. Dist. LEXIS 180513 at *28 (alleging merger consideration was discount to company's "intrinsic value" and citing higher analyst values). Indeed, Plaintiff's counsel have prevailed on the same loss causation argument in two recent Section 14 cases. *Envision*, 2019 U.S. Dist. LEXIS 128237 at *24; *Karp v. First Conn. Bancorp, Inc.*, No. RDB-18-2496, 2019 U.S. Dist. LEXIS 162819, at *14 (D. Md. Sep. 24, 2019). The same outcome is warranted here.

## IV.   SHAREHOLDERS MAY BRING PRIVATE SECTION 14(e) CLAIMS BASED ON A NEGLIGENCE THEORY

The Papa Murphy's Defendants also contend that Section 14(e) does not provide for a negligence-based private right of action. ECF No. 25 at 26-29. The *Varjabedian* District Court also recently rejected this exact same argument, which is illogical and contrary to binding Ninth Circuit precedent. As the *Varjabedian* District Court explained: "Defendants now argue that the first clause of Section 14(e) does not create an implied private right of action. Plaintiff responds that Ninth Circuit precedent clearly recognizes such a right and therefore forecloses this issue. The Court agrees." 2020 U.S. Dist. LEXIS 40037 at *14-15. The court rejected defendants' "attempt to thread the needle by arguing that the Ninth Circuit has recognized a private right of action for *knowing* violations of Section 14(e), but never for *negligent* violations." *Id*. It correctly reasoned that defendants' argument ws foreclosed by the Ninth Circuit's holding in *Plaine*. *Id*. It

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

29

further elaborated that the Ninth Circuit's opinion in *Varjabedian* also "foreclose[s] the issue." *Id*. at \*16. As the district court explained, in *Varjabedian*, the Ninth Circuit:

> Interpreted Section 14(e) in an appeal *brought by a private plaintiff*. While the Ninth Circuit could have conceivably reserved judgment on the existence of a private cause of action, nothing in its decision suggests this posture. Indeed, the disposition makes the court's assumptions clear; it "reverse[ d] the dismissal of the complaint and remand[ed] the case to the district court for it to reconsider Defendants' motion to dismiss under a negligence standard." *Varjabedian,* 888 F.3d at 401. The Ninth Circuit would not have instructed the Court to apply its newly articulated negligence standard unless it found it applicable to private actions.

*Id*. at \*16-17.

Furthermore, in *Schreiber v. Burlington N., Inc.*, 472 U.S. 1 (1985), the Supreme Court construed the elements of a Section 14(e) private claim, without even hinting that the claim's existence was debatable. 472 U.S. at 2, 4, 12-13. And it is inconceivable that the Supreme Court would have announced the elements of the claim without flagging for lower courts that the claim itself might not exist. Simply put, as the *Varjabedian* District Court correctly held, Defendants' private right of action argument is foreclosed by binding precedent, and must be rejected.

## V.    PLAINTIFF'S SECTION 20(a) CLAIM MAY NOT BE DISMISSED

The Papa Murphy's Defendants argue that Plaintiff's Section 20(a) claim must be dismissed solely because his predicate Section 14(e) claim fails. ECF No. 25 at 29-30. Accordingly, because the Section 14(e) claim is sufficiently pled, Plaintiff's Section 20(a) claim must also be allowed to proceed. *See Azar*, 2017 U.S. Dist. LEXIS 39493 at \*37.

### CONCLUSION

For the foregoing reasons, the Papa Murphy's Defendants' motion to dismiss should be denied in its entirety. However, in the event the Court is inclined to grant the motion, Plaintiff respectfully requests leave to amend, which should be freely granted *See Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

DATED: March 9, 2020

LOCAL COUNSEL:

**BRESKIN JOHNSON TOWNSEND, PLLC**

*s/ Roger Townsend*
Roger M. Townsend, WSBA No. 25525
1000 Second Avenue, Suite 3670
Seattle, Washington  98104
Tel: 206-652-8660
Fax: 206-652-8290
rtownsend@bjtlegal.com

**OF COUNSEL:**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Putative Class*

LEAD PLAINTIFF'S OPPOSITION TO PAPA
MURPHY'S DEFENDANTS' MOTION TO
DISMISS
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

31