THE HONORABLE J. RICHARD CREATURA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

EVAN BROWN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

PAPA MURPHY'S HOLDINGS, INC. and WELDON SPANGLER,

Defendants.

No. 19-cv-05514-JRC

SECOND AMENDED CLASS ACTION COMPLAINT

DEMAND FOR JURY TRIAL

1. VIOLATIONS OF SECTION 14(e) OF THE SECURITIES EXCHANGE ACT OF 1934

2. VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Lead Plaintiff Evan Brown ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action is brought as a class action by Plaintiff against Papa Murphy's Holdings, Inc. ("Papa Murphy's" or the "Company") and the Company's Chief Executive Officer ("CEO") and director Weldon Spangler ("Spangler", and, together with Papa Murphy's, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(e) and § 78t(a). Plaintiff's claims arise in connection

with the tender offer ("Tender Offer") by MTY Food Group Inc., through its subsidiaries (collectively "MTY"), made to acquire all of the issued and outstanding shares of Papa Murphy's (the "Merger").

2. On April 10, 2019, Papa Murphy's entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which shareholders of Papa Murphy's common stock received $6.45 in cash for each share of Papa Murphy's stock they owned (the "Merger Consideration"). As set forth below, the Merger Consideration was financially unfair and undercompensated Papa Murphy's shareholders.

3. On April 25, 2019, Defendants caused the filing of a materially false and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement" or "RS") with the Securities and Exchange Commission ("SEC"). As set forth below, the Recommendation Statement was materially false and misleading with respect to Papa Murphy's financial projections, the value of shareholders' shares, and the fairness of the Merger Consideration.

4. Papa Murphy's financial advisor, North Point Advisors LLC ("North Point"), created a downwardly revised set of projections (the "Base Case Projections") which unreasonably lowered management's significantly higher projections (the "Management Case Projections") for use in conjunction with the valuation analyses underlying its fairness opinion. The differences between the Management Case Projections and the Base Case Projections were significant, as reflected in the following table:

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

| Projected Metric | Case | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| System-Wide Same Store Sales Growth | Management | 1.9% | 4.3% | 4.5% | 3.6% | 3.5% |
| | Base | 1.9% | 2.5% | 2.5% | 2.5% | 2.5% |
| | *Percent Change* | - | *-41.9%* | *-44.4%* | *-30.6%* | *-28.6%* |
| Total Revenue | Management | $107.2 | $112.9 | $120.0 | $123.8 | $128.5 |
| | Base | $107.2 | $111.2 | $116.3 | $119.3 | $123.1 |
| | *Percent Change* | - | *-1.5%* | *-3.1%* | *-3.6%* | *-4.2%* |
| EBITDA | Management | $22.4 | $25.2 | $28.5 | $30.5 | $32.1 |
| | Base | $22.4 | $23.0 | $23.8 | $24.8 | $26.9 |
| | *Percent Change* | - | *-8.7%* | *-16.5%* | *-18.7%* | *-16.2%* |
| Cash Flow from Continuing Operations | Management | $16.5 | $19.5 | $23.1 | $24.7 | $26.4 |
| | Base | $16.5 | $18 | $19.8 | $20.6 | $22.9 |
| | *Percent Change* | - | *-7.7%* | *-14.3%* | *-16.6%* | *-13.3%* |

5.   The Base Case Projections were prepared by North Point solely for use in connection with its fairness opinion, and were not even disclosed to potential bidders during the sales process because they were not Defendants' best estimates of the Company's future. Without the use of the unreasonable Base Case Projections, the Merger Consideration would not have fallen within the misleading implied equity value per share ranges set forth on page 38 of the Recommendation Statement. Indeed, even utilizing the unreasonably prepared Base Case Projections, the resulting share range value was $6.28 to $12.34—meaning the Merger Consideration came in just barely above the bottom end of this misleading range.

6.   Spangler and other senior executives on Papa Murphy's management team assured North Point that they prepared the Management Case Projections on a reasonable basis in accordance with industry practice, and that they were not aware of any information or facts that would make the Management Case Projections incomplete or misleading. They also conveyed to North Point that the Management Case Projections had been prepared by them based upon assumptions reflecting their best currently available estimates and judgments as to the expected future results of operations and financial condition of the Company. North Point in turn advised

Defendants that nothing had come to North Point's attention during the course of its engagement that caused North Point to believe that it was unreasonable for North Point to utilize and rely on the Management Case Projections.

7.    In other words, Defendants informed North Point that the Management Case Projections were reasonable and their best estimates of the Company's financial future, and North Point in turn looked at those projections and found no reason to believe they were unreasonable. Yet, when it came time for North Point to crunch the numbers so it could render the fairness opinion it needed to provide in order to collect its $3 million fee, North Point suddenly decided to come up with its own unreasonable, meaningfully lower projections that were at odds with Spangler's and Papa Murphy's own expectations regarding the Company's expected future financial performance.

8.    Spangler and Papa Murphy's management knew that the Management Case Projections they had prepared and given to North Point were their best estimates. Spangler and Papa Murphy's also knew that North Point was not aware of any reason that would make it unreasonable for it to utilize or rely on the Management Case Projections for its fairness opinion. Indeed, Spangler knew that the Management Case Projections were utilized and relied upon by the board of directors (the "Board"), management, and bidders for the entirety of the strategic review process. Spangler and Papa Murphy's further knew that North Point nevertheless decided to use the meaningfully lower Base Case Projections in conjunction with its fairness opinion valuation analyses, even though the assumptions underlying those projections meaningfully differed from Spangler's and Papa Murphy's own best estimates of the Company's financial future.

