THE HONORABLE BENJAMIN H. SETTLE

(On Reference to The Honorable J. Richard Creatura)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

EVAN BROWN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

PAPA MURPHY'S HOLDINGS INC., and WELDON SPANGLER,

Defendants.

CASE NO. 3:19-cv-05514-BHS-JRC

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

NOTE ON MOTION CALENDAR:
Friday, November 6, 2020

**ORAL ARGUMENT REQUESTED**

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

SUMMARY OF FACTUAL ALLEGATIONS AND COURTS' SKEPTICISM OF BANKER PROJECTIONS THAT DISREGARD MANAGEMENT'S EXPERTISE ............................. 2

APPLICABLE LEGAL STANDARDS .......................................................................... 6

I.   STANDARDS GOVERNING A MOTION TO DISMISS.................................... 6

II.  STANDARDS GOVERNING NEGLIGENCE-BASED SECTION 14(e) CLAIMS ......... 7

ARGUMENT ............................................................................................................. 8

I.   PLAINTIFF SUFFICIENTLY PLED MATERIALLY FALSE AND MISLEADING STATEMENTS ............................................................................. 8

   A.  The Base Case Projections Were Materially False And Misleading .............................. 8

      1.  Plaintiff sufficiently pled subjective and objective falsity.......................................... 8

      2.  Defendants rely upon distinguishable cases ............................................................. 15

   B.  Plaintiff Sufficiently Pled The Three Additional Challenged Statements Were Materially False And Misleading.................................................................. 19

II.  PLAINTIFF SUFFICIENTLY PLED NEGLIGENCE...................................................... 22

III. PLAINTIFF SUFFICIENTLY PLED LOSS CAUSATION .......................................... 27

IV.  SHAREHOLDERS MAY BRING SECTION 14(e) NEGLIGENCE CLAIMS ............. 30

V.   PLAINTIFF'S SECTION 20(a) CLAIM MAY NOT BE DISMISSED ......................... 30

CONCLUSION .......................................................................................................... 30

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

i

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*In re 3Com S'holders Litig.*,
   No. 5067-CC, 2009 Del. Ch. LEXIS 215 (Del. Ch. Dec. 18, 2009) .................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 6

*Azar v. Blount Int'l, Inc.*,
   No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) ....... 12, 25-26, 28

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) ................................................................... 25

*In re BankAmerica Corp. Secs. Litig.*,
   78 F. Supp. 2d 976 (E.D. Mo. 1999) ...................................................................... 25

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................... 8

*Baum v. Harman Int'l Indus.*,
   408 F. Supp. 3d 70 (D. Conn. 2019) ............................................................... 15, 29-30

*Beck v. Dobrowski*,
   559 F.3d 680 (7th Cir. 2009) ............................................................................ 23, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 6

*Berman v. Thomson*,
   403 F. Supp. 695 (N.D. Ill. 1975) ......................................................................... 25

*Brown v. Brewer*,
   No. CV 06-3731-GHK (SHx),
   2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) .......................................... 7, 25, 28

*Cede & Co. v. JRC Acq. Corp.*,
   No. 18648-NC, 2004 Del. Ch. LEXIS 12 (Del. Ch. Feb. 10, 2004) ............................ 5, 12, 17

*In re CheckFree Corp. S'holders Litig.*,
   No. 3193-CC, 2007 Del. Ch. LEXIS 148 (Del. Ch. Nov. 1, 2007) ........................................ 17

*In re ChinaCast Educ. Corp. Sec. Litig.*,
   809 F.3d 471 (9th Cir. 2015) ................................................................................... 26

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

ii

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .................................................................. 9, 10

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ..................................................................... 30

*In re Envision Healthcare Corp.*,
  No. 18-1068-RGA, 2019 U.S. Dist. LEXIS 128237 (D. Del. Aug. 1, 2019) ................. *passim*

*In re Envision Healthcare Corp.*,
  No. 18-cv-01068-RGA, 2019 U.S. Dist. LEXIS 159356 (D. Del. Sept. 19, 2019) ............ 9, 12

*Fargo v. San Juan Bautista*,
  857 F.2d 638 (9th Cir. 1988) ...................................................................... 23

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ....................................................................... 8

*Fradkin v. Ernst*,
  571 F. Supp. 829 (N.D. Ohio 1983) .............................................................. 25

*Fresno Cnty. Emps. Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017) ........................................................... 24

*Golub v. Gigamon Inc.*,
  No. 17-cv-06653-WHO, 2019 U.S. Dist. LEXIS 149898 (N.D. Cal. Sept. 3, 2019) ....... 18, 19

*Hayes v. Crown Cent. Petrol. Corp.*,
  78 F. App'x 857 (4th Cir. 2003) ............................................................... 20-21

*Herskowitz v. Nutri/System*,
  857 F.2d 179 (3d Cir. 1988) ....................................................................... 11

*In re Hot Topic Sec. Litig.*,
  No. CV 13-02939 SJO (JCx),
  2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) ................................... 11, 13, 14, 26

*Howard v. Everex Sys.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................. 7, 24, 25

*Inland Power & Light Co. v. Grieger*,
  91 F.2d 811 (9th Cir. 1937) ....................................................................... 29

*Karp v. First Conn. Bancorp, Inc.*,
  No.: RDB-18-2496, 2019 U.S. Dist. LEXIS 162819 (D. Md. Sept. 24, 2019) ..................... 28

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................. 2, 3, 4, 27

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Laborers' Local #231 Pension Fund v. Cowan*,
  No. 17-478, 2018 U.S. Dist. LEXIS 110545 (D. Del. July 2, 2018) ............................... 21, 22

*Lane v. Page*,
  581 F. Supp. 2d 1094 (D.N.M. 2008) ...................................................................... 23-24, 24

*Lane v. Page*,
  649 F. Supp. 2d 1256 (D.N.M. 2009) ................................................................................. 9

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................................. 8

*Marx v. Comput. Scis. Corp.*,
  507 F.2d 485 (9th Cir. 1974) ................................................................................. 6, 19, 28

*Mendell v. Greenberg*,
  938 F.2d 1528 (2d Cir. 1991) ......................................................................................... 28

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) .......................................................................................... 20

*Miller v. United States*,
  587 F.2d 991 (9th Cir. 1978) .......................................................................................... 25

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ................................................................................................... 7, 28

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) .......................................................................................... 29

*NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*,
  No. 3:16-cv-01756-YY, 2017 U.S. Dist. LEXIS 165139 (D. Or. Oct. 3, 2017) .................... 19

*O'Reilly v. Transworld Healthcare, Inc.*,
  745 A.2d 902 (Del. Ch. Div. 1999) ............................................................................... 7, 25

*In re Ocera Therapeutics Secs. Litig.*,
  No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16, 2018) ................ 18

*Osofsky v. Zipf*,
  645 F.2d 107 (2d Cir. 1981) ........................................................................................... 13

*Owen v. Cannon*,
  No. 8860-CB, 2015 Del. Ch. LEXIS 165 (Del. Ch. June 17, 2015) .................................. 4-5

*Parsons v. Jefferson-Pilot Corp.*,
  789 F. Supp. 697 (M.D.N.C. 1992) .................................................................................. 25

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

iv

*Plaine v. McCabe*,
   797 F.2d 713 (9th Cir. 1986) ................................................................ 7, 28

*Rubke v. Capitol Bancorp Ltd.*,
   460 F. Supp. 2d 1124 (N.D. Cal. 2006) ...................................................... 16

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) .............................................................. 9, 16

*Schreiber v. Burlington N., Inc.*,
   472 U.S. 1 (1985) ............................................................................. 30

*SEC v. Glt Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) .................................................................. 25

*SEC v. Goldstone*,
   No. CIV 12-0257 JB/GBW, 2015 U.S. Dist. LEXIS 116847 (D.N.M. Aug. 22, 2015) .......... 9

*Smith v. Robbins & Myers*,
   969 F. Supp. 2d 850 (S.D. Ohio 2013) ..................................................... 21, 28

*Steiner Corp. v. Benninghoff*,
   5 F. Supp. 2d 1117 (D. Nev. 1998) ............................................................. 4

*Taylor v. Am. Specialty Retailing Grp., Inc.*,
   No. 19239, 2003 Del. Ch. LEXIS 75 (Del. Ch. July 25, 2003) ............................ 5, 12

*TSC Indus. v. Northway*,
   426 U.S. 438 (1976) ......................................................................... 7-8

*Va. Bankshares v. Sandberg*,
   501 U.S. 1083 (1991) ............................................................. 9, 11, 17, 22

*Varjabedian v. Emulex Corp.*,
   888 F.3d 399 (9th Cir. 2018) ............................................................... 7, 24

*Varjabedian v. Emulex Corp.*,
   No.: SACV 15-00554-CJC(JCGx),
   2020 U.S. Dist. LEXIS 40037 (C.D. Cal. Feb. 25, 2020) ................................. 23, 30

*In re Wells Real Estate Inv. Tr., Inc.*,
   No. 1:07-CV-862-CAP, 2010 U.S. Dist. LEXIS 143057 (N.D. Ga. Aug. 2, 2010) ............... 25

