THE HONORABLE BENJAMIN H. SETTLE

(On Reference to The Honorable J. Richard Creatura)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| EVAN BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PAPA MURPHY'S HOLDINGS INC., and WELDON SPANGLER,<br><br>Defendants. | CASE NO. 3:19-cv-05514-BHS-JRC<br><br>LEAD PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY |

Pursuant to LCR 7(n), Lead Plaintiff provides the Court with an order issued yesterday by the Northern District of California, *Saisravan Bharadwaj Karri v. Oclaro, Inc.*, No. 18-cv-03435-JD, 2020 U.S. Dist. LEXIS 187317 (N.D. Cal. Oct. 8, 2020) (attached hereto). *Oclaro* denied a motion to dismiss a Section 14(a) claim predicated on allegedly false and misleading fairness opinion valuation ranges derived from a case of downward adjusted financial projections that were not provided to the buyer. *Id.* at *4, *13, *16-18. The court found that the plaintiff sufficiently pled the banker's valuation ranges based upon the lowered projections[1] were objectively and subjectively false by pointing to, *inter alia*, that the lowering of the projections

---

[1] While the *Oclaro* Court allowed the claim predicated on the valuation ranges to go forward, it found that plaintiff's claim predicated on the projections themselves was foreclosed by the PSLRA safe harbor, which, as this Court previously noted, does not apply here. ECF No. 34 at 21 (citing 15 U.S.C. § 78u-5(b)(2)(C)).

LEAD PLAINTIFF'S NOTICE OF
SUPPLEMENTAL AUTHORITY
Case No. 19-cv-5514 BHS-JRC

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

was inconsistent with the company's positive outlook and "rosy statements" made by the company's CEO. *Id*. at \*15. Given that Lead Plaintiff makes similar allegations here with respect to the Base Case and the resulting implied value ranges that North Point derived from the Base Case, Plaintiff submits *Oclaro* is relevant authority that the Court should consider in conjunction with ruling on Defendants' motion to dismiss.

DATED:  October 9, 2020                        **LOCAL COUNSEL:**

                                               **BRESKIN JOHNSON TOWNSEND, PLLC**

                                               *s/ Roger Townsend*
                                               Roger M. Townsend, WSBA No. 25525
                                               1000 Second Avenue, Suite 3670
                                               Seattle, Washington  98104
                                               Tel: 206-652-8660
                                               Fax: 206-652-8290
                                               rtownsend@bjtlegal.com

                                               **OF COUNSEL:**

                                               **MONTEVERDE & ASSOCIATES PC**
                                               Juan E. Monteverde
                                               Miles D. Schreiner
                                               The Empire State Building
                                               350 Fifth Avenue, Suite 4405
                                               New York, New York 10118
                                               Tel:  212-971-1341
                                               Fax:  212-202-7880
                                               jmonteverde@monteverdelaw.com
                                               mschreiner@monteverdelaw.com

                                               *Counsel for Lead Plaintiff and Lead Counsel for the Putative Class*

LEAD PLAINTIFF'S NOTICE OF
SUPPLEMENTAL AUTHORITY
Case No. 19-cv-5514 BHS-JRC

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2

# Saisravan Bharadwaj Karri v. Oclaro, Inc.

United States District Court for the Northern District of California

October 8, 2020, Decided; October 8, 2020, Filed

Case No. 18-cv-03435-JD

**Reporter**
2020 U.S. Dist. LEXIS 187317 *

SAISRAVAN BHARADWAJ KARRI, Plaintiff, v. OCLARO, INC. et al., Defendants.

**Counsel:** [*1] For SaiSravan Bharadwaj Karri, Individually and on Behalf of All Others Similarly Situated, Plaintiff: David Eldridge Bower, Monteverde & Associates PC, Culver City, CA.

For Oclaro Inc., Marissa Peterson, Edward Collins, Greg Dougherty, Kendall Cowan, Denise Haylor, Ian Small, FBI Agent Bill Smith, Joel A. Smith, III, Defendants: Robert Moss Tiefenbrun, LEAD ATTORNEY, Jones Day, Irvine, CA; Stephen D. Hibbard, LEAD ATTORNEY, Jones Day, San Francisco, CA; Travis Biffar, Thomas Whitelaw & Kolegraff, LLP, Irvine, CA.

For Prota Merger, LLC, Defendant: Luke Anthony Liss, Wilson Sonsini Goodrich and Rosati, Palo Alto, CA.

For Lumentum Holdings Inc., Defendant: David J. Berger, LEAD ATTORNEY, Wilson Sonsini Goodrich & Rosati, Professional Corporation, Palo Alto, CA; Dylan Grace Savage, LEAD ATTORNEY, Wilson Sonsini Goodrich Rosati, P.C., Palo Alto, CA; Luke Anthony Liss, Wilson Sonsini Goodrich and Rosati, Palo Alto, CA.

**Judges:** JAMES DONATO, United States District Judge.

**Opinion by:** JAMES DONATO

# Opinion

## ORDER RE MOTION TO DISMISS

Re: Dkt. No. 29

This is a securities class action against Oclaro, Inc. and its former directors and officers arising out of Oclaro's acquisition by Lumentum Holdings, Inc.[1] Plaintiff SaiSravan Karri [*2] brought suit on behalf of former public stockholders of Oclaro under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and Securities and Exchange Commission Rule 14a-9, 17 C.F.R. § 240.14a-9. Dkt. No. 20 ¶¶ 1, 9. Karri alleges in an amended complaint that Oclaro's board of directors solicited approval for the transaction through a proxy statement containing materially false or misleading statements regarding the transaction. *See id.* ¶¶ 3-7. Defendants' motion to dismiss, Dkt. No. 29, is granted and denied in part.

## BACKGROUND

As alleged in the amended complaint, Oclaro was a leading provider of components used in high-speed optical networks. Dkt. No. 20 (Amended Compl.) ¶ 28. Starting in 2016, Oclaro's strong performance consistently impressed financial analysts and commentators. *Id.* ¶¶ 30-58. On November 1, 2017, Oclaro announced its quarterly financial results, which, while strong, showed some weakness in its sales in China and produced a negative market reaction. *Id.* ¶ 61. Lumentum first expressed interest in acquiring Oclaro a week later, and Oclaro and Lumentum entered into a nondisclosure agreement in December 2017. *Id.*

---

[1] As a result of a merger with a wholly owned subsidiary of Lumentum, Oclaro no longer exists. Lumentum and its subsidiary are named as defendants in their capacity as the entities surviving the merger.

¶¶ 63-64.

By mid-December 2017, financial analysts had expressed an optimistic assessment [*3] of Oclaro's prospects. *Id.* ¶ 65. In early February 2018, Oclaro's CEO publicly touted Oclaro's strong financial performance, and discounted the impact of the disappointing aspects of the prior quarter's financial results. *Id.* ¶¶ 66-73. Specifically, Oclaro's CEO stated that the company's guidance in February 2018 remained consistent with its guidance from three months earlier. *Id.* ¶ 72. Around the same time, Oclaro's management decided to revise downward its internal financial projections for the second time in as many months, preparing what has been called the "February Projections." *Id.* Commentary in the financial community about Oclaro's prospects remained favorable. *Id.* ¶ 74.

On February 15, 2018, Lumentum submitted a non-binding written offer to acquire Oclaro at $8.35 per share of Oclaro stock, consisting of $6.60 in cash and $1.75 in Lumentum stock. *Id.* ¶ 75. According to the amended complaint, this represented a discount on both Oclaro's target price, *id.* ¶ 76, and on financial analysts' recent price targets, *id.* ¶¶ 58, 65. On February 21, 2018, the Oclaro board discussed Lumentum's offer, and instructed Oclaro's CEO to present a counteroffer of $9.90 per Oclaro share. *Id.* ¶ [*4] 76. Financial commentary continued to state that Oclaro's stock was undervalued. *Id.* ¶ 78.

Oclaro's management ultimately accepted an offer from Lumentum of $5.60 in cash and 0.636 shares of Lumentum stock for each share of Oclaro stock. *Id.* ¶ 77. Oclaro's management provided its financial advisor, Jefferies LLC, with the February Projections, which served as the basis for Jefferies' valuation analyses and fairness opinion evaluating the transaction. *Id.* Oclaro did not provide these February Projections to Lumentum. *Id.*

On March 11, 2018, Oclaro and Lumentum executed a merger agreement, which they announced the next day. *Id.* ¶¶ 80-81. After the merger agreement was signed, Oclaro continued to perform well, and in May 2018, Oclaro's CEO publicly stated that the previous quarter's financial results were at the upper end of the company's guidance, and marked the eighth consecutive quarter of double-digit operating income growth. *Id.* ¶ 82.

In June 2018, Oclaro's board of directors solicited approval of Lumentum's acquisition of Oclaro through a proxy statement. *Id.* ¶ 83. The proxy included projections from December and January, the February

Projections, and Jefferies' conclusion that the [*5] merger consideration offered by Lumentum was fair, based on the valuation figures (specifically, implied equity reference ranges) that Jefferies calculated from the February Projections prepared and provided by Oclaro's management. *Id.* ¶¶ 84, 89. The proxy highlighted Lumentum's promising prospects as a reason for approving the transaction, but omitted the forecasts that had been provided to Jefferies by Lumentum. *Id.* ¶ 85.

The amended complaint alleges that members of Oclaro's board signed off on a proxy statement that contained false or misleading statements and omissions about Oclaro's true value, as reflected by Oclaro's own price targets, *id.* ¶ 76, Oclaro's CEO's public statements on earnings calls, *id.* ¶¶ 67-73, and financial analysts' views of Oclaro's worth, *id.* ¶¶ 65, 78. Specifically, the amended complaint alleges that the proxy statement included these false or misleading statements: (1) the January and February Projections themselves, (2) representations about the preparation of the January and February Projections, and (3) valuation figures calculated from the February Projections that were used to evaluate the fairness of Lumentum's offered consideration. *Id.* ¶¶ 4, 84; [*6] *see also* Dkt. No. 33-1 at 2-3. The amended complaint also alleges that the failure to include the forecasts provided to Jefferies by Lumentum was a materially misleading omission. Dkt. No. 20 ¶¶ 5, 85; *see also* Dkt. No. 33-1 at 3.

Defendants say that the challenged statements fall within the PSLRA's safe harbor provision, 15 U.S.C. § 78u-5(c), which applies to forward-looking statements that are accompanied by meaningful cautionary language. Dkt. No. 29 at 9-13; Dkt. No. 35 at 3-8. Defendants also contend that Karri has failed to show that challenged statements of opinion are false. Dkt. No. 29 at 13-18; Dkt. No. 35 at 8-12. Finally, defendants argue that the amended complaint fails to plead that the alleged omission of the Lumentum Forecasts rendered the proxy statement misleading, or that such information was material. Dkt. No. 29 at 18-20; Dkt. No. 35 at 12.

**DISCUSSION**

**I. Legal Standards**

Well-established standards govern this motion to dismiss. To comply with the pleading requirements of

Federal Rule of Civil Procedure 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content "allows the court to [*7] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, the Court assumes that the plaintiffs' allegations are true and draws all reasonable inferences in their favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Sprewell v. Golden State Warriors*, 226 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)).

Additional requirements apply because this is a securities action. The circumstances constituting any alleged fraud must be stated with particularity under Federal Rule of Civil Procedure 9(b). *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). In addition, pursuant to the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Exchange Act Section 14(a) and SEC Rule 14a—9 prohibit the "solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement [*8] misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 449 (1976). "To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy statement itself, rather than the particular defect in the solicitation material, was an essential link in the accomplishment of the transaction.'" *N.Y.C. Employees' Retirement System v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (citation omitted), *overruled on other grounds*

*by Lacy v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc). Further, "a Section 14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability." *Desaigoudar*, 223 F.3d at 1022. A Section 14(a), Rule 14a-9 claim for a false or misleading proxy statement may not require anything further than negligence. *Cf. Varjabedian v. Emulex Corp.*, 888 F.3d 399, 408 (9th Cir. 2018) ("[B]ecause the text of the first clause of Section 14(e) is devoid of any suggestion that scienter is required, we conclude that the first clause of Section 14(e) requires a showing of only negligence, not scienter."); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1211 (N.D. Cal. 2007) (required state of mind for claim under Section 14(a) and Rule 14a-9 is negligence).

The PSLRA includes a safe harbor for "forward-looking statements." 15 U.S.C. § 78u-5. Any statement that falls within the statutory definition, [*9] *id.* § 78u-5(i)(1), cannot serve as the basis for liability if either (a) it is "identified as a forward-looking statement" and accompanied by "meaningful cautionary language"; or (b) the plaintiff fails to prove that the defendant made the forward-looking statement "with actual knowledge that the statement was false or misleading." *Id.* § 78u-5(c)(1).

Defendants do not contest the adequacy of the causation and essential link allegations for a Section 14(a) claim, and challenge materiality only with respect to the alleged omission of the Lumentum Forecasts from the proxy statement. Consequently, the Court focuses on whether the statements challenged by Karri are covered by the PSLRA's safe harbor, and, if not, whether he has adequately pled that the proxy statement included false or misleading statements or that it omitted material information rendering the statement misleading.

## II. Judicial Notice

Defendants request consideration of several documents as incorporated by reference in the amended complaint, or subject to judicial notice. Dkt. No. 29-1. All of these documents were publicly filed with the SEC. *Id.* at 1; Dkt. No. 29-2 Exhs. A-G. Karri does not object, but says that specific factual assertions within the documents should [*10] not be accepted as true when they conflict with the amended complaint. Dkt. No. 33 at 1 n.1. The Court will consider the documents, but does not take judicial notice of any disputed facts. *See Khoja v.*

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1003 (9th Cir. 2018).

### III. Section 14(a) Claim

Karri identifies five alleged misrepresentations or omissions in the proxy statement. Dkt. No. 33-1. Karri alleges three categories of affirmatively false or misleading statements: the January and February Projections themselves; representations regarding the January and February Projections; and the valuation figures that were calculated by Jefferies from the February Projections. *See* Dkt. No. 33-1 at 2-3; Dkt. No. 20 ¶ 4. These challenged statements all go to Karri's overarching theory, which is that Oclaro's management decided to downwardly revise Oclaro's projections to secure shareholder approval of Lumentum's offer, and not based on their own good faith judgments. Karri also alleges that defendants omitted the Lumentum Forecasts from the proxy statement, and thereby "concealed a known fact that is material to the transaction." Dkt. No. 33-1 at 3; *see also* Dkt. No. 20 ¶ 5.

Defendants say that all the alleged misrepresentations are forward-looking statements that fall within the [*11] PSLRA's safe harbor provision, 15 U.S.C. § 78u-5(c). Dkt. No. 29 at 9-13; Dkt. No. 35 at 4-8. Defendants also argue that the amended complaint fails to adequately allege that the representations concerning the January and February Projections were both objectively and subjectively false when made. Dkt. No. 29 at 13-18; Dkt. No. 35 at 8-12. Finally, defendants argue that the amended complaint fails to state an actionable omission because the information from the Lumentum Forecasts was publicly disclosed by Lumentum and incorporated by reference in the proxy statement, Dkt. No. 29 at 19, and that such information is not material, *id.* at 18-20; Dkt. No. 35 at 12.

### 1. The January and February Projections

Karri's supplemental chart identifies the January and February projections themselves as false or misleading declarations of fact that render the proxy statement misleading. Dkt. No. 33-1 at 2-3 (citing Proxy at 107). Specifically, Karri alleges that these tables "led Oclaro shareholders to believe that [the] value of Oclaro and its future prospects were worse than they actually were" when compared to the December Projections. *Id.*

Karri acknowledges that the January and February

Projections qualify as forward-looking statements under [*12] the PSLRA. Dkt. No. 33 at 5, 12; *see also* 15 U.S.C. § 78u-5(i)(1)(A), (C)-(D) (defining "forward-looking statements" to include statements containing projections of various financial items or future economic performance, as well as statements regarding any assumptions underlying such statements). Even so, Karri says that the January and February Projections fall outside of the safe harbor because they were not accompanied by sufficient cautionary language. Dkt. No. 33 at 12-14.

The point is not well taken. The January and February Projections are identified as forward-looking statements, and accompanied by considerable cautionary language. *See* Dkt. No. 29 at 11-12 (citing and quoting Proxy at 69, 105-07). Consequently, the projections fit within the PSLRA's safe harbor provision. *See* 15 U.S.C. § 78u-5(c)(1)(a)(i). Defendants' motion to dismiss is granted for the January and February Projections.

### 2. Other Alleged Misrepresentations

Karri also challenges the following representations as rendering the proxy statement false or misleading:

> • "The Oclaro Projections were not prepared with a view toward public disclosure, nor were they prepared with a view toward compliance with published guidelines of the SEC or the guidelines established by the American Institute of Certified [*13] Public Accountants with respect to prospective financial information, but, in the view of Oclaro management, were prepared on a reasonable basis, reflecting the best currently available estimates and judgments at the time of their preparation." Dkt. No. 33-1 at 2 (quoting Proxy at 105).

> • "With respect to the Oclaro Forecasts, Jefferies was advised by Oclaro that such Oclaro Forecasts were reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of the management of Oclaro as to the future financial performance of Oclaro." *Id.* (quoting Proxy at 97).

> • The implied equity reference ranges per share for Oclaro that were calculated by Oclaro's financial advisor, Jefferies LLC ("Jefferies"), and derived from the significantly lower February Projections. *Id.* at 3 (citing Proxy at 100-03).

Karri says that management's decision to revise Oclaro's projections downward was driven by a desire to secure shareholder approval at the expense of sacrificing the best obtainable value of Oclaro shares. As a result, the projections were neither reasonably prepared nor based on management's good faith judgments, and the valuation figures calculated from those projections misled shareholders about Oclaro's [*14] true value.

Defendants argue that all of these statements are also covered by the safe harbor. Dkt. No. 35 at 4-7. This goes too far. The statements about the projections are not forward-looking; rather, they are statements about the preparation of, and basis for, the projections. Consequently, they do not fall within the PSLRA's safe harbor, irrespective of any attendant cautionary language. *See In re Quality Systems, Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017) ("[V]irtually no cautionary language short of an outright admission that the non-forward-looking statements were materially false or misleading would have been adequate.").

So too for the valuation figures in the proxy statement, which defendants again unsuccessfully pitch as forward-looking statements. Defendants note that these figures are labelled as estimates of Oclaro's "value as of June 30, 2018," Dkt. No. 29 at 11 (quoting Proxy at 100), but that does not make them forward-looking. The valuation figures were provided to shareholders as support for Jeffries' conclusion that the merger consideration offered by Lumentum was fair in light of the present value of their Oclaro stock. By including the valuation figures in the proxy statement, Oclaro's board was making a declaration of existing fact, namely [*15] that Jefferies' calculations based on the February Projections justified the board's recommendation that shareholders vote to approve the proposed transaction.

Defendants contend that the amended complaint does not sufficiently allege that the representations about the January and February Projections were false. Dkt. No. 35 at 8. These representations are statements of opinion, and so Karri must allege with particularity that such statements were both objectively and subjectively false when made. *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991); *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1162 (9th Cir. 2009).

The February Projections were the second downward revision to Oclaro's financial projections in as many months, and were made at a time when the company was publicly bullish about Oclaro's future. Dkt. No. 20 ¶¶ 67-74. For example, CEO Greg Dougherty made rosy statements about Oclaro's prospects during a February 5, 2018 earnings call. Dkt. No. 20 ¶¶ 67-73. Dougherty said, among other things, that Oclaro stood by its guidance from three months earlier. *Id.* ¶ 72. Such statements are hard to square with management's contemporaneous decision to make the downward revisions in the February Projections.

Contemporaneous financial community commentary also stated that Oclaro was poised for growth, [*16] *id.* ¶ 74, and that its stock was undervalued, *id.* ¶ 78. But when the merger agreement was signed about a month and a half later, the cash portion of the merger consideration was less than the initial offer, even though Oclaro's board had directed Dougherty to counter Lumentum's initial offer with an increased all-cash price per share. *Id.* ¶¶ 76-77. Financial results from after the February Projections, and before the proxy statement was disseminated, showed Oclaro's performance was at the upper end of its guidance, *id.* ¶ 82, providing further confirmation that the decision to revise Oclaro's projections did not reflect a reasonable view of Oclaro's prospects.

The amended complaint alleges that Oclaro's management provided the February Projections only to Jefferies, and not to Lumentum, *id.* ¶¶ 77, 101, and that, had Oclaro management not prepared downwardly revised projections, Jefferies' valuation figures for the merger consideration would have fallen "at the very bottom, if not outside the range of fairness," *id.* ¶ 92. Taken together, these circumstances support a plausible inference that Oclaro's management prepared the February Projections for the express purpose of justifying a [*17] low-ball offer by Lumentum, rather than pressing Lumentum to offer optimal consideration to acquire Oclaro. *Id.* ¶ 77.

In contesting falsity, defendants vigorously defend management's decision to revise Oclaro's projections in January and February 2018. Dkt. No. 29 at 13-18. While these arguments may ultimately prevail, on a motion to dismiss, the Court must make all reasonable inferences in favor of the amended complaint. For the February Projections, the amended complaint plausibly pleads objective and subjective falsity.

Defendants do not challenge materiality, for good reason. In deciding whether to vote to approve the proposed acquisition, a reasonable investor would have considered it material whether the February Projections

were reasonably prepared and based on management's good faith judgments. *See SEC v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011) (noting that how officers and directors describe information regarding a company's financial condition to investors is material); *see also Virginia Bankshares*, 501 U.S. at 1090 (citing *TSC Industries*, 426 U.S. at 449).

The falsity allegations with respect to management's representations about the January Projections are another matter. Lumentum's initial offer was made on February 15, 2018, Dkt. No. 20 ¶ 75, after the January Projections were prepared, [*18] and the January Projections were not provided to Jefferies in connection with its fairness opinion, *id.* ¶ 101. In addition, it appears that management prepared the January Projections to account for new financial results from the end of 2017, Dkt. No. 29 at 14, and another year of projected estimates, *id.* at 5. Defendants' motion to dismiss is granted for the statements about the January Projections. To be clear, dismissal is denied for the representations about the February Projections.

The motion is also denied for the valuation figures calculated from the February Projections. Because Jefferies' valuation analyses were based on the February Projections, the resulting valuation figures included in the proxy statement rendered it misleading. Dkt. No. 20 ¶¶ 101-03. The amended complaint alleges that the ultimate purpose of downwardly revising the February Projections was to obtain valuation figures that would mislead shareholders as to Oclaro's true value. *Id.* ¶¶ 77, 103. This plausibly states that the valuation figures rendered the proxy statement materially misleading.

### 3. Omission of the Lumentum Forecasts

Karri says that the Oclaro board's failure to include the Lumentum Forecasts in the proxy [*19] rendered statements touting "Lumentum's future prospects and opportunities for long-term growth" materially misleading. Dkt. No. 33-1 at 3 (quoting Proxy at 94). The amended complaint alleges that, because the Oclaro board relied on the information in the Lumentum Forecasts to evaluate the merger consideration, which consisted in part of Lumentum stock, the board had to disclose the Lumentum Forecasts in order to satisfy an obligation to make "complete and accurate disclosures concerning Lumentum." Dkt. No. 20 ¶ 112 (emphasis omitted).

This claim is dismissed. The amended complaint fails to allege with particularity how such an omission rendered anything in the proxy statement materially misleading. Its main theory is that the February Projections and resulting valuation figures undervalued Oclaro in relation to Lumentum. But the amended complaint does not allege that the Lumentum Forecasts independently distorted the analysis by overvaluing Lumentum, or even that shareholders could have discovered that Oclaro was undervalued by reviewing the Lumentum Forecasts. Consequently, the amended complaint fails to allege how disclosure of the Lumentum Forecasts would have prevented any other statement [*20] in the proxy from being materially misleading. It is equally plausible to infer that the omission of the Lumentum Forecasts had no effect on whether the proxy statement was misleading *vel non*.

In addition, the suggestion in the amended complaint that the Oclaro board relied on the Lumentum Forecasts but omitted them from the proxy statement, Dkt. No. 20 ¶¶ 5, 113, is doubtful. Lumentum's SEC filings were incorporated by reference in the proxy statement. Dkt. No. 29 at 19 (citing Proxy at 170). The amended complaint does not allege with particularity what information, if any, was included in the Lumentum Forecasts but not in Lumentum's SEC filings. Thus, the amended complaint fails to show that the Oclaro board considered any information that was not publicly available and incorporated by reference in the proxy statement.

### IV. Section 20(a) Claim

Defendants' motion to dismiss the Section 20(a) claim rests entirely on the argument that he cannot establish liability under Section 14(a) and Rule 14a-9. Dkt. No. 29 at 20; *see Dearborn Heights v. Align Tech.*, 856 F.3d 605, 623 (9th Cir. 2017) (liability under Section 20(a) requires demonstrating a primary violation of federal securities law by a control person). Because Karri has adequately alleged violations of Section 14(a) and Rule 14a-9, defendants' motion to dismiss the Section 20(a) control person liability [*21] claim is denied.

### CONCLUSION

For the dismissed claims, Karri may file by October 30, 2020, a second amended complaint that is consistent with this order. No new claims or parties may be added without the Court's prior consent.

**IT IS SO ORDERED**.

2020 U.S. Dist. LEXIS 187317, *21

Dated: October 8, 2020

/s/ James Donato

JAMES DONATO

United States District Judge

---

**End of Document**