THE HONORABLE BENJAMIN H. SETTLE

(On Reference to The Honorable J. Richard Creatura)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EVAN BROWN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

PAPA MURPHY'S HOLDINGS INC., and WELDON SPANGLER,

Defendants.

No. 19-cv-05514-BHS-JRC

DECLARATION OF JOSEPH E. BRINGMAN IN SUPPORT OF THE PAPA MURPHY'S DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

JOSEPH E. BRINGMAN declares:

1.      I am one of the attorneys with Perkins Coie LLP who represent the Papa Murphy's Defendants (Papa Murphy's Holdings Inc., and Weldon Spangler) in this action.  I make this declaration in part based on personal knowledge and in part based on review of documents and am competent to do so.

2.      Attached as Exhibit A is a true and correct copy of the cover page and page 11 of the Form 10-K of Papa Murphy's Holdings, Inc. for Fiscal Year Ended December 31, 2018 (the "2018 Form 10-K"), which I downloaded from the Securities and Exchange Commission's EDGAR website on October 20, 2020.  The full 2018 Form 10-K is available on EDGAR at https://www.sec.gov/Archives/edgar/data/1592379/000159237919000013/frsh201810k.htm  (last

DECLARATION OF JOSEPH E. BRINGMAN IN SUPPORT OF PAPA MURPHY'S DEFENDANTS MOTION TO DISMISS SECOND AMENDED COMPLAINT (No. 19-cv-05514-BHS-JRC) –1
59718-0023/LEGAL150004157.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

accessed November 1, 2020).

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED this 2nd day of November, 2020.

*s/ Joseph E. Bringman*
Joseph E. Bringman, WSBA No. 15236

DECLARATION OF JOSEPH E. BRINGMAN IN
SUPPORT OF PAPA MURPHY'S DEFENDANTS
MOTION TO DISMISS SECOND AMENDED
COMPLAINT (No. 19-cv-05514-BHS-JRC) –2
59718-0023/LEGAL150004157.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# Exhibit A

10-K 1 frsh201810k.htm FORM 10-K

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**
_____

# FORM 10-K
_____

**(Mark One)**
**[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**
**For the fiscal year ended December 31, 2018**
**OR**
**[ ] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the transition period from to**
**Commission file number 001-36432**
_____

# Papa Murphy's Holdings, Inc.
(Exact name of registrant as specified in its charter)
_____

| Delaware | 27-2349094 |
|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (IRS Employer Identification No.) |
| 8000 NE Parkway Drive, Suite 350, Vancouver, WA | 98662 |
| (Address of principal executive offices) | (Zip Code) |
| (360) 260-7272 | |
| (Registrant's telephone number, including area code) | |
| Securities registered pursuant to Section 12(b) of the Act: | |
| Common Stock, $0.01 par value | NASDAQ Global Select Market |
| (Title of Each Class) | (Name of Each Exchange on Which Registered) |
| Securities registered pursuant to Section 12(g) of the Act: | |
| NONE | |

_____

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes [ ] No [X]

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes [ ] No [X]

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [ ]

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes [X] No [ ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "accelerated filer," "large accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | |
|---|---|
| Large accelerated filer [ ] | Accelerated filer [ ] |
| Non-accelerated filer [X] | Smaller reporting company [X] |
| | Emerging growth company [X] |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [X]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes [ ]. No [X].

Table of Contents

by our exploration of strategic alternatives, our business may be disrupted and our results of operations and financial condition may be adversely affected.

***The planned refranchising of a portion of our Company-owned stores could adversely affect our results of operations.***

We have announced plans to refranchise a significant number of our 106 Company-owned stores (total as of December 31, 2018) by selling the stores and entering into franchise agreements with the buyers. We are targeting to own no more than 50 Company-owned stores by the end of 2020. Company-owned store sales accounted for 49% of our total revenues in 2018. We expect the proposed refranchising to result in a decrease in our total revenues because once the stores are refranchised we will derive revenue from the collection of a royalty equal to a percentage of net sales rather than from the total net sales of food and beverages to customers. In addition, refranchising Company-owned stores, and particularly Company-owned stores that have historically enjoyed high profit margins, may reduce our operating income.

We face many challenges associated with refranchising Company-owned stores, including identifying, recruiting, and contracting with a sufficient number of qualified franchise owners, retaining employees during the transition to franchise owner management, and obtaining necessary consents from landlords and other third parties. These challenges may delay, limit, or prevent our planned refranchising, which could materially and adversely affect our ability to improve operating margins, reduce our exposure to changes in commodity and other operating costs, and generate cash to be used to repay debt. In addition, if we fail to manage our refranchising initiative effectively, the initiative could be time-consuming and distracting for management.

***If we fail to identify, recruit, and contract with a sufficient number of qualified franchise owners, our ability to refranchise Company-owned stores and open new franchise stores could be materially and adversely affected.***

The refranchising of Company-owned stores and the opening of additional franchise stores depends, in part, upon the attractiveness of our franchise stores to prospective franchise owners and the availability of prospective franchise owners who meet our criteria. We believe that in order for our refranchising initiative to be successful, we will need to identify, recruit, and contract with qualified existing franchise owners and prospective new owners that are capable of operating multiple stores. Decreases in system-wide average store sales or comparable store sales in select markets and uncertainty regarding our exploration of strategic alternatives may reduce the attractiveness of new franchise stores to prospective franchise owners, making it more difficult for us to recruit qualified franchise owners. We may not be able to identify, recruit, or contract with suitable franchise owners in our target markets on a timely basis or at all. In addition, our franchise owners may not have access to the financial or management resources that they need to open the stores contemplated by their agreements with us, or they may elect to cease store development for other reasons. If we are unable to recruit suitable franchise owners or if franchise owners are unable or unwilling to acquire existing Company-owned stores or open new stores, our business, financial condition, and results of operations could be materially and adversely affected.

***We may be unable to refinance or generate sufficient cash flow to satisfy our outstanding debt, which would adversely affect our financial condition and results of operations.***

As of December 31, 2018, we had $82.5 million of outstanding indebtedness, including $79.5 million outstanding under our senior secured credit facilities, and $7.5 million of availability under a revolving credit facility, and we may, from time to time, incur additional indebtedness. Our obligations under our senior secured credit facility will mature in August 2020.

Our ability to meet our payment obligations under our debt depends on our ability to generate significant cash flows in the future. Interest rates on our senior secured credit facility are based on LIBOR and so increases in LIBOR would increase our payment obligations. If we are unable to generate sufficient cash flows to service our debt payment obligations, we may need to refinance or restructure our debt, sell assets, reduce or delay investments in our business, or seek to raise additional capital through the sale of equity securities. Such measures might not be successful, and additional debt or equity capital may not be available on acceptable terms or at all. If we are unable to implement one or more of these alternatives, we may be unable to meet our debt payment obligations, which would have a material adverse effect on our business, results of operations, and financial condition.

***Our indebtedness may limit our ability to invest in the ongoing needs of our business and if we are unable to comply with our financial covenants, our liquidity and results of operations could be adversely affected.***

The agreement governing our senior secured credit facilities places certain conditions on us, including that it:

- requires us to utilize a substantial portion of our cash flow from operations to make payments on our indebtedness, reducing the availability of our cash flow to fund working capital, capital expenditures, development activity, and other general corporate purposes;
- increases our vulnerability to adverse general economic or industry conditions;

11