9.    Spangler was intricately and uniquely familiar with Papa Murphy's historical financial performance, future financial prospects, strengths, weaknesses, and challenges. Indeed, Spangler became Papa Murphy's Chief Executive Officer on July 17, 2017, and brought with him over 30 years of restaurant industry experience and expertise in managing and developing

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

franchise businesses. Spangler also regularly evaluated and considered the Company's operations, strategic direction and business plans. Furthermore, for years Spangler routinely presented the Company's quarterly results to analysts and the public. Spangler did so every quarter since he was appointed CEO, including during the earnings calls held on March 14, 2019 (for the 4th quarter 2018); November 7, 2018 (3rd quarter 2018); August 1, 2018 (2nd quarter 2018); May 9, 2018 (1st quarter 2018); March 14, 2018 (4th quarter 2017); November 8, 2017 (3rd quarter 2017); and August 9, 2017 (2nd quarter 2017). Simply put, Spangler knew Papa Murphy's business and financial prospects better than anyone else.

10.     As the person most knowledgeable about Papa Murphy's business and financial prospects, Spangler was meaningfully involved in preparing the Management Case Projections. When Spangler prepared or oversaw the preparation of those projections, he brought with him the years of experience and expertise he had developed while leading Papa Murphy's. The projections Spangler and Papa Murphy's management came up with and the assumptions underlying those projections reflected their reasonable best estimates based upon their years of unique insight, knowledge, and experience. Spangler and Papa Murphy's knew that their best estimates and judgments were not reflected in the meaningfully lower Base Case Projections that North Point developed solely for use in conjunction with its fairness opinion.

11.     The Base Case Projections were materially false and misleading to Papa Murphy's shareholders and were not actually believed in by Spangler and Papa Murphy's. Rather, the Base Case Projections were prepared by a conflicted financial advisor based upon assumptions that meaningfully differed from Spangler's and Papa Murphy's own best estimates. Simply put, when the CEO and other senior executives of a company carefully prepare financial projections based upon their years of expertise and unique insight running a business and indicate that those projections are reasonable and reflect their best estimates of the company's financial future, and a conflicted outsider who does not run the business nevertheless tells the CEO and management that it is going to prepare another case of projections that are meaningfully different from

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

management's reasonable best estimates, those outsider-prepared projections present a materially misleading view of the company's financial future. They are simply numbers generated by a conflicted outsider (North Point) based on assumptions that are at odds with the assumptions held by the people who are in the best position to assess the company's expected financial future. Nevertheless, Defendants allowed those materially misleading projections to be included in the Recommendation Statement, which in turn deceived Papa Murphy's shareholders regarding the fairness of the Merger Consideration.

12.     Prior to voting to approve the Merger and signing and disseminating the Recommendation Statement, Spangler was presented with North Point's valuation analyses, including on April 10, 2019. Spangler thus knew that utilizing the Base Case Projections—the projections he did not believe reflected the best estimates of the Company's future—the low-end of the implied equity value per share range North Point calculated in conjunction with its Discounted Cash Flow ("DCF") Analysis came in just *barely below* the Merger Consideration, at $6.28. Spangler also knew that if North Point had utilized solely the Management Case Projections—the projections he himself believed were the reasonable best estimates of the Company's future financial performance—the resulting implied equity value per share range would have *completely exceeded* the Merger Consideration, indicating that the Merger Consideration was financially unfair and that the Merger was *not* actually fair to and in the best interests of the Company's stockholders. Furthermore, as the experienced CEO of a publicly traded company who was routinely involved in assessing and presenting financial data, and who had received several presentations from and held numerous discussions with a financial advisor, Spangler knew that the DCF Analysis is by far the most important valuation analysis for purposes of determining the fair value of stock, and that the DCF Analysis range would have completely exceeded the Merger Consideration if it had been run utilizing solely the Management Case Projections that he personally believed were the reasonable best estimates of the Company's future performance.

SECOND AMENDED CLASS ACTION
COMPLAINT - 6
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

13.     Before signing the Recommendation Statement on April 25, 2019, Spangler was required to review the contents of the document to ensure that it did not contain any materially false or misleading statements. Spangler thus knew or should have known that the document contained the meaningfully lower Base Case Projections that had been prepared by North Point solely for use in connection with its fairness opinion. Spangler also knew that the Base Case Projections did not reflect his and Papa Murphy's best estimates of the Company's financial future, and he knew that the assumptions underlying the Base Case Projections were inconsistent with his and Papa Murphy's own expectations regarding the Company's future financial performance. As the Company's CEO, Spangler also knew that he was uniquely knowledgeable about the Company's future prospects, and that he had the best insight regarding those prospects. Spangler also did not actually believe that the Merger was "fair to" the Company's stockholders, as he knew that the implied per share value range calculated utilizing solely the projections that he himself deemed to be the best estimates of the Company's future would completely exceed the Merger Consideration. Spangler nevertheless signed the Recommendation Statement and allowed the materially misleading Base Case Projections to be included in the Recommendation Statement, along with the statement that he and the full Board believed the Merger was "fair to" shareholders even though Spangler did not genuinely hold that belief because he knew the Merger Consideration was not fair based upon the projections he personally believed were the best estimates of the Company's future performance. By failing to remedy the materially false and misleading statements in the Recommendation Statement before it was disseminated to the Company's shareholders, Spangler was negligent, as a reasonable and prudent CEO would have corrected or removed the material misstatements in the Recommendation Statement before signing it and disseminating it to shareholders.

14.     The Tender Offer expired on May 22, 2019, and Papa Murphy's shareholders were cashed out for the inadequate Merger Consideration.

SECOND AMENDED CLASS ACTION
COMPLAINT - 7
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

15.     For these reasons and as set forth in detail herein, Defendants violated Sections 14(e) and 20(a) of the Exchange Act.  Accordingly, Plaintiff seeks to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

17.     The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Papa Murphy's maintains its principal place of business in this District and Spangler either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

19.     Plaintiff was, at all relevant times, a shareholder of Papa Murphy's.

20.     Defendant Papa Murphy's is a Delaware corporation and maintains its principal executive office at 8000 NE Parkway Drive, Suite 350, Vancouver, Washington, 98662. Papa Murphy's is a franchisor and operator of the largest Take 'n' Bake pizza brand and the 5th largest

SECOND AMENDED CLASS ACTION
COMPLAINT - 8
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

pizza chain in the United States, selling pizzas ready for customers to bake at home. Prior to the consummation of the Merger, the Company's common stock traded on the Nasdaq under the ticker symbol "FRSH". As a result of the Merger, Papa Murphy's became a wholly owned subsidiary of MTY. Papa Murphy's is listed as the filer of the Recommendation Statement, and acted through Spangler and other senior executives of the Company.

21.    Defendant Weldon Spangler was, at all relevant times, a director of Papa Murphy's and the Chief Executive Officer of the Company. Mr. Spangler signed and authorized the dissemination of the Recommendation Statement and was negligent in that he caused it to be disseminated to the Company's shareholders despite the fact that the Recommendation Statement contained the materially false and misleading statements described herein.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other former public shareholders of Papa Murphy's (the "Class").  Excluded from the Class are Defendants, MTY, members of the immediate family of a Defendant or any such person's legal representative, heir, successor or assign.

23.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of April 25, 2019, there were 17,029,528 shares of Papa Murphy's common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Papa Murphy's will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

SECOND AMENDED CLASS ACTION
COMPLAINT - 9
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

i)      whether Defendants made any untrue statements of a material fact in the Recommendation Statement, in violation of Section 14(e) of the Exchange Act;

ii)     whether Spangler violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class suffered damages as a result of the Merger and Defendants' violations of law;

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.   Overview of the Relevant Business Entities

24.     Papa Murphy's was incorporated on March 29, 2010 as a holding company. The Company, together with its subsidiaries, is a franchisor and operator of the Take 'N' Bake pizza chain in the United States. The Company franchises the right to operate Take 'N' Bake pizza franchises and operates Take 'N' Bake pizza stores owned by the Company. The Company

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

operates through three segments: Domestic Company Stores, Domestic Franchise, and International. Its Domestic Franchise segment consists of its domestic franchised stores, which represent its system-wide stores and derives its revenues from franchise and development fees and the collection of franchise royalties from the Company's franchise owners located in the United States. The Domestic Company Stores segment consists of its Company-owned stores in the United States and derives its revenues from retail sales of pizza and side items to the general public. Its International segment consists of its stores outside of the United States, all of which are franchised and derives its revenues from franchise and development fees and the collection of franchise royalties from franchises located outside the United States.

25.     On October 12, 2018, the Board hired North Point to act as its financial advisor in connection with a potential strategic transaction. The parties executed North Point's engagement letter that same day, which provided that North Point would receive $250,000 upon the submission of a fairness opinion and $3,050,000 that was entirely contingent upon the successful completion of the Merger. In other words, North Point had a significant financial incentive to deem the Merger "fair", which it could only have done by using the unreasonably prepared Base Case Projections. Furthermore, North Point is a relatively small investment bank that relies on business from players in the franchised restaurant space to generate its fees. One of the biggest acquirers of franchised restaurants is MTY, and North Point thus had an added incentive to appease MTY.

26.     MTY is a Canada-based company which franchises and operates quick-service restaurants. MTY operates in four segments: Franchising, which includes revenue from royalties, supplier contributions, franchise fees, rent, and the construction and renovation of restaurants; Corporate, which includes the direct sale of prepared food to customers; Distribution, which includes distribution of raw materials to restaurants of its Valentine and Franx banners; and processing, which includes the sale of ingredients and prepared food to restaurant chains, distributors, and retailers. MTY's quick-service restaurants operate under various banners, such

SECOND AMENDED CLASS ACTION
COMPLAINT - 11
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

as Tiki-Ming, Sukiyaki, La Cremiere, Au Vieux Duluth Express, Carrefour Oriental, Panini Pizza Pasta, Franx Supreme, Croissant Plus, Villa Madina, Cultures, Thai Express, Vanellis, Kim Chi, Yogen Fruz, Sushi Shop, Koya Japan, Vie & Nam, Tandori, O'Burger, Tutti Frutti, Taco Time, Country Style, Buns Master, and Valentine.

## II.   Background to the Merger

27.   Prior to the announcement of the Merger on April 11, 2019, Papa Murphy's was in the midst of a significant turnaround. As CEO, Spangler was directly involved the Company's strategic initiative of refranchising Company-owned stores, which began in 2017 and was expected to reach its target by the end of 2020. Spangler and Papa Murphy's Chief Financial Officer Nik Rupp ("Rupp") knew that while this refranchising initiative was causing *temporary* decreases in store sales and revenues, the Company's *long-term* prospects would be much stronger upon the completion of the refranchising initiative. Spangler and Rupp expected the significant benefits of the refranchising initiative to be fully realized after the Company reached its target of having no more than 50 Company-owned stores by the end of 2020.

28.   Between January and mid-March 2019, the Company's stock price increased approximately 36%, to a high of $6.20 just weeks before the Merger was announced. In other words, the Merger Consideration that was misleadingly touted to Papa Murphy's shareholders in the Recommendation Statement as a "fair" price that provided a "significant premium," RS at 26, was in fact a mere 4% higher than the Company's trading price just weeks prior to the deal's announcement.

29.   The dramatic increase in the Company's stock price during the winter of 2019—just weeks prior to the announcement of the Merger—was spurred by a string of positive news regarding the Company's financial performance and future growth prospects.

30.   On November 7, 2018, Papa Murphy's held a conference call to discuss the third quarter 2018 financial results, heralding the quarter as a success, and touting the results as a step in the right direction for the Company. Defendant Spangler stated:

SECOND AMENDED CLASS ACTION
COMPLAINT - 12
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Results in the third quarter included a system-wide comparable store sales decline of 2.1% compared to the prior year's third quarter, and adjusted EBITDA of $4.7 million. While the third quarter same-store sales percentage was still negative, the results represented *our best percentage change in same-store sales in 12 quarters. We are also pleased to note that sales trend have continued to improve and are currently tracking slightly positive through the first five weeks of the fourth quarter. Though, we are maintaining a conservative outlook for the balance of the quarter*.

The comp sales improvement continues to be driven by the adoption of key marketing messages, as well as by progress on our strategic initiatives. During the quarter, we saw an increasing number of markets comp positively, 39 domestic DMAs in total up from 31, which demonstrated comp growth in the second quarter. These DMAs have fully adopted marketing initiatives with a low, broad and consistent value message, have gone all in on these initiatives and have synchronized all marketing channels to drive traffic to the stores.

31.    The call concluded with Spangler stating: "We are pleased with the progress we are making and the accelerating business momentum we are beginning to achieve. We continue to believe that our focused strategy of improving convenience and relevance and enhancing people and process, alongside increased activation of our low, broad and consistent marketing initiative, *will drive profitable and sustainable comp sales growth in both the short and the long-term*."

32.    In January 2019, in the midst of the sale process, Spangler learned that the Company's preliminary operating results for the fourth fiscal quarter of 2018 *exceeded* his and the Company's prior expectations as a result of increased adjusted EBITDA and decreased net debt.

33.    On February 4, 2019—two months before the Merger was announced—Papa Murphy's issued a release announcing that its preliminary 2018 fourth quarter and fiscal year results were "better than guidance and *sales trends [were] improving*." The release quoted Defendant Spangler, Papa Murphy's CEO, who stated:

We are very pleased with the continued progress of our strategic initiatives and the impact they had on our results in Q4 2018. *We saw positive same store sales in October, marking our first period of same store sales growth in 37 months. Momentum has continued into 2019, and we expect our strategic and cost saving initiatives to continue to deliver in 2019*. With our improved results, we were also able to pay down our term loan to $79.5 million at the end of the quarter.

34.     On March 14, 2019—four weeks before the Merger was announced—a press release issued by Papa Murphy's through Business Wire announced that the Company had reported its fourth quarter and fiscal year 2018 results, and specifically noted that it performed better than guidance and consistent with previously reported results. The release quoted defendant Spangler, who stated:

> We are very pleased with the continued progress of our strategic initiatives and the impact they had on our results in the fourth quarter. *We saw positive comparable store sales growth in October, marking our first period of comparable store sales growth in 37 months*. We continue to believe that we have the right initiatives in place to drive long-term success for Papa Murphy's and we are excited for the year ahead.

35.     That same day, the Company held another conference call to discuss the fourth quarter 2018 financial results. Once again, Spangler and Rupp were pleased about the positive trending results—which *exceeded previous guidance*. Spangler stated:

> Fourth quarter results included a system-wide comparable store sales decline of 1.3% and adjusted EBITDA of $5.9 million, both of which came in ahead of internal expectations. Results represented continued sequential improvement and included positive same-store sales in the month of October. We continue to believe that our comp sales improvement is being driven by the adoption of key marketing messages as well as by progress on our strategic initiatives.
>
> ...
>
> The decrease in comparable store sales for the quarter was impacted by continued competitive value dealing. But as you heard from Weldon, we are countering this with growth in our e-commerce sales, delivery and more targeted digital marketing efforts that should help close both convenience and relevance gaps versus our peers. We believe that as our key marketing strategies ramp up in terms of adoption and traction and we continue to roll our critical technology components, we will see this gap close, and the system will return to positive comp sales growth.

36.     On the same call, CFO Rupp proceeded to again up the expectations for the Company going forward, providing fiscal year 2019 outlook for "Full-year system-wide comparable store sales growth in the range of flat to low single-digit positive. . . .", and Defendant Spangler ended the call with positive remarks about the year past and the years to come:

> Thank you, Nik. 2018 was a year where we built a solid foundation for long-term sustainable growth. Towards that end, we launched our new e-commerce platform and app, rolled out delivery and developed new creative in conjunction with enhanced social and digital marketing efforts. We also took great strides to rebuild

SECOND AMENDED CLASS ACTION
COMPLAINT - 14
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

trust and engagement with our franchise owners and solidified executional processes. Our goal remains to provide the highest quality pizza and guest experience in the industry and drive renewed growth in our customer base through our strategic initiatives. We continue to believe that we have the right strategic initiatives in place to drive long-term success for Papa Murphy's, and we're extremely excited for the year ahead.

37.     Shortly after these announcements, on March 19, 2019, the Board unanimously approved the entry into an Exclusivity Agreement with MTY that would grant it exclusivity with respect to sales process for a limited period of time, subject to the negotiation of specific terms.

38.     Between the announcement of Q4 2018 financial results on March 14, 2019 and the North Point's presentation of their fairness opinion to the Board on April 10, 2019, the Company did not issue any negative news or press releases. Thus, there was no rationale reason to reduce or discount the Management Case Projections during that period. Indeed, Spangler and management were already fully aware of and the most knowledgeable about the Company's past challenges, the strategic initiatives they had implemented to reshape the Company's future, and the most likely results going forward once the benefits of those initiatives began to fully materialize. Spangler and the management team knew the Company's business better than anyone else, and had already accounted for the Company's strengths, weaknesses, and challenges in the Management Case Projections.

39.     Despite six consecutive months of positive trending announcements regarding same store sales growth and Spangler's and Rupp's statements indicating that they were conservative in their outlook, North Point decided to, and Defendants allowed it to, slash the best estimate projections Spangler and the management team had prepared and to utilize the significantly lower Base Case Projections in conjunction with its fairness opinion. Spangler then allowed those materially false and misleading Base Case Projections to be disseminated in the Recommendation Statement even though he did not actually believe in those projections, which were meaningfully lower than the projections he himself deemed to be the best estimates of the Company's financial future. Spangler further allowed the Recommendation Statement to represent that he believed the Merger was fair to the Company's' shareholders, even though he

SECOND AMENDED CLASS ACTION
COMPLAINT - 15
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

knew it was not actually fair because the implied value of shareholders' shares exceeded the Merger Consideration when utilizing solely the projections he prepared and believed to be the best estimates of the Company's future prospects.

**III.    The Materially False and Misleading Recommendation Statement**

40.    On April 25, 2019, Defendants authorized the filing of the Recommendation Statement with the SEC in order to solicit shareholder support for the Tender Offer commenced by MTY. As alleged herein, the Recommendation Statement contained untrue statements of material fact that misled Papa Murphy's shareholders about the fairness of the Merger Consideration and the Company's future financial prospects.

41.    Specifically, the Recommendation Statement contained the following materially false or misleading statements:

     a. The Base Case Projections themselves, disclosed on page 43 of the Recommendation Statement, which Spangler did not actually believe in and knew were false or misleading because they were: (i) significantly lower than the Management Case Projections he himself was involved in preparing and believed to be the best estimates of the Company's future based upon his unique expertise and insight regarding the Company's prospects; (ii) inconsistent with the positive trends in the Company's recent financial performance—including the February 4, 2019 announcement that the Company's 2018 fourth quarter and fiscal year operating results represented *improving* sales trends and *better-than-guidance* performance and the positive trends in same and comparable store sales growth; (iii) inconsistent with Spangler's and Rupp's positive statements made during the months preceding the announcement of the Merger regarding the Company's positive recent financial trends and the Company's strong growth prospects (particularly once the refranchising plan was completed); and (iv) not even used

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

during the Company's negotiation with bidders and were created by North Point solely for use in conjunction with North Point's fairness opinion.

b.  The statements on pages 16, 26, 30, and 40 of the Recommendation Statement stating that all of the members of Papa Murphy's Board—which included Spangler—believed that the Tender Offer/Merger was "fair to" stockholders, which was materially false and misleading because, as evinced by the circumstantial facts alleged herein, Spangler did not actually hold the stated belief and knew that the Merger Consideration was completely below the fair valuation range that results from the Management Case Projections he himself believed to be the best estimates of the Company's future prospects.

c.  The summary of North Point's Discounted Cash Flow Analysis and the resulting implied equity value range set forth on page 38 of the Recommendation Statement, which was materially misleading because that range was calculated utilizing the unreasonably low Base Case Projections and therefore presented the value of shareholders' shares in a misleadingly low manner; and

d.  The statements on pages 26-28 of the Recommendation Statement identifying North Point's fairness opinion as a "material factor" that supported the Board's determination that the terms of the Merger were "fair to, advisable and in the best interests of, the Company and its stockholders" and its decision "to recommend that the Company's stockholders accept the Offer and tender their Shares in the Offer," which were misleading because, by citing the unreasonable fairness opinion as a reason that supported the Board's recommendation of the Merger, Spangler created an aura of reasonableness with respect to the fairness opinion that he knew it did not deserve because it was predicated on a case of projections he himself did not believe were the best estimates of the Company's financial future.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

42.     As noted above, Spangler and his management team prepared the Management Case Projections on a reasonable basis in accordance with industry practice to reflect their best available estimates and judgments of the expected future results of the Company's operations and financial condition. The Management Case was based on Spangler's and Rupp's already conservative outlook, *already accounted for various risks that the Company may face in trying to achieve its operations plan*, and thus reflected certain proprietary assumptions regarding management's ability to effectively implement its strategic priorities.

43.     In connection with the Company's exploration of strategic alternatives, Spangler and Papa Murphy's management provided the Management Case both to prospective bidders and to North Point to perform the financial analyses underlying their fairness opinion. In providing the Management Case to North Point, Spangler and Papa Murphy's management informed North Point that they were not aware of any information or facts that would make any information provided to North Point incomplete or misleading in any material respect.

44.     However, despite these assurances, North Point proceeded to unreasonably lower management's best estimate of the Company's system-wide same store sales growth and arbitrarily cap it from 2020 through 2023 at 2.5% to create a second set of financial projections, the Base Case. These adjustments were inconsistent with Spangler's best estimates of Papa Murphy's future business prospects and inconsistent with the positive trend in same store sales growth Spangler announced in the Company's earnings statements and press releases during the months immediately preceding the announcement of the Merger. As noted above, around the time the Base Case Projections were suddenly prepared for use in connection with the fairness opinion, the Company had announced back to back quarters with the best percentage change in same-store sales in years. Furthermore, Spangler and Rupp had indicated that they were already being conservative with their assumptions regarding future growth. Simply put, there was no reasonable basis to suddenly reduce the same store sales growth percentage well below the percentage that

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Spangler and Papa Murphy's management deemed to be the best estimate, and Spangler, as the Company's CEO, knew this.

45.    By artificially lowering Spangler's and management's genuine, reasonable best estimates regarding same store sales growth, the Base Case Projections reflected materially lower projections for EBITDA and cash flows—the two main metrics used by North Point to perform its financial analyses. And only by utilizing those materially lower financial projections was the Merger Consideration able to fall within a range of fairness.

46.    This point is clearly illustrated in the summary of North Point's Discounted Cash Flow Analysis[1] ("DCF") provided in the Recommendation Statement on page 38. As a highly respected professor explained in one of the most thorough law review articles regarding valuation analyses bankers perform in support of fairness opinions:

> [A] discounted cash flow analysis is conducted by discounting back at a chosen discount rate the projected future free cash flows and terminal value of an asset. In performing this analysis there are three central choices, which must be made, each of which can significantly affect the final valuation. These are the correct forecasted free cash flows to utilize, the appropriate discount rate, and the terminal value of the asset. There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars.

Davidoff at 1577-78.

47.    The Merger Consideration fell within a range of fairness only by utilizing the unreasonably prepared Base Case Projections. Without utilizing the materially misleading and unreasonable Base Case Projections, no reasonable person could deem the Merger Consideration as "fair" consideration for Papa Murphy's shareholders, as the DCF valuation range utilizing solely the Management Case Projections would have completely exceeded the Merger Consideration, coming in at approximately $7.09 to $13.15. Spangler and Papa Murphy's were well aware of this fact, as Spangler and the full Board were presented with the DCF Analysis and

---

[1]    In cash out transactions, like the Merger here, discounted cash flow analyses are the most important valuation analysis a financial advisor can perform in valuing the target company. Steven M. Davidoff, *Fairness Opinions*, 55 AM. U. L. REV. 1557, 1575 (2006).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

thus saw that the low-end of the valuation range when utilizing the Base Case Projections (the projections he did not believe best estimated the Company's future prospects) came in just barely below the Merger Consideration, and Spangler was well-versed in matters of corporate finance from his decades as a corporate executive and years as CEO of Papa Murphy's who routinely presented the Company's financial performance. Despite knowing that the Merger Consideration was not actually fair to the Company's shareholders, Spangler approved the dissemination of the Recommendation Statement which stated that he along with the other Board members believed the Merger was fair to shareholders. Those statements were materially false, because Spangler did not actually hold the belief that was attributed to him.

48.     The Base Case Projections themselves, disclosed on page 43 of the Recommendation Statement, were material misrepresentations of the Company's value and future prospects and therefore were materially misleading to Papa Murphy's shareholders. As noted above, the Base Case Projections were meaningfully lower than Spangler's and management's own best estimate projections and inconsistent with the trend in the Company's recent financial performance and management's statements made during the months preceding the announcement of the Merger, and were not provided to bidders. The Base Case Projections misled Papa Murphy's shareholders and caused them to believe that the value of Company and its future prospects were much worse than they actually were.

49.     Likewise, the implied equity value per share range set forth in the summary of North Point's DCF Analysis on page 38 of the Recommendation Statement was a materially misleading statement, because that range was calculated utilizing the unreasonably lowered Base Case Projections and therefore presented the value of shareholders' shares in a misleadingly low manner.

50.     Additionally, pages 26-29 of the Recommendation Statement listed the "material" factors and reasons for recommending Papa Murphy's shareholders tender their shares in the Tender Offer, including the following:

SECOND AMENDED CLASS ACTION
COMPLAINT - 20
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

The written opinion of North Point to the effect that, as of April 10, 2019, and based upon and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations of the review undertaken by North Point as set forth in its opinion, the consideration to be received by the holders of the Shares pursuant to the Merger Agreement was fair from a financial point of view, to such holders of the Shares. The full text of North Point's written opinion is attached hereto as Annex A. For further discussion of the North Point opinion, see "*Item 4— The Solicitation or Recommendation—Opinion of the Company's Financial Advisor*" below.

RS at 28. Spangler knew that the Management Case reflected his best estimate of the Company's future financial performance, as evidenced by the fact that he and other members of the Company's management created the Management Case and gave assurances to North Point that it was reasonable and their best estimate. Spangler also knew that North Point unreasonably lowered his own projections, despite the fact that he—not North Point—had unique, unparalleled expertise regarding the Company's future prospects and challenges. Spangler further knew that if North Point had utilized solely his best estimate projections to run its DCF Analysis, the Merger Consideration would have fallen completely below the resulting implied value range. Accordingly, Spangler knew that North Point's fairness opinion was arrived at and predicated on materially misleading projections that he did not believe best reflected the Company's prospects, but he still cited the fairness opinion as a "material" reason for Papa Murphy's shareholders to tender their shares in the Tender Offer. Therefore, Spangler's endorsement and recommendation of the Merger based on the "written opinion of North Point" was itself a materially misleading statement. RS at 28. Indeed, by citing the unreasonable fairness opinion as a reason that supported his recommendation of the Merger, Spangler created an aura of reasonableness with respect to the fairness opinion that he knew it did not deserve.

51.    In sum, the above-referenced statements were materially false or misleading, and misled Papa Murphy's shareholders with respect to the purported fairness of the Merger Consideration and the actual value of their shares.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**IV.    Defendants Were Negligent in the Preparation, Review, and Dissemination of the False and Misleading Recommendation Statement**

52.    Spangler was legally obligated to carefully review the Recommendation Statement before he signed it and disseminated it to shareholders to ensure that it did not contain any materially false or misleading statements. Spangler failed to fulfill his obligation by allowing the dissemination of the materially misleading Recommendation Statement. As a result, shareholders were misled into tendering their shares into the unfair Merger, thereby causing them to receive less than full value for their shares and lose out on millions of dollars of value in the Company.

53.    Spangler was negligent because, as the CEO of the Company he was responsible for and significantly involved in the preparation of the Management Case and knew that it represented the best available estimates and judgments of the expected future results of the Company's operations and financial condition. Spangler also reviewed the financial analyses and fairness opinion with North Point, including the use of the unreasonable Base Case, and knew or should have known that the inclusion of such information in the Recommendation Statement was material and misleading to the Company's shareholders for the reasons set forth above. Spangler further knew that the Merger was not actually fair to the Company's shareholders because the reasonable implied value per share value range when calculated utilizing the Management Case Projections he himself believed to be the best estimates of the Company's future exceeded the Merger Consideration. Spangler nevertheless signed and approved the dissemination of a Recommendation Statement that misstated his own genuine belief. He was negligent in approving and signing a Recommendation Statement that he knew or should have known contained the above-referenced materially false and misleading statements.

**V.    The Materially False and Misleading Recommendation Statement Caused Papa Murphy's Shareholders Financial Harm**

54.    The Merger Consideration was inadequate consideration for Papa Murphy's shareholders and did not reflect the fair value of their shares. As discussed above, the Merger

SECOND AMENDED CLASS ACTION
COMPLAINT - 22
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Consideration could not have been deemed "fair" without the unreasonable Base Case Projections. Indeed, in their DCF analysis, North Point found the company to be worth up to $12.34—nearly *double* the Merger Consideration, even while utilizing the unreasonable Base Case Projections.

55.     Moreover, the $6.45 Merger Considerations represented a derisory 4% premium to the Company's trading price less than a month before the Merger was announced. Further, other bidders had valued the Company's shares at up to $6.64 per share. Defendants passed on a competing bidder's $6.64 offer, and shareholders were thus indisputably shortchanged for their shares in the Merger.

56.     Additionally, the Company's executive officers and the members of the Board had interests in the Merger that were different from, or in addition to, those of the Company's other stockholders. These interests included, but were not limited to, lucrative golden parachute compensation, retention agreements with MTY, and vesting of stock options that would result from the consummation of the Merger.

57.     Spangler personally stood to significantly benefit from a merger rather than continuing as the CEO of Papa Murphy's and executing the Company's strong stand-alone plan, and his interests therefore were not aligned with those of Plaintiff and the Class. Specifically, as a result of the Merger Spangler received golden parachute compensation totaling $2,183,014, including payment for all outstanding stock options and restricted stock units. Furthermore, Spangler knew that he could continue his lucrative job at Papa Murphy's after the completion of the Merger if he wished, as MTY Group announced that it would allow Papa Murphy's management team to continue to operate the brand independently. Furthermore, as an experienced CEO, Spangler knew that he would have no trouble finding a new lucrative job if he elected to depart Papa Murphy's, and, shortly after the Merger was completed he took over as CEO of Snap Fitness/Lift Brands. Simply put, there was no downside and significant upside for Spangler to approve a merger he did not genuinely believe was fair to the Company's shareholders.

SECOND AMENDED CLASS ACTION
COMPLAINT - 23
(No.19-cv-05514-JRC)

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

58.    The material misrepresentations in the Recommendation Statement misled Papa Murphy's shareholders to tender their shares into the undervalued Tender Offer. Accordingly, Papa Murphy's shareholders were misled and harmed millions of dollars in the aggregate.

59.    The materially misleading Recommendation Statement also prompted Papa Murphy's shareholders to accept the unfair Merger Consideration in exchange for their shares rather than recoup a greater value through appraisal remedies available in the Merger. The material misrepresentations in the Recommendation Statement caused Papa Murphy's shareholders to forfeit and not enforce their appraisal rights.

60.    In sum, the Merger Consideration the Company's shareholders received was unfair and inadequate because the intrinsic value of their shares materially exceeded the Merger Consideration. Furthermore, the materially misleading Recommendation Statement was an essential link in the consummation of the unfair Merger.

## <u>COUNT I</u>

**Against Papa Murphy's and Spangler for Violations of Section 14(e) of the Exchange Act**

61.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.    Defendants caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Merger.

63.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

64.    Papa Murphy's and Spangler violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to Papa Murphy's shareholders in order to solicit them to tender their shares in the Tender Offer, and the

SECOND AMENDED CLASS ACTION
COMPLAINT - 24
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Recommendation Statement contained untrue statements of material fact that a reasonable and diligent chief executive officer would have corrected prior to signing and disseminating the Recommendation Statement.

65.    Papa Murphy's and Spangler were negligent in allowing the Recommendation Statement to be disseminated with the above-referenced materially misleading statements regarding the Company's projections, the value of the Company, and the purported fairness of the Merger and the reasons that supported its fairness.  As the CEO and a director of Papa Murphy's, Spangler had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's shareholders to ensure that it did not contain untrue statements of material fact.  Spangler was negligent in carrying out their duty because, as set forth herein, the Recommendation Statement contains materially false and misleading statements.

66.    Papa Murphy's is imputed with the negligence of Spangler, who was the CEO and a director of the Company.

67.    As a direct result of Papa Murphy's and Spangler's negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and other Papa Murphy's shareholders were impeded from making a decision on a fully informed basis and were induced to tender their shares and accept the inadequate Merger Consideration.  The false and/or misleading Recommendation Statement used to solicit the tendering of shares impeded Plaintiff and other Papa Murphy's shareholders from making a fully informed decision regarding the Tender Offer and was an essential link in consummating the Merger, which deprived them of full and fair value for their Papa Murphy's shares.

68.    At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Papa Murphy's and Spangler were aware of and/or had access to the true facts concerning the process involved in selling Papa Murphy's, the projections for Papa Murphy's, and Papa Murphy's true value, which is greater than the Merger Consideration Papa Murphy's shareholders received.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

69.     The misrepresentations in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in the Tender Offer.  In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to shareholders.

70.     As a direct and proximate result of the dissemination of the misleading Recommendation Statement Papa Murphy's and Spangler used to obtain shareholder approval of the Merger, Plaintiff and the Class have suffered damages and actual economic losses (*i.e.* the difference between the value they received as a result of the Merger and the true value of their shares) in an amount to be determined at trial.  By reason of the misconduct detailed herein, Papa Murphy's and Spangler are liable pursuant to Section 14(e) of the Exchange Act.

## COUNT II

### Against Spangler for Violations of Section 20(a) of the Exchange Act

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     Spangler acted as a controlling person of Papa Murphy's within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of his position as CEO and a director of Papa Murphy's and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, Spangler had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and/or misleading.

73.     Spangler signed the Recommendation Statement and was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

SECOND AMENDED CLASS ACTION
COMPLAINT - 26
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

74.     Spangler had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement is signed by Spangler, and he was thus directly involved in the making of the Recommendation Statement.

75.     By virtue of the foregoing, Spangler violated Section 20(a) of the Exchange Act.

76.     As set forth above, Spangler had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein.  By virtue of his position as a controlling person, Spangler is liable pursuant to Section 20(a) of the Exchange Act.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as Class Representatives and their counsel as Class Counsel;

B.     Awarding Plaintiff and the members of the Class compensatory and/or rescissory damages against Defendants, including pre-judgment and post-judgment interest;

C.     Awarding Plaintiff and the members of the Class reasonable attorneys' fees, expert fees, and other costs;

D.     Awarding extraordinary, equitable, and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

E.     Awarding such other relief as this Court may deem just and proper.

SECOND AMENDED CLASS ACTION
COMPLAINT - 27
(No.19-cv-05514-JRC)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

**JURY DEMAND**

2    Plaintiff demands a trial by jury.

3

4    DATED:  July 10, 2020

5                                                    **LOCAL COUNSEL:**

6                                                    **BRESKIN JOHNSON TOWNSEND, PLLC**

7                                                    *s/ Roger Townsend*
                                                     Roger M. Townsend, WSBA No. 25525
8                                                    1000 Second Avenue, Suite 3670
                                                     Seattle, Washington  98104
9                                                    Tel: 206-652-8660
10                                                   Fax: 206-652-8290
                                                     rtownsend@bjtlegal.com
11

12                                                   **OF COUNSEL:**

13                                                   **MONTEVERDE & ASSOCIATES PC**
                                                     Juan E. Monteverde
14                                                   Miles D. Schreiner
                                                     The Empire State Building
15                                                   350 Fifth Avenue, Suite 4405
                                                     New York, New York 10118
16                                                   Tel:  212-971-1341
                                                     Fax:  212-202-7880
17                                                   jmonteverde@monteverdelaw.com
18                                                   mschreiner@monteverdelaw.com

19                                                   *Counsel for Plaintiff*

20

21

22

23

24

25

26

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660