*Wilson v. Great Am. Indus.*,
   855 F.2d 987 (2d Cir. 1988) ............................................................... 7, 25

*Wilson v. Great Am. Indus.*,
   979 F.2d 924 (2d Cir. 1992) ............................................................... 27-28

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

v

*Zirn v. VLI Corp.*,
  681 A.2d 1050 (Del. 1996) ........................................................................................ 25

**STATUTES**

15 U.S.C. § 78n(e) .......................................................................................... 7, 19, 24

15 U.S.C. § 78u-4 ........................................................................................... 8, 23, 24

42 U.S.C. § 1983 ...................................................................................................... 24

8 Del. C. § 141(b) .................................................................................................... 29

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6, 8

Fed. R. Evid. 201 .................................................................................................... 27

**OTHER AUTHORITIES**

Jonathan R. Macey, *The Regulator Effect In Financial Regulation*,
  98 Cornell L. Rev. 591 (March, 2013) ................................................................. 26

Steven M. Davidoff, *Fairness Opinions*,
  55 Am. U. L. Rev. 1557 (Aug. 2006) ..................................................................... 4

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

vi

**INTRODUCTION**

Lead Plaintiff respectfully submits this opposition to the Motion to Dismiss ("MTD") (ECF No. 41) filed by the two defendants named in the Second Amended Class Action Complaint ("SAC") (ECF No. 36)—Papa Murphy's[1] and its former CEO, Weldon Spangler.

In its May 20, 2020 Report and Recommendation ("R&R") (ECF No. 34), the Court recommended granting the previous motion to dismiss filed by Papa Murphy's, Spangler, and the nine outside directors that have been dropped as defendants. In the SAC, Plaintiff removed his allegations targeting all of Papa Murphy's directors "as a group," R&R 9, and refocused the SAC on Spangler's actions, statements, and knowledge. Spangler had the best insight regarding the Company's future; he was intricately familiar with Papa Murphy's strong financial performance in the months preceding the Merger, and its strong long-term prospects driven by the forthcoming completion of its refranchising initiative. ¶¶ 9, 27-39. He routinely discussed the Company's rapidly improving same store sales figures in the months preceding the Merger, *id*., and he was intricately involved in preparing the Management Case Projections. ¶¶ 6-10, 53. Accordingly, Spangler knew the Base Case Projections prepared by North Point—which disregarded Spangler's unparalleled insight about the Company—were predicated on objectively unreasonable assumptions at odds with his own genuine belief regarding the Company's future. *Id*. As a result, the Base Case Projections "were in fact misleading and objectively and subjectively false." R&R 17.

Despite six consecutive months of positive trending announcements regarding same store sales growth, ¶¶ 30-38, statements made by Spangler indicating management had been conservative in their outlook, ¶¶ 30, 42, 44, and Spangler's knowledge that the Company's same store sales figures in previous years were dragged down by the refranchising initiative that was expected to be completed by the end of 2020, ¶ 27, Spangler allowed North Point to slash the

---

[1]  All capitalized terms not defined herein have the same meaning set forth in the SAC. Citations denoted as "¶_" refer to the SAC. All emphasis to quotations has been added.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

projections that represented his *only* and genuine best estimates (the Management Case), ¶ 39, and to utilize the significantly lower Base Case in conjunction with the most important valuation analyses it performed. ¶ 12. Spangler then allowed the Base Case to be disseminated in the Recommendation Statement (ECF No. 27-1) even though he did not actually believe in those projections and knew they were predicated on objectively unsound assumptions that were inconsistent with his unparalleled expertise about the Company's finances and prospects. ¶ 39. By doing so, Spangler negligently performed his well-established duty to ensure that the Recommendation Statement did not contain materially false or misleading statements. ¶ 65.

In the R&R, the Court also rejected two arguments Defendants repeat in their motion to dismiss. First, the Court found that under Ninth Circuit precedent "plaintiff does indeed have a private right of action under Section 14(e)." R&R 22. Second, the Court found that "plaintiff has sufficiently pled loss causation with particularity." *Id*. at 19. Defendants do not offer any persuasive reasons why the Court should disregard its prior conclusions on these issues.[2] As set forth below, the Court should deny Defendants' MTD.

**SUMMARY OF FACTUAL ALLEGATIONS AND COURTS' SKEPTICISM OF BANKER PROJECTIONS THAT DISREGARD MANAGEMENT'S EXPERTISE**

In conjunction with their strategic review process, Spangler and his management team prepared projections for 2019-2023 on a reasonable basis and in accordance with industry practice, which reflected their best estimates regarding the Company's expected future results (the Management Case). ¶ 6. The Management Case was based on Spangler's already conservative outlook, and *fully accounted for both the Company's historical performance and the various risks that Papa Murphy's could face* in trying to achieve its business plan. ¶ 42. Defendants provided the Management Case to bidders and to North Point to use in connection

---

[2]  The Court also stated that it would "not 'assume the truth' of the statements in [the Recommendation Statement] 'if such assumptions only serve to dispute facts stated' in the amended complaint." R&R 4 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018)). Yet Defendants improperly cite to various *purported* facts from the Recommendation Statement to dispute the SAC. MTD 2, 10, 14, 22, 26. The Court "must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Khoja*, 899 F.3d at 1014.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2

with its fairness opinion. ¶ 43.

During the sales process, North Point provided multiple rounds of valuation analyses utilizing the Management Case, ¶¶ 7, 12, indicating that neither Defendants nor North Point believed the Management Case was unreasonably high. However, once the inadequate Merger Consideration was agreed upon, the Management Case presented a major problem for North Point: it undercut the financial fairness of the Merger Consideration. ¶¶ 12, 47. North Point's ability to collect its $3.3 million fee was entirely contingent upon it providing a fairness opinion and shareholders approving the Merger. ¶ 25. Accordingly, North Point created a new case of financial projections called the "Base Case", which disregarded Spangler's best estimates and slashed his projections by up to 18.7%. ¶ 4.

There was no sound reason for North Point to disregard Spangler's projections. Spangler and his team had assured North Point that they prepared the Management Case on a reasonable basis in accordance with industry practice and that they were not aware of any information that would make the Management Case incomplete or misleading, and the Management Case reflected their best estimates as to Papa Murphy's future. ¶ 6. Moreover, the reduction to the Management Case was inconsistent with Spangler's statements during the six months leading up to Merger, and the fact that the Company's refranchising initiative (which had previously dragged down same store sales) was expected to reach its target by the end of 2020. ¶¶ 27-39.

For example, on November 7, 2018, Papa Murphy's held a conference call to discuss the third quarter 2018 financial results, which reflected the Company's "best percentage change in same-store sales in 12 quarters." ¶ 30. Spangler touted the results, and noted that while the sales trends continued to improve and results were trending positive, the Company would maintain a conservative outlook. *Id*. The call concluded with Spangler stating that the Company's actions should drive "sales growth in both the short and the long-term." ¶ 31.

Similarly, on February 4, 2019—two months before the Merger was announced—Papa Murphy's issued a release announcing that its preliminary 2018 fourth quarter and fiscal year

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

3

results were "better than guidance and sales trends [were] improving." ¶ 33. The release quoted Spangler, who stated: **"We saw positive same store sales in October, marking our first period of same store sales growth in 37 months. Momentum has continued into 2019, and we expect our strategic and cost saving initiatives to continue to deliver in 2019."** *Id*. And on March 14, 2019— four weeks before the Merger was announced—Papa Murphy's issued another press release announcing that the Company performed better than internal guidance. ¶ 36. That same day, the Company held another conference call to discuss the fourth quarter 2018 financial results. ¶ 35. Once again, Spangler and Papa Murphy's CFO Rupp were pleased about the positive trending results—which exceeded guidance. *Id*.

In other words, prior to the announcement of the Merger, Spangler indicated that Papa Murphy's was in the midst of a significant turnaround. ¶ 27. Between January and mid-March 2019, the Company's stock price increased approximately 36%, to a high of $6.20 just weeks before the Merger was announced. ¶ 28. Thus, the Merger Consideration was far from "fair", and was a mere 4% higher than the Company's trading price just weeks prior to the deal's announcement. *Id*. And despite six consecutive months during which Spangler made positive announcements regarding same store sales growth that outperformed expectations and the fact that the Company's refranchising initiative was nearing completion, Spangler allowed North Point to slash his projections and utilize the significantly lower Base Case in conjunction with its fairness opinion. ¶ 39. Without the illegitimate Base Case, the Merger Consideration would not have fallen within a range of fairness under a discounted cash flow methodology, which is indisputably recognized as the "single best" measure of fair value.[3] ¶¶ 12, 47.

Courts have consistently noted the importance of ***management-prepared*** projections, because they reflect the unique insight and expertise of the people who know the company best. *E.g., Owen v. Cannon*, No. 8860-CB, 2015 Del. Ch. LEXIS 165, at *52-53 (Del. Ch. June 17,

---

[3]    *Steiner Corp. v. Benninghoff*, 5 F. Supp. 2d 1117, 1129 (D. Nev. 1998); Steven M. Davidoff, *Fairness Opinions*, 55 AM. U.L. REV. 1557, 1576 (Aug. 2006) (collecting authorities).

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

4

2015) ("When performing a DCF analysis to determine the fair value of stock, Delaware courts tend to place great weight on contemporaneous management projections because management ordinarily has the best first-hand knowledge of a company's operations. Management also typically has the strongest incentives to predict the company's financial future accurately and reliably."). ***Conversely, courts have repeatedly expressed skepticism about banker-prepared projections that disregard management's assumptions***. When assessing the value of a company, courts have a strong preference for "[v]aluations based on management projections available as of the date of the merger and hold[] a healthy skepticism for post-merger adjustments to management projections or the creation of new projections entirely. Expert valuations that disregard contemporaneous management projections are sometimes completely discounted." *Cede & Co. v. JRC Acquisition Corp.*, No. 18648-NC, 2004 Del. Ch. LEXIS 12, at *7 (Del. Ch. Feb. 10, 2004); *Taylor v. Am. Specialty Retailing Grp., Inc.*, No. 19239, 2003 Del. Ch. LEXIS 75, at *7 (Del. Ch. July 25, 2003) (valuation "lacks credibility" where the expert "ignored a contemporaneous set of projections prepared by [the company's] management," and instead performed a DCF analysis based "on far more pessimistic assumptions of [the company's] future prospects that he prepared on his own."). Here, North Point created a new case of projections which downward-adjusted Spangler's same store sales rate and disregarded his reasonable best estimates of costs, causing key financial metrics to drop between 7.7% and 18.7%. ¶ 4.

Despite courts' warranted skepticism of such conduct, Spangler let the banker-prepared projections that he knew presented an objectively misleading picture of Papa Murphy's financial prospects get packaged into the Recommendation Statement. As a result, shareholders' assessment of fair value was tainted; instead of seeing solely the only projections that Spangler and his management team genuinely believed in, which reflected their unrivaled expertise regarding the Company's future and supported a higher valuation, shareholders were also presented with significantly lower projections. ¶¶ 4, 11. The unreasonably low Base Case misled shareholders regarding a material fact—the fair value of their shares. Indeed, "earnings

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

5

projections of a company constitute a prime factor in estimating the worth of its stock," *Marx v. Comput. Scis. Corp.*, 507 F.2d 485, 489 (9th Cir. 1974), and unreasonably low projections lead shareholders to believe the worth of their stock is less than its fair value.

Spangler was the sole signatory to the Recommendation Statement and was the person with ultimate responsibility for its contents. ¶¶ 13, 53. He and Papa Murphy's violated § 14(e) by allowing the Recommendation Statement to include the Base Case, which Spangler did not believe in and knew was predicated on unreasonable assumptions and thus did not accurately reflect Papa Murphy's future prospects, along with North Point's misleading Discounted Cash Flow ("DCF") Analysis that utilized the Base Case. *Id*. Spangler also allowed the Recommendation Statement to misleadingly cite North Point's fairness opinion as a material factor that supported his and the rest of the Board's decision to recommend the Merger, even though he knew the fairness opinion was predicated on the baseless Base Case. *Id*. Spangler and Papa Murphy's should be held accountable for failing to fulfill their legal obligation to ensure the Recommendation Statement did not contain materially false and misleading statements.

## APPLICABLE LEGAL STANDARDS

### I.    STANDARDS GOVERNING A MOTION TO DISMISS

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true (even if doubtful in fact), and construe the pleadings in the light most favorable to the plaintiff. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face," but "detailed factual allegations are not required." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## II.   STANDARDS GOVERNING NEGLIGENCE-BASED SECTION 14(e) CLAIMS

Section 14(e) makes it "unlawful for any person to make any untrue statement of a material fact…in connection with any tender offer[.]" 15 U.S.C. § 78n(e). Scienter is not required to state a claim under § 14(e). *Varjabedian v. Emulex Corp.*, 888 F.3d 399, 401, 408 (9th Cir. 2018). The statute's legislative history "places more emphasis on the quality of information shareholders receive in a tender offer than on the state of mind harbored by those issuing a tender offer. Such a purpose supports a negligence standard." *Id*. at 408. Accordingly, a shareholder may proceed with a § 14(e) claim if they sufficiently plead a defendant negligently made a material misstatement in a recommendation statement that was an essential link in consummating a transaction that provided an inadequate price. *See Varjabedian*, 888 F.3d at 401; *Plaine v. McCabe*, 797 F.2d 713, 722 (9th Cir. 1986).[4]

As Papa Murphy's CEO and the sole signatory of the Recommendation Statement, Spangler was responsible for its contents. *See Howard v. Everex Sys.*, 228 F.3d 1057, 1061 (9th Cir. 2000). And, "[a]s a matter of law, the preparation of a [recommendation] statement by corporate insiders containing materially false or misleading statements…is sufficient to satisfy the [] negligence standard." *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *81 (C.D. Cal. June 17, 2010); *Wilson v. Great Am. Indus.*, 855 F.2d 987, 995 (2d Cir. 1988); *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 916 (Del. Ch. 1999) ("[F]iduciaries can breach their duty of disclosure…by making a materially false statement[.]").

Because the causation and negligence elements are directly linked to materiality, the key inquiry at this stage is whether the complaint sufficiently pleads a materially false or misleading statement. Information is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v.*

---

[4]   *Plaine* favorably cited to the causation standard established in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). *Mills* established a legal presumption connecting materiality and causation. *Id.* at 385. As the Ninth Circuit explained *Mills*' holding, "the plaintiff succeeds in proving causation once the misstatement or omission has been shown to be 'material.'" *Plaine*, 797 F.2d at 721. The Ninth Circuit also noted that "[c]ourts have applied the same causation standard under § 14(e)." *Id*. at 721 n.15. Thus, materiality and causation are directly linked. *Id*.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** <sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Northway, Inc.*, 426 U.S. 438, 448 (1975). Importantly, materiality is a "fact-specific inquiry" that "depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988). "Similarly, whether a public statement is misleading…is a mixed question to be decided by the trier or fact." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). Accordingly, a complaint may only be dismissed on the basis that a challenged statement is not materially false or misleading when the issue is so obvious that reasonable minds could not differ. *Id*.

## ARGUMENT

### I.  PLAINTIFF SUFFICIENTLY PLED MATERIALLY FALSE AND MISLEADING STATEMENTS

Pursuant to 15 U.S.C. § 78u-4(b)(1),[5] the SAC specifies the four false and misleading statements at issue, the reasons why they are false and misleading, and the facts on which the allegations made on information and belief were formed. While Defendants mischaracterize this case as merely a "quibble" with "North Point's professional judgment in conducting its DCF analysis[,]" MTD 7, 10, it is really about Spangler's authorization of a Recommendation Statement containing objectively unreasonable projections that he did not genuinely believe in.

Defendants are correct that "the alleged false or misleading nature of all four of the[] [challenged] statements is dependent on the alleged falsity of the base case projections." *Id*. As set forth below, all four challenged statements are actionable because the Base Case Projections were not genuinely believed in by Spangler and were predicated on unreasonable assumptions and thus presented an objectively false picture of Papa Murphy's financial prospects.

### A.  The Base Case Projections Were Materially False And Misleading

#### 1.  *Plaintiff sufficiently pled subjective and objective falsity*

Plaintiff's central claim is that the Base Case Projections themselves were materially false

---

[5] The statute did not "alter[] the usual contours of a Rule 12(b)(6) ruling." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009).

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

8

and misleading. ¶ 41(a), 48. Projections and opinions are actionable if they are both subjectively and objectively false or misleading. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614-15 (9th Cir. 2017); *Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (citing *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1094-96 (1991) (explaining disbelief plus "further proof that the statement was defective as to its subject matter" or "expressly or impliedly asserted something false or misleading about its subject matter" renders such statements actionable)).

"[W]hen it comes to the underlying facts that will support a conclusion that a statement is objectively or subjectively false, there may be significant overlap." *Lane v. Page*, 649 F. Supp. 2d 1256, 1291 (D.N.M. 2009). Indeed, the Supreme Court recognized as much in *Virginia Bankshares*, where it explained the same facts that supported subjective falsity would also support the conclusion "that the statement also expressly or impliedly asserted something false or misleading about its subject matter" or "was defective as to its subject matter[,]" (*i.e.*, was objectively false). *Va. Bankshares*, 501 U.S. at 1095-96;[6] *see also In re Envision Healthcare Corp.*, No. 18-cv-01068-RGA, 2019 U.S. Dist. LEXIS 159356, at *5 (D. Del. Sep. 19, 2019). "[C]ircumstantial evidence" is necessary, because it is "unusual" for a plaintiff to uncover "a director's naked admission of disbelief." *Va. Bankshares*, 501 U.S. at 1092, 1096. Indeed, it is "a rare case where there is direct evidence that corporate officers did not believe in the truth of their statements." *Lane*, 649 F. Supp. 2d at 1291. Thus, "[c]ourts regularly find that circumstantial evidence is sufficient to show a person's subjective beliefs or to demonstrate a genuine issue of a material fact." *SEC v. Goldstone*, No. CIV 12-0257 JB/GBW, 2015 U.S. Dist. LEXIS 116847, at *1081 (D.N.M. Aug. 22, 2015).

Unlike the cases Defendants rely upon, pleading subjective falsity here is much more straight-forward because Plaintiff is not alleging a defendant did not genuinely believe in a case

---

6   Specifically, in *Virginia Bankshares* the plaintiff pointed to "facts about the Bank's assets and its actual and potential level of operation to prove" *both* that the directors' description of a $ 42 per share merger price as "high" and "fair" "*was misleading about its subject matter and* a false expression of the directors' reasons" *Id*. at 1094.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

9

of projections that the defendant himself prepared. Rather, Plaintiff alleges that Spangler did not genuinely believe in a case of projections which meaningfully differed from the projections he believed were the reasonable best estimates of the Company's future. ¶ 13. This alone is highly probative of the fact that Spangler did not "actually believe[]" in the Base Case Projections. *Dearborn Heights*, 856 F.3d at 616.

Plaintiff also points to additional circumstantial facts indicating Spangler did not actually believe in the Base Case. Specifically, the SAC alleges that: (i) same store sales growth figures during the months immediately prior to the Merger were trending positive, exceeded internal expectations, and Spangler expected the numbers to continue to improve in light of the completion of the refranchising initiative (¶¶ 29-39); (ii) no negative events occurred in the months preceding the announcement of the Merger that would warrant any reduction (let alone a meaningful reduction) to the same store sales projected in the Management Case (¶ 38); (iii) Spangler indicated he had been conservative with his views regarding the Company's outlook (¶ 30); (iv) Defendants only provided bidders with the Management Case, not the Base Case (¶ 5); and (v) the Base Case was prepared by North Point after the Merger Consideration was set and solely for use in its fairness opinion (¶ 8).

Defendants contend that Plaintiff's allegations of subjective falsity are undercut by the generic warnings about the risk that both cases of projections may not be achieved. MTD 10-11. However, such boilerplate warnings are included in every SEC filing containing projections, and say nothing about Spangler's *genuine* views regarding the accuracy of the Management Case and unreasonableness of the Base Case. Far more probative is the fact that Spangler did not deem it necessary for management to create a second set of projections at any point during the sales process, and that he and his team assured North Point that the Management Case was prepared on a reasonable basis in accordance with industry practice, that they were not aware of any information that would make the Management Case incomplete or misleading, and that the Management Case had been prepared using assumptions reflecting their best judgments as to the

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

10

Company's expected future results and financial condition. ¶¶ 6-11.

With respect to objective falsity, *i.e.*, that the Base Case Projections "expressly or impliedly asserted something false or misleading about" their subject matter (Papa Murphy's future financial prospects) or were "defective as to [their] subject matter", *Va. Bankshares*, 501 U.S. at 1096, courts have identified the types of facts that support such a finding. "While it may seem odd for a court to consider whether one set of forward-looking financial projections is more accurate than another, given the difficulty in ascertaining likely financial earnings in advance[,]" *In re Hot Topic Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 180513, at *15 (C.D. Cal. May 2, 2014), projections and valuations are objectively false when they are predicated on "unreasonable assumptions", *id.*, or are undercut by facts about a company's "actual and potential levels of operation." *Va. Bankshares*, 501 U.S. at 1094. In other words, a projection or valuation is objectively false "***when an expert, in making a projection, adopts an assumption which the factfinder concludes was objectively unreasonable in the circumstances***." *Herskowitz v. Nutri/System*, 857 F.2d 179, 185 (3d Cir. 1988).

Here, the Base Case Projections were predicated on unreasonable assumptions and were inconsistent with both the recent trend in Papa Murphy's same store sales performance and the best estimates of Papa Murphy's growth prospects. Specifically, the Base Case Projections were unreasonably capped utilizing a 2.5% same store sales growth rate and disregarded Spangler's best estimates of costs, despite the fact that Spangler—the person with unrivaled insight regarding the Company's prospects—indicated that a 3.5% to 4.5% annual increase was the best metric. ¶¶ 10, 44. While Defendants' note that Papa Murphy's had previously "experienced three years of declining same-store sales," and a negative same-store sales percentage, MTD 14, they ignore that same-store sales were dragged down by the Company's refranchising initiative, which began in 2017 and was expected to reach its target by the end of 2020. ¶ 27. Furthermore, Spangler was obviously aware of the Company's historical financial performance, and he nevertheless deemed a 3.5%-4.5% growth rate to be his reasonable best estimate. ¶ 44. The Base Case was prepared

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

11

by a Company outsider eager to collect its $3.3 million fee, and disregarded the best estimates of the person who was indisputably the most well-versed in both Papa Murphy's historical financial performance and its future prospects. *Cf. Cede*, 2004 Del. Ch. LEXIS 12, at *7 (conveying "a healthy skepticism for post-merger adjustments to management projections or the creation of new projections entirely. Expert valuations that disregard contemporaneous management projections are sometimes completely discounted."); *Taylor*, 2003 Del. Ch. LEXIS 75, at *7 (valuation "lacks credibility" where expert "ignored a contemporaneous set of projections prepared by [the company's] management," and performed a DCF based "on far more pessimistic assumptions of [the company's] future prospects that he prepared on his own."). It is thus more than plausible that the Base Case presented an objectively false picture of Papa Murphy's prospects.

As other courts have accurately described arguments similar to those made by Defendants, they "***amount only to a factual dispute with Plaintiffs' allegations***, which do not affect the legal sufficiency of the pleadings. At this stage of the lawsuit, the Court must assume that Plaintiffs' well-pleaded factual allegations are true." *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *19 (D. Or. Mar. 20, 2017); *In re Envision Healthcare Corp.*, No. 18-1068-RGA, 2019 U.S. Dist. LEXIS 128237, at *15 (D. Del. Aug. 1, 2019)[7] ("Although defendants present a number of reasons why the Sensitivity Case Projections were reasonable, this amounts to a factual dispute requiring a weighing of the evidence to ascertain the motivations behind preparing the Sensitivity Case Projections. At this stage of the proceedings, the court must view the amended complaint in the light most favorable to plaintiff."). At bottom, Plaintiff has plausibly alleged the Base Case was predicated on unreasonable assumptions and inconsistent with facts about the Company's actual and potential levels of operation, *i.e.*, the Management Case, the quarterly results preceding the announcement of the Merger (which the Management Case's 3.5%-4.5% growth rate was based upon), and Spangler's outlook for the future, along with

---

[7] This Report and Recommendation was adopted by District Judge Richard G. Andrews, who rejected defendants' objections to Magistrate Judge Fallon's objective falsity analysis. *Envision*, 2019 U.S. Dist. LEXIS 159356.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

12

the forthcoming completion of the refranchising initiative. ¶ 27. Accordingly, Plaintiff sufficiently alleged the Base Case was subjectively and objectively false.[8]

Indeed, courts have found factual allegations similar to those discussed above sufficient to plead both subjective and objective falsity. *Hot Topic* is particularly analogous. As this Court noted in the R&R, *Hot Topic* found "that the defendants' use of higher financial projections throughout a strategic review process, but including self-lowered projections in a forward-looking statement, *could* support a claim where plaintiff alleged facts that the defendants knew that the lower projections were flawed or inaccurate." R&R 17. The "additional facts" (*id*.) the plaintiff pointed to in *Hot Topic* are similar to those Plaintiff cites here. For example, the plaintiff in *Hot Topic* pointed to the fact that the lowered projections "moderated downwards" the company's growth for certain businesses, even though Hot Topic and its CEO had "praised" the business's growth and referred to such growth as "the Company's 'number one priority' and 'the major highlight'" of the quarters prior to the merger. 2014 U.S. Dist. LEXIS 180513, at *6, *16. The plaintiff similarly noted that while the lowered projections "assumed a slower build out of stores" than the higher projections, the slower build out was "contrary to the Company's stated goals to continue to open new" stores. *Id*. at *16. The plaintiff also noted that the "changes to gross revenue growth" were inconsistent with "the Company's strong improvements in this area" during the previous quarters. *Id*. at *17. Plaintiff points to similar facts here, including Spangler's statements in the quarters immediately prior to Merger announcement touting Papa Murphy's rapidly improving same store sales figures, ¶¶ 30-36,  and the fact that the Base Case's reduction to Spangler's same store sales expectation was inconsistent with the forthcoming completion of the refranchising initiative. ¶ 27.

The *Hot Topic* Court acknowledged that there may have been sound business reasons for

---

[8]   Defendants attempt to minimize the difference between a 2.5% and a 3.5%-4.5% growth rate. MTD 18. But the change to the growth rate (and costs) equated to millions of dollars in value and had a significant impact on the resulting numbers, causing EBITDA and cash flow to drop between 7.7% and 18.7%. ¶ 4. Those are plainly amounts that would matter to a reasonable shareholder. *See, e.g., Osofsky v. Zipf*, 645 F.2d 107, 114 (2d Cir. 1981) (finding a "some 4%" difference in merger consideration could not be deemed "immaterial as a matter of law.").

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

moderating the company's growth expectations downward, but it correctly found that on a motion to dismiss it had to view the allegations in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. The court explained:

> It is possible that further examination will reveal that these items were moderated downward to bring the Revised Projections in line with the Company's actual and expected growth. However, at this point, it is at least plausible that Defendants' changes to Hot Topic's financial projections resulted in a less accurate forecast. Thus, Plaintiff has adequately pleaded that Defendants' statements about the Revised Projections in the Proxy Statement were wrong, as was the Fairness Opinion, which was based on the Revised Projections.

*Id.* at *18.

The same reasoning applies here. And, also similar to the facts here, *Hot Topic* pointed to the fact that the higher projections "were used by management and the Board throughout" the strategic review process "without any doubt as to the appropriateness of the assumptions underlying the projections," which the court stated showed "that the Board members…knew of the alleged accuracy of the [higher projections]." *Id*. at *19. The *Hot Topic* Court concluded that "these factual allegations are sufficient to give rise to the 'strong inference' that the…Defendants knew that the [higher projections] were appropriate and nonetheless approved the use of alternative projections in the Proxy Statement and in the Fairness Opinion." *Id*. at *20. Similarly, here the Management Case was used by Defendants throughout the sales process, ¶ 8, and the fact that Spangler and his team determined there was no need for them to create an alternative case of projections further illustrates their confidence in the Management Case.

*Envision* is also strikingly similar to this case. There, the court cited: (i) "the timing of the preparation of the" lower projections "in relation to the overtures" of the buyer "and other potential bidders"; (ii) "the lack of any meaningful change between" the date the higher projections and the lower projections were prepared; (iii) "the fact that the [lower projections] were not given to" the buyer; and (iv) "statements made by executives regarding confidence in the [higher projections] as factual support for the allegations in the amended complaint." 2019

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

14

U.S. Dist. LEXIS 128237, at \*10, \*14. Plaintiff points to similar facts here.

Lastly, in *Baum v. Harman Int'l Indus.*, 408 F. Supp. 3d 70 (D. Conn. 2019), the court found allegations that the company's CEO "expressed confidence in Harman's revenue growth overall" were sufficient to plead the CEO and directors did not really believe higher management projections "contained greater downside risk than upside potential." *Id*. at 86-87. Similar to here, in *Baum* the company's financial advisors "presented a DCF analysis" predicated on "a separate set of projections that were based on the [higher] Management Projections, but downwardly moderated predicted growth by 25%." *Id*. at 76. The court rejected defendants' argument that the CEO's comments were made in conjunction with a "distinct analysis" separate from the projections at issue, reiterating that the CEO's comments reflected his "confidence in [the company's] revenue growth *overall*[.]" *Id*. at 87 (citing CEO's statement that "[l]onger term, we are confident that we will see accelerated revenue expansion from our automotive backlog. . . ."). Here, Spangler conveyed similar confidence that management's strategy would "drive profitable and sustainable comp sales growth in both the short and the long-term." ¶ 31; ¶ 34 ("We continue to believe that we have the right initiatives in place to drive long-term success").

In sum, Plaintiff points to facts similar to those that the courts in *Envision*, *Hot Topic*, and *Baum* found sufficient to allege that officers and directors did not believe in certain projections or knew that statements regarding projections were false. And Plaintiff's claims are even stronger here, because the projections they are predicated on are *inconsistent with the projections that Defendants developed and gave to North Point as their best estimates*.

### 2.    *Defendants rely upon distinguishable cases*

Defendants contend that because projections "relate to future circumstances that cannot be fully and accurately known when they are made," the notion that there may be only one reasonable case of projections "has no basis in logic or reality." MTD 8. As numerous opinions (and common sense) make clear, there is nothing illogical about the proposition that projections predicated on unreasonable assumptions or inconsistent with a company's financial trends are

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

15

material misrepresentations of a company's value and prospects. *Supra* § I.A.1. Here, Plaintiff has sufficiently alleged the Base Case Projections were subjectively and objectively false, which means they are actionable.

Defendants cite several distinguishable cases. First, their reliance on *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124 (N.D. Cal. 2006) is misplaced. MTD 9, 15, 22. There, minority shareholders of Napa Community Bank ("NCB") formed a "minority shareholders committee" ("MSC") that "obtained its own fairness opinions" from two banks (Findley Group and Hoefer & Arnett), which indicated the fair market value of their shares was greater than the consideration that had been deemed fair by the financial advisors retained by the acquiring entity, Capitol Bancorp, Ltd. (JMP Financial and Howe Barnes Investments, Inc.). *Id*. at 1129. As the Ninth Circuit explained in affirming the dismissal of the plaintiffs' claim that "Capitol's registration statement misled the NCB minority shareholders by incorporating two fairness opinions (by JMP and Howe Barnes)[,]" the claim failed because "[a]lthough the complaint alleges that the  MSC's competing [] fairness opinion was circulated to members of Capitol, and thus that Capitol should have known that JMP's opinion was unreliable, *nothing in the complaint indicates that anyone at Capitol actually saw or assessed the [competing] fairness report*." *Rubke*, 551 F.3d at 1162. Conversely, there is no dispute that Spangler knew of the "competing" Management Case that cut against the fairness of the Merger and the financial data supporting it—he oversaw the preparation of the Management Case and was intricately familiar with the Company's financial performance and prospects.

Furthermore, the quote from the *Rubke* district court opinion that Defendants rely upon is taken out of its necessary context. MTD 9. The quoted sentence reads: "Moreover, the fact that the MSC fairness opinions differed from Capitol's fairness opinions does not demonstrate that Capitol's fairness opinions were objectively false. There can be more than one appropriate price." *Rubke*, 460 F. Supp. 2d at 1146. In other words, the district court was discussing two different valuations by different financial advisors, *not a situation where a banker disregarded*

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

16

*management's projections. **And while it is true that "there can be more than one appropriate price[,]" or case of projections,** MTD 9, **it does not follow that there is always more than one.** The Supreme Court recognized as much in* Virginia Bankshares*, where it explained that "facts about the Bank's assets, and about actual and potential levels of operation," could be used to prove that a $42 merger price was objectively unfair. 501 U.S. at 1094. The relevant inquiry is whether the alternative projections were predicated on unreasonable assumptions or inconsistent the company's actual and potential finances. *Supra* § I.A.1. The Base Case Projections were.

Defendants also rely on a quote from *In re 3Com S'holders Litig.*, No. 5067-CC, 2009 Del. Ch. LEXIS 215 (Del. Ch. Dec. 18, 2009) without explaining the necessary context. MTD 8-9. The plaintiff there presented an omission claim—he wanted explanation regarding why a second set of projections called the "Revised *Management* Plan" had been created by management (*id*. at *16); unlike here, the *3Com* plaintiff did not allege that banker-created projections were false or misleading because they disregarded management's best estimate assumptions. And regardless of whether it is "common for *companies* to have multiple sets of projections based on different assumptions about what will transpire going forward[,]" *id*. at *17, **Papa Murphy's did not**. While Defendants assert it is "common for a company's *management* to prepare multiple sets of projections," MTD 8, they ignore that Spangler and his management team did not; ***Spangler and his team created a single case of projections, indicating they were particularly confident in their numbers, to the point where they did not deem it prudent to create another case***. Thus, the quote Defendants cherry-picked from *3Com* (MTD 8) does not strengthen their argument. Rather, the pertinent Delaware cases are the ones referenced above, which have consistently conveyed "healthy skepticism for" expert-created projections and valuations "that disregard contemporaneous management projections." *Cede & Co.*, 2004 Del. Ch. LEXIS 12, at *7. Instead of taking heed, Spangler authorized the dissemination of the unreasonable Base Case Projections.[9]

---

[9]   Furthermore, as Defendants' own case indicates, Delaware law neither requires nor condones the disclosure of

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

17

Defendants' reliance on *In re Ocera Therapeutics Sec. Litig.*, No. 17-cv-06687-RS, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16, 2018) is also misplaced. There, the projections that were allegedly unreasonable (referred to as the November Projections) were "*prepared by the Company's management*" (id. at *8)—*not by the company's financial advisor*. As noted above, this is a significant difference: courts have consistently extolled the reliability (and thus materiality) of management-prepared projections to shareholders, while expressing deep skepticism about banker-prepared projections that ignore management's numbers. Indeed, the fact that the Base Case was meaningfully lower than the projections prepared by Spangler and his management team (the people with the best insight regarding the Company's future), and was prepared by a banker solely to generate a fairness opinion (and thereby collect its $3.3 million fee), is highly probative that the Base Case was not actually believed in by Spangler. ¶ 11.

Defendants' reliance on *Golub v. Gigamon Inc.*, No. 17-cv-06653-WHO, 2019 U.S. Dist. LEXIS 149898 (N.D. Cal. Sep. 3, 2019) is similarly misplaced. MTD 14. First, like *Ocera*, in *Golub* the plaintiff alleged that a case of projections "which *management stated* that it believed reflected the most likely standalone financial forecast of Gigamon's business" were nevertheless not actually believed in by the company's management and directors. 2019 U.S. Dist. LEXIS 149898, at *7-8. Conversely, here Plaintiff alleges that a case of banker-prepared projections that were **at odds with the CEO's best estimates of the company's' future** were not genuinely believed in by the company's CEO. That is more than a plausible allegation. Furthermore, the claim in *Golub* was based upon the announcement of positive financial results *months after* the proxy statement was issued, which the court deemed tantamount to alleging fraud by hindsight. *Id*. at *9-10. Here, by contrast, the statements by Spangler and Rupp that are inconsistent with there being any legitimate basis to reduce the Management Case were made during the period *preceding* the filing of the Recommendation Statement. ¶¶ 30-36. This was the exact basis on

---

unreliable projections to shareholders. *See In re CheckFree Corp. S'holders Litig.*, No. 3193-CC, 2007 Del. Ch. LEXIS 148, at *11 (Del. Ch. Nov. 1, 2007) (denying injunction where company declined to include unreliable projections which "may, in fact, be misleading.").

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

18

which Judge Orrick distinguished *Golub* from *Envision*. As Judge Orrick explained in *Golub*: "Further, although the plaintiffs in *Envision* also brought a Section 14(a) claim based on a proxy that used the lower of two projections prepared by management, like *Azar*, this was done after a favorable quarter. As the magistrate judge observed, there was no meaningful change during the time period between the preparation of the two projections. That is not the case here. For that reason, *Envision*, like *Azar*, is unhelpful to Golub." 2019 U.S. Dist. LEXIS 149898, at *31 n.5. In other words, this case is much more analogous to *Envision* than *Golub*.

In sum, Plaintiff sufficiently pled that the Base Case was both objectively and subjectively false. The Base Case Projections—which were meaningfully lower than the only reasonably prepared projections (the Management Case)—misled Papa Murphy's shareholders "in estimating the worth of [their] stock." *Marx*, 507 F.2d at 489. While Defendants contend there "was nothing materially false or misleading in the Recommendation Statement" (and that they were not negligent) because it provided all projections and valuations and stockholders were "free to discount, or reject" the information, MTD 20, 23, their argument misses the point: § 14(e) prohibits "any person" from making "any untrue statement of a material fact…in connection with any tender offer[.]" 15 U.S.C. § 78n(e). The statute does not condone a regime where shareholders are provided with both truthful and untruthful information and then must determine what to "discount or reject" for themselves. *See NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*, No. 3:16-cv-01756-YY, 2017 U.S. Dist. LEXIS 165139, at *28-29 (D. Or. Oct. 3, 2017) (rejecting argument that a proxy "could not have misled the shareholders because defendants disclosed both [] Forecasts and all the material information necessary for them to make their own decision about whether to approve the Acquisition[,]" because "statements of reason and opinion are actionable when objective and subjective falsity are adequately pled").

**B. Plaintiff Sufficiently Pled The Three Additional Challenged Statements Were Materially False And Misleading**

As Defendants correctly note, "the alleged false or misleading nature of all four of the[]

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

19

[challenged] statements is dependent on the alleged falsity of the base case projections." MTD 7. And, because Plaintiff sufficiently pled his claim predicated on the Base Case Projections, his claims predicated on the three related statements were also sufficiently pled.

*First*, Plaintiff alleges that the summary of North Point's DCF Analysis and the resulting implied equity value per share range was a misleading statement, because the range was calculated utilizing the unreasonably lowered Base Case and therefore misrepresented the value of shareholders' shares. ¶ 41(c), 49. This claim is predicated on the fact that Spangler elected to include in the Recommendation Statement a summary of a valuation analysis—the DCF Analysis—that he knew presented a misleadingly low value because it was calculated utilizing projections (the Base Case) that he knew were unreasonably low. *Supra* § I.A.1. Defendants were not required to include a summary of every valuation analysis North Point conducted in the Recommendation Statement; indeed, the Recommendation Statement notes that "[t]he summary set forth below does not purport to be a complete description of the financial analyses performed or factors considered by, or underlying the opinion of, North Point[.]" Recommendation Statement 31. And § 14(e) prohibited Defendants from including a summary of a valuation analysis that was materially misleading because it was prepared utilizing unsound projections.

Furthermore, the fact that the DCF Analysis summary may accurately reflect what North Point did to arrive at its calculation does not render it inactionable. "[L]iteral truth is not the standard for determining whether statements in a prospectus are misleading." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). "Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *Id*. Here, the DCF Analysis summary misled shareholders, because the valuation range contained therein was premised upon unsound projections and was thus misleadingly low. ¶ 41(c). Courts have found similar claims premised upon allegedly misleading valuation ranges to be actionable. *See Hayes v. Crown Central Petroleum Corp.*, 78 F. App'x 857, 863-64 (4th Cir. 2003) (plaintiff alleged that "purported range of share values in the proxy statement was inaccurate" and should

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

20

have been higher); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 872-73 (S.D. Ohio 2013) (finding claim premised upon misleading valuation analyses actionable where plaintiff alleged that the advisor applied low multiples in order to lower the share price ranges).

***Second***, Plaintiff challenges the statements identifying North Point's fairness opinion as a "material factor" that supported Spangler and the Board's determination that the terms of the Merger were "fair to, advisable and in the best interests of, the Company and its stockholders" and its decision "to recommend that the Company's stockholders accept the Offer and tender their Shares in the Offer." ¶ 41(d). Plaintiff alleges these statements were misleading because "by citing the unreasonable fairness opinion as a reason that supported the recommendation of the Merger, Spangler created an aura of reasonableness with respect to the fairness opinion that he knew it did not deserve because it was predicated on a case of projections he himself did not believe were the best estimates of the Company's financial future." ¶ 50. Motions to dismiss claims predicated on a similar statement were recently denied in *Envision* and *Laborers' Local #231 Pension Fund v. Cowan*, No. 17-478, 2018 U.S. Dist. LEXIS 110545 (D. Del. July 2, 2018).

In *Envision*, the plaintiff challenged a statement citing a banker's fairness opinion as a "positive factor" supporting the merger. 2019 U.S. Dist. LEXIS 128237, at *19-21. The plaintiff alleged the statement was materially misleading because "the fairness opinions were based on the fundamentally flawed Sensitivity Case Projections[.]" *Id*. The court explained:

> I recommend that the court deny defendants' motion to dismiss on this issue. The Proxy states that the Board considered eight positive factors supporting the Board's decision on the Merger, one of which was the fairness opinions of the Financial Advisors. The amended complaint alleges that it was materially false or misleading for defendants to identify these fairness opinions as a "positive factor" because defendants knew the fairness opinions were based on the fundamentally flawed Sensitivity Case Projections and did not accurately project Envision's future financial performance. Because the Proxy represented that defendants placed confidence in the Financial Advisors' fairness opinions, the amended complaint alleges that a reasonable investor could have mistakenly assumed that defendants believed in the accuracy of the underlying information, including the Sensitivity Case Projections, on which the fairness opinions were based. Taking these allegations as true, plaintiff has adequately stated a claim for relief[.]

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Id.* (internal citations omitted); *see also Cowan*, 2018 U.S. Dist. LEXIS 110545, at \*29-30 (reaching same conclusion regarding similar statement). The same reasoning applies here.

***Third***, Plaintiff challenges the statements that Spangler and the other members of the board believed that the Merger was "fair to" stockholders, which were materially false and misleading because, as evinced by the circumstantial facts discussed above, Spangler did not actually hold the stated belief and knew the Merger Consideration was completely below the fair valuation range that results from the Management Case he believed to be the best estimate of the Company's future prospects. ¶¶ 41(b), 47. If North Point had utilized solely the Management Case that Spangler believed was the reasonable best estimate of the Company's future financial performance, the resulting DCF value ranges would have *completely exceeded* the Merger Consideration, indicating that the Merger was *not* actually fair to the Company's stockholders. ¶ 47; *see Va. Bankshares*, 501 U.S. at 1094 (explaining statement that $42 was a "fair" price could be challenged by showing it was not fair "when assessed in accordance with recognized methods of valuation."). And as the experienced CEO of a publicly traded company who was routinely involved in assessing and presenting financial data, and who had received presentations from and held discussions with a financial advisor, Spangler knew that the DCF Analysis is the single best measure of fair value. ¶ 12. These facts plausibly indicate that, contrary to the challenged statement, Spangler did not genuinely believe the Merger was fair to stockholders. "Although defendants also cite a number of factors in support of their contrary position that the Merger consideration was fair, such factual disputes must be resolved in plaintiff's favor on a motion to dismiss." *Envision*, 2019 U.S. Dist. LEXIS 128237, at \*19.

In sum, Plaintiff sufficiently pled that each of the four categories of challenged statements were materially false or misleading.

## II.   PLAINTIFF SUFFICIENTLY PLED NEGLIGENCE

Plaintiff's allegations of negligence are no longer focused on the entire board "as a group." R&R 9. Rather, the SAC's allegations are directed at Spangler. As Papa Murphy's CEO and the

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

person responsible for the creation of the Management Case, Spangler knew the Base Case was predicated on unreasonably low assumptions that meaningfully differed from his own best estimates. He nevertheless allowed the materially false and misleading Base Case to be disseminated to shareholders. Accordingly, there is a strong inference that Spangler failed "to come up to the specified standard of care[,]" *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (Posner, J.), which required him to ensure the Recommendation Statement did not contain materially false or misleading statements.

Defendants begin with the absurd argument that—in expressly holding negligence rather than scienter is sufficient to state a claim under § 14(e)—the Ninth Circuit in *Varjabedian* simultaneously adopted a "heightened negligence" standard that is identical to the standard for pleading scienter. MTD 21. It is obviously illogical to contend "that the Ninth Circuit would [] require a plaintiff to show negligence by pleading that a defendant acted with scienter." R&R 10. And this Court should not attach any cryptic meaning to the dicta from *Varjabedian* upon which Defendants' absurd argument is based. "The Ninth Circuit's passing reference [in *Varjabedian*] to *Zucco Partners* was plainly dicta[,]" and "did not modify the Ninth Circuit's unequivocal holding that Section 14(e) requires a showing of only negligence, not scienter. Accordingly, the 'extreme departure' standard does not apply." *Varjabedian v. Emulex Corp.*, No. SACV 15-00554-CJC(JCGx), 2020 U.S. Dist. LEXIS 40037, at *19, *30 n.9 (C.D. Cal. Feb. 25, 2020).

Defendants also contend that the "strong inference" requirement of 15 U.S.C. § 78u-4(b)(2) applies. MTD 6, 20-21. However, that provision only applies in "private action[s]…in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind." 15 U.S.C. § 78u-4(b)(2). As the Ninth Circuit has explained, negligence "refer[s] to and categorize[s] the actor's conduct rather than his or her state of mind," and state of mind is "not at issue" in a claim for negligence. *Fargo v. City of San Juan Bautista*, 857 F.2d 638, 642 (9th Cir. 1988). In other words, the Ninth Circuit in *Fargo* made a "clear pronouncement that negligence is *not* a state of mind." *Varjabedian*, 2020 U.S. Dist. LEXIS 40037, at *29; *see*

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** <sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

23

*also Lane v. Page*, 581 F. Supp. 2d 1094, 1116 (D.N.M. 2008) (analyzing applicability of PSLRA and explaining "negligence is conduct, and not a state of mind.").

While *Fargo* "contemplated whether negligence was a state of mind under a 42 U.S.C. § 1983 action, not whether negligence was a state of mind under the PSLRA[,]" R&R 13, "there is nothing in the PSLRA or the [relevant] authorities…that indicates the statute itself meant to define 'state of mind' in some unique way." *Lane*, 581 F. Supp. 2d at 1115. Under the plain meaning of the words Congress used in 15 U.S.C. § 78u-4(b)(2), along with the text of the subsection (b) heading which states the subsection sets forth "requirements for securities *fraud* actions," § 78u-4(b)(2) does not apply to negligence-based claims. *Beck*, 559 F.3d at 682; *Fresno Cty. Emples. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 559 (S.D.N.Y. 2017) ("The better reasoned cases have followed" *Beck*). This conclusion is buttered by *Varjabedian*, where the Ninth Circuit explained that "[t]he legislative history suggests that the Williams Act places more emphasis on the quality of information shareholders receive in a tender offer than on the state of mind harbored by those issuing a tender offer." 888 F.3d at 408.

Regardless, there is a "strong inference" that a CEO who allows a recommendation statement to contain projections he knows are unreliable because they are predicated on unreasonable assumptions and significantly lower than the best estimates of the company's prospects has failed "to come up to the specified standard of care[,]" *Beck*, 559 F.3d at 682, which requires CEOs to ensure that communications with shareholders that they authorize or sign do not contain materially false or misleading information. 15 U.S.C. § 78n(e); *Howard*, 228 F.3d at 1061. The above-referenced facts Plaintiff points to in support of his allegations of subjective and objective falsity made "it obvious to Mr. Spangler that North Point's projections" were unreasonable, MTD 21,[10] yet he allowed them to be disseminated to shareholders. Because Plaintiff sufficiently pled subjective and objective falsity, he has also sufficiently pled a "strong

---

[10] Defendants' assertion that "[t]here is nothing in the [SAC] from which to infer that there was any disagreement between Mr. Spangler and North Point" is perplexing. Spangler's and North Point's respective projections differed by millions of dollars, up to 18.7%. ¶ 4.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** <sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

inference" of negligence. A "deliberate decision" to disclose misleading information "demonstrates a culpable state of mind far in excess of negligence." *Wilson*, 855 F.2d at 995; *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 324 (S.D.N.Y. 2010) ("If the directors were aware that the Joint Proxy was materially deficient (as is alleged), or if they should have been aware of deficiencies but took no steps to remedy or inquire about them (as is also alleged), the negligence standard of Section 14(a) would be satisfied.").

"'A determination of negligence is generally recognized as a mixed question of law and fact.'" *Miller v. United States*, 587 F.2d 991, 994 (9th Cir.1978). The appropriate standard of conduct required of the defendant is a question of law. *Id.*[11] And it is well-settled that corporate fiduciaries have a duty to ensure that communications seeking shareholder approval of a transaction do not contain material misstatements. *E.g.*, *Howard*, 228 F.3d at 1061; *O'Reilly*, 745 A.2d at 916. An officer or director breaches their duty of care if they make "[a] good faith erroneous judgment as to the proper scope or content of required disclosure[.]" *Zirn v. VLI Corp.*, 681 A.2d 1050, 1062 (Del. 1996). Accordingly, numerous courts have correctly held that when shareholder communications contain a materially false or misleading statement or omission, the officers and directors who approved the document were negligent as a matter of law. *Wilson*, 855 F.2d at 995; *Envision*, 2019 U.S. Dist. LEXIS 128237, at *24-25; *Brown*, 2010 U.S. Dist. LEXIS 60863, at *81; *In re Wells Real Estate Inv. Tr., Inc.*, 2010 U.S. Dist. LEXIS 143057, at *18 (N.D. Ga. Aug. 2, 2010); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 989 (E.D. Mo. 1999); *Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 703 (M.D.N.C. 1992); *Fradkin v. Ernst*, 571 F. Supp. 829, 84 (N.D. Ohio 1983); *Berman v. Thomson*, 403 F. Supp. 695, 699 (N.D. Ill. 1975).

And, even if the officer is not negligent as a matter of law, these cases indicate that there is at least a "strong inference" that a CEO who signed a shareholder communication containing a materially false statement was negligent. *See Azar*, 2017 U.S. Dist. LEXIS 39493, at *28

---

[11]  Furthermore, "it is well-settled that proof of adherence to an industry practice or custom is not dispositive of the issue of negligence, because what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

25

("***materiality is related to negligence***…the Amended Complaint here sufficiently alleges that the Proxy was materially misleading because it omitted the September Projections and also alleges that Defendants prepared, reviewed, or disseminated the Proxy. It sufficiently alleges, with particularly, a strong inference of negligence."); *Hot Topic*, 2014 U.S. Dist. LEXIS 180513, at *20 (finding similar facts "sufficient to give rise to the 'strong inference' that the…Defendants knew that the [higher] Projections were appropriate and nonetheless approved the use of alternative projections in the Proxy Statement and in the Fairness Opinion.").

Defendants also cite purported facts regarding how they *conducted the strategic review process* as evidence that Spangler was not negligent. MTD 22-23.[12] However, as the above-cited cases indicate, the relevant inquiry is whether Spangler was negligent *in determining the contents of the Recommendation Statement*, and his purported conduct in conducting the sales process is irrelevant to the negligence issue. Section 14(e) is "a disclosure provision[,]" MTD 23, and it prohibits untrue statements in tender offer documents. The basis for liability is not predicated on how Defendants conducted the sales process.

Lastly, as noted above, Defendants' assertion that they were not negligent because they disclosed the Base Case Projections and shareholders "were free to discount, or reject" them (MTD 23) evinces a fundamental misunderstanding of both the purpose of § 14(e) and their fiduciary obligations, which prohibited them from disclosing materially false or misleading information and forcing shareholders to decide what to make of it all. *Supra* § I.A.2.

In sum, Plaintiff sufficiently pled Spangler (and thus Papa Murphy's) were negligent.[13]

---

[12] For example, Defendants argue the fact they "obtained a fairness opinion itself contradicts and undermines Plaintiff's negligence allegation." MTD 23. But Delaware law does not require directors to get fairness opinions, although "obtaining a fairness opinion has become like the practice of buying indulgences prior to the Protestant Reformation, but for sins that one is about to commit instead of for past sins. The practice is very widespread but is not entirely legitimate." Jonathan R. Macey, *The Regulator Effect In Financial Regulation*, 98 CORNELL L. REV. 591, 618 (March, 2013).

[13] Defendants do not (and cannot) dispute that Spangler's knowledge and conduct is imputed to Papa Murphy's. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471,476 (9th Cir. 2015).

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

26

## III.   PLAINTIFF SUFFICIENTLY PLED LOSS CAUSATION

In its R&R, the Court found that Plaintiff sufficiently pled loss causation. R&R 18-20. Defendants offer no persuasive arguments as to why the Court should now deviate from this conclusion. After repeating the same arguments the Court previously rejected, MTD 24-25, Defendants offer "four additional" meritless arguments. MTD 26.

Defendants' argument that Plaintiff cannot establish causation because "a majority of the Company's stockholders had committed to accept MTY's tender offer before the Recommendation Statement was issued" misses the mark for several reasons. MTD 26. For starters, it is premised on factual assertions in the Recommendation Statement that cannot be accepted as true on a motion to dismiss.[14] Second, some percentage of the shares that entered into the Support Agreement are held by putative class members, and Defendants have not offered factual evidence to the contrary (nor could they on a motion to dismiss). And the class members that entered into the Support Agreement could have sought to withdraw their shares or terminate the Support Agreement before the Tender Offer expiration if they had not been misled by the Recommendation Statement. Simply put, this argument raises complex factual issues that cannot be resolved in Defendants' favor on a motion to dismiss.

Additionally, even if minority shareholders cannot stop a merger, they may recover damages predicated on the loss of "state remedies" such as appraisal rights. *Wilson v. Great Am. Indus.*, 979 F.2d 924, 931 (2d Cir. 1992) ("The injury sustained by a minority shareholder powerless to affect the outcome of the merger vote is not the merger but the loss of his appraisal right. The deceptive proxy plainly constitutes an 'essential link' in accomplishing the forfeiture

---

[14]  Specifically, that the "Supporting Stockholders" purportedly "beneficially owned, as of April 10, 2019, 8,868,933 Shares, which represent approximately 52% of the outstanding Shares as of April 10, 2019." Recommendation Statement at 4. This assertion cannot be accepted as true on a motion to dismiss, because it cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[,]" Fed. R. Evid. 201(b)(1), and is not properly accepted as true under the incorporation by reference doctrine. *Khoja*, 899 F.3d at 1003, 1014. Furthermore, even if it could be accepted as true, it says nothing with respect to whether such shares *continued to be held* by the Supporting Stockholders at the expiration date (May 22, 2019). If Supporting Stockholders' shares fell below 52% at some time prior to the expiration, than additional shares were needed to proceed with the Merger.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

27

of this state right."). Plaintiff and the putative class had appraisal rights under Delaware law, and the SAC alleges that "[t]he materially misleading Recommendation Statement also prompted Papa Murphy's shareholders to accept the unfair Merger Consideration…rather than recoup a greater value through appraisal remedies[.]" ¶ 59. Thus, even if Defendants' argument was both properly considered on a motion to dismiss (it isn't) and proved to be true (*i.e.*, that Plaintiff and the putative class were powerless to stop the Merger), it would not prevent Plaintiff and the class from establishing causation and damages. And while Defendants contend that the false and misleading projections "could not have impacted" shareholders' decision regarding whether to seek appraisal, MTD 27, that assertion is baseless. Projections "constitute a prime factor in estimating the worth of [] stock," *Marx*, 507 F.2d at 489, and unreasonably low projections are obviously a plausible proximate cause of a shareholder's decision to forego appraisal. R&R 20.

Defendants' argument that Plaintiff failed to allege "facts plausibly suggesting that a transaction more beneficial than MTY's offer was available…or that the Company's shares would be more valuable if the merger did not occur" also fails. MTD 26. The pertinent question is whether "the allegations that Plaintiffs set forth suffice to make plausible the claim that the Company's stock was worth more than [the merger consideration] and, therefore, that shareholders in receiving inadequate compensation suffered economic loss." *Azar*, 2017 U.S. Dist. LEXIS 39493, at *33 (citing *Mills*, 396 U.S. at 389);[15] *Hot Topic*, 2014 U.S. Dist. LEXIS 180513, at *28; *Smith*, 969 F. Supp. 2d at 868; *Karp v. First Conn. Bancorp, Inc.*, No. RDB-18-2496, 2019 U.S. Dist. LEXIS 162819, at *13-14 (D. Md. Sep. 24, 2019). As the Court previously found, the SAC meets this standard by pointing to the fact "that another company actually

---

[15] In *Mills*, the Supreme Court explained that damages in a § 14 action may "be predicated on a determination of the fairness of the terms of the merger at the time it was approved." 396 U.S. at 389. Accordingly, numerous courts have held that economic loss in a § 14 action may be "premised on an intrinsic valuation of the company as it existed at the time of the merger." *Brown*, 2010 U.S. Dist. LEXIS 60863, at *84; *Mendell v. Greenberg*, 938 F.2d 1528, 1529 (2d Cir. 1991) (holding that trial in § 14(a) case should be bifurcated to "try first the issue of fair value," which requires plaintiff to establish that "the value of the company's stock when assessed in accordance with recognized methods of valuation, was higher than the 'fair' price stated by the directors."). Furthermore, in *Plaine* the Ninth Circuit explained that "[t]he determination of actual damages in the federal [§ 14(e)] claim may well produce a different price" from the one deemed "fair". 797 F.2d at 722.

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

28

assessed the value of Papa Murphy's Holdings' shares at a higher value" at the time of the Merger, and that the Company was worth more than the Merger Consideration based upon the Management Case. R&R 19-20; *see also Envision*, 2019 U.S. Dist. LEXIS 128237, at *24 (citing fact that allegedly reliable projections supported a higher valuation). Indeed, the SAC alleges that the Company's shares were worth $7.09 to $13.15 based upon the Management Case. ¶ 47.

Defendants' argument that Plaintiff's loss causation allegations are insufficient because only Spangler and Papa Murphy's are named as defendants but "the Company could not issue the Recommendation Statement without the concurrence of at least a majority if its ten directors" is also meritless. MTD 26-27. First, it evinces a fundamental misunderstanding of the loss causation requirement. "'Because loss causation is simply a variant of *proximate cause*, the ultimate issue is whether the defendant's *misstatement*, as opposed to some other fact, foreseeably caused the plaintiff's loss.'" *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). Here, there can be no reasonable dispute that Spangler and the materially false and misleading Recommendation Statement he was the sole signatory of were plausibly a proximate cause of Plaintiff's loss. R&R 20; *see also Inland Power & Light Co. v. Grieger*, 91 F.2d 811, 816 (9th Cir. 1937) ("'[I]t may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury.'"). Furthermore, Defendants' argument is predicated upon an erroneous legal assertion—8 Del. C. § 141(b) *does not say* that a corporation or CEO may not issue a communication without the concurrence of a majority of directors. And the law did not require anyone other than Spangler to sign the Recommendation Statement, so it is beyond reasonable dispute that he and the materially false statements he allowed to be disseminated were a proximate cause of Plaintiff's loss.

In sum, "multiple courts have also found that where, as here, a plaintiff asserts that shareholders were misled into approving an acquisition that undervalued the company, loss causation is adequately alleged." *Baum*, 408 F. Supp. 3d at 92 (loss causation sufficiently pled

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

29

where plaintiff alleged "[t]he lower price paid to shareholders… is a result of…false statements that justified the production of a weaker set of projections, which, in turn, were relied upon by a potentially conflicted adviser in producing a fairness statement that endorsed the $112 price."). As before, Defendants' loss causation arguments are unavailing and should be rejected.

## IV.    SHAREHOLDERS MAY BRING SECTION 14(e) NEGLIGENCE CLAIMS

The Court previously rejected Defendants' argument that only the SEC may bring negligence-based claims under § 14(e), R&R 21-22, and Defendants offer no persuasive reason for changing course. The crux of Defendants' argument—that the Ninth Circuit's *Varjabedian* opinion precludes private shareholder actions—is illogical. "The Ninth Circuit would not have instructed the Court to apply its newly articulated negligence standard unless it found it applicable to private actions." *Varjabedian*, 2020 U.S. Dist. LEXIS 40037, at *17.

Similarly, in *Schreiber v. Burlington N., Inc.*, 472 U.S. 1 (1985), the Supreme Court construed the elements of a private §14(e) claim, without even hinting that the claim's existence was debatable. *Id*. at 2, 4, 12-13. It is inconceivable that the Supreme Court would have announced the elements of the claim without flagging that the claim itself might not exist. Simply put, Defendants' argument is foreclosed by binding precedent, and must be rejected.

## V.    PLAINTIFF'S SECTION 20(a) CLAIM MAY NOT BE DISMISSED

Defendants argue that Plaintiff's § 20(a) claim must be dismissed solely because his predicate § 14(e) claim fails. MTD 30. Because the § 14(e) claim is sufficiently pled, Plaintiff's § 20(a) claim must also be allowed to proceed.

## CONCLUSION

Defendants' MTD should be denied. But if the Court is inclined to grant it, Plaintiff requests leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("[T]he drafting of a cognizable complaint can be a matter of trial and error.").

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

30

DATED:  October 8, 2020

**LOCAL COUNSEL:**

**BRESKIN JOHNSON TOWNSEND, PLLC**

*s/ Roger Townsend*
Roger M. Townsend, WSBA No. 25525
1000 Second Avenue, Suite 3670
Seattle, Washington  98104
Tel: 206-652-8660
Fax: 206-652-8290
rtownsend@bjtlegal.com

**OF COUNSEL:**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Putative Class*

LEAD PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

31