UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EVAN BROWN, <br><br> Plaintiff, <br><br> v. <br><br> PAPA MURPHY'S HOLDINGS INCORPORATED, *et al.*, <br><br> Defendants. | CASE NO. 3:19-cv-05514-BHS-JRC <br><br> REPORT AND RECOMMENDATION <br><br> NOTED FOR: January 29, 2021 |

This matter has been referred to the undersigned by the District Court. *See* Dkt. 6. Before the Court is defendants' second motion to dismiss. Dkt. 41.

In his second amended complaint, plaintiff alleges that defendants Papa Murphy's Holdings, Inc. ("Papa Murphy's") and Weldon Spangler (collectively "defendants") violated Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(e), 78(a), by making allegedly materially false and misleading statements contained in a Recommendation Statement made in connection with a tender offer to acquire shares of Papa Murphy's. *See* Dkt 36, at 1–2. Plaintiff alleges that the Recommendation Statement was

REPORT AND RECOMMENDATION - 1

materially false and misleading as to Papa Murphy's financial projections, the value of Papa Murphy's shares, and fairness of the tender offer consideration. *See id.* at 2.

Having reviewed the parties' submissions related to defendants' second motion to dismiss (*see* Dkts. 41, 42, 44), the Court finds that plaintiff has stated a plausible claim under Section 14(e) against defendants. The Court further finds that plaintiff has also stated a plausible claim against defendant Spangler under Section 20(a). Therefore, the Court recommends that defendants' second motion to dismiss (Dkt. 41) be denied.

## PLAINTIFF'S REQUEST TO STRIKE

Pursuant to Local Civil Rule ("LCR") 7(g), plaintiff requests that this Court strike or exclude defendants' reference to Papa Murphy's 2018 Form 10-K ("Form 10-K"), a publicly available document, in their reply brief in support of the motion to dismiss (*see* Dkts. 44, at 10; 45, at 4–5 (copy of the referenced exhibit)). *See* Dkt. 46. Plaintiff asserts that defendants' citation to Form 10-K, which is not referenced in plaintiff's second amended complaint (*see* Dkt. 36), is an attempt to improperly dispute plaintiff's factual allegations and claims against defendants. Dkt. 46, at 2.

Generally, a district court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are limited exceptions to this rule: (1) a court may consider material properly submitted as a part of the complaint; (2) a court may consider documents not physically attached to the pleading if the contents are alleged in the complaint and no party questions the authenticity; and (3) under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record. *Id.* at 688–89. Accordingly, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary

judgment. But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotations omitted). The Ninth Circuit has cautioned that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* at 998–99 ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently plausible claim for relief." (internal citations omitted)).

In this case, defendants appear to offer Form 10-K for the purpose of rebutting plaintiff's factual allegations regarding the materially false and misleading nature of certain valuation projections because the projections were inconsistent with Papa Murphy's positive financial trends and strong growth prospects pursuant to a refranchising plan. *See* Dkt. 36, at 12, 16; 44, at 10–11. Although the Court may take judicial notice of matters of public record, the Court declines to take notice of Form 10-K because it is offered as a competing theory against plaintiff's second amended complaint. *See Khoja*, 899 F.3d at 999. Further, it is not necessary for the Court to take judicial notice of Form 10-K in order to resolve the issues presented in defendants' second motion to dismiss.

## BACKGROUND

Plaintiff Evan Brown, a former Papa Murphy's shareholder, initiated this putative class action in June 2019. *See* Dkt. 1. Following defendants' first motion to dismiss (Dkt. 25), which the Court granted with leave to amend (Dkt. 35), plaintiff filed the now operative second amended complaint. *See* Dkt. 36.

In his second amended complaint, plaintiff alleges that defendants violated Sections 14(e) and 20(a) of the Exchange Act. *See* Dkt. 36, at 1. Plaintiff alleges that his claims arise in connection with the tender offer by MTY Food Group Inc. ("MTY"), used to acquire all of the issued and outstanding Papa Murphy's shares. *Id.* at 1–2.

Plaintiff alleges that on April 10, 2019, Papa Murphy's entered into an agreement and plan of merger with MTY, pursuant to which Papa Murphy's shareholders would receive $6.45 in cash for each common stock share ("Merger Consideration"). Dkt. 36, at 2. Plaintiff alleges that on April 25, 2019, defendants authorized the filing of the Recommendation Statement with the SEC. *Id.*; *see also* Dkt. 27-1 (copy of the Recommendation Statement). Plaintiff alleges that the Recommendation Statement was "materially false and misleading with respect to Papa Murphy's financial projections, the value of shareholders' shares, and the fairness of the Merger Consideration." Dkt. 36, at 2.

Specifically, plaintiff alleges that defendants engaged a financial advisor in connection with the MTY merger and that the financial advisor "created a downwardly revised set of projections" ("Base Case Projections"), which were "unreasonably" lower than Papa Murphy's management's significantly higher projections ("Management Case Projections"). Dkt. 36, at 2. Plaintiff alleges that the Base Case Projections were used in conjunction with the MTY merger evaluation analysis and in support of the financial advisor's fairness opinion, which were filed with the Recommendation Statement. *Id.* Plaintiff alleges that without defendants' use and endorsement of the Base Case Projections, the Merger Consideration would not have been fair to Papa Murphy's shareholders. *See id.* at 3, 21.

Plaintiff alleges that defendants knew that the Management Case Projections were the "best estimates" for Papa Murphy's future performance and valuation and that defendants knew

that the financial advisor only used the "meaningfully lower" Base Case Projections in rendering a fairness opinion to support the unfair MTY merger. Dkt. 36, at 4. Plaintiff alleges that defendant Spangler, as Papa Murphy's director and Chief Executive Officer ("CEO"), "knew Papa Murphy's business and financial prospects better than anyone else" and that he was involved in preparing the Management Case Projections, yet defendant Spangler and Papa Murphy's "negligently" allowed the materially misleading Base Case Projections to be included in the Recommendation Statement. *Id.* at 4–6, 24. Plaintiff alleges that defendants' inclusion of the Base Case Projections, as well as defendants' endorsement thereof, "deceived" Papa Murphy's shareholders regarding the fairness of the Merger Consideration. *Id.* at 6.

Plaintiff asserts that the "material misrepresentations in the Recommendation Statement misled Papa Murphy's shareholders to tender their shares into the undervalued [t]ender [o]ffer." Dkt. 36, at 24. Plaintiff alleges that shareholders were "harmed millions of dollars in the aggregate" and that the "materially misleading Recommendation Statement caused Papa Murphy's shareholders to forfeit and not enforce their appraisal rights." *Id.*

## MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). To avoid dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). Where, however, a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. A claim is plausible on its face when "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court must accept as true all factual allegations—but not legal conclusions—when reviewing whether a complaint survives a motion to dismiss under Rule 12(b)(6). *See id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A court may dismiss a complaint as a matter of law if it lacks a cognizable legal theory or states insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## DISCUSSION

### I.  Plaintiff's Section 14(e) Claims and the PSLRA

Plaintiff's claims in this case are subject to the heightened pleading standards set forth in the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u-4(a)–(b). To state a claim under Section 14(e) and to satisfy the PSLRA, a plaintiff must plead with particularity (a) "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made upon information and belief, the complaint shall state with particularity all facts on which that belief is formed"; (b) "with respect to each act or omission . . . , facts giving rise to a strong inference that the defendant acted with the required state of mind"; and (c) "that the act or omission . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(1), (b)(2)(A), (b)(4).

#### A.  Materially False or Misleading Statements

Defendants first argue that plaintiff fails to adequately allege any materially false or misleading statement. Dkt. 41, at 14–25. As discussed below, the Court disagrees.

1   In stating a claim under Section 14(e), plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement . . . is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). False or misleading statements are actionable only if material. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281 (9th Cir. 1982). In order to establish materiality, a plaintiff must show a substantial likelihood that the material misrepresentation would have "significantly altered the total mix of information made available" to investors. *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988). "A statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (internal citations omitted).

If a plaintiff alleges a material misrepresentation, the plaintiff must allege *both* objective and subjective falsity of the misrepresentation. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017). As is the case here, where a plaintiff alleges that an opinion, such as a recommendation statement, is a material misrepresentation, the plaintiff must allege *both* that "the speaker did not hold the belief that []he professed" (*e.g.*, the director did not believe the merger to be fair) and "that the belief is objectively untrue" (*e.g.*, the merger is not fair). *Id.* at 615–16 (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)).

In this case, plaintiff alleges that the Recommendation Statement contains the following materially false or misleading statements:

1. The Base Case Projections themselves are materially false and misleading. Dkt. 36, at 14; *see also* Dkt. 27-1, at 43 (for cited statements in the Recommendation

REPORT AND RECOMMENDATION - 7

1 Statement);

2. Statements that all Papa Murphy's Board of Directors' members, including defendant Spangler, believed that the MTY merger and Merger Consideration was fair to stockholders. *See* Dkt. 36, at 17; *see also* Dkt. 27-1, at 19, 29, 33, 43;

3. The summary of Papa Murphy's financial advisor's discounted cash flow analysis and the resulting implied equity calculated using the Base Case Projections. *See* Dkt. 36, at 17; *see also* Dkt. 27-1, at 41; and

4. Statements identifying the financial advisor's fairness opinion, which relies on the Base Case Projections, as a "material factor" supporting defendants' recommendation that the MTY merger and Merger Consideration were fair and that stockholders should accept the tender offer. Dkt. 36, at 17; *see also* Dkt. 27-1, at 29–31.

Although plaintiff identifies these allegedly materially false and misleading statements made or endorsed by defendants in the Recommendation Statement, plaintiff concedes that the false or misleading nature of the challenged statements is dependent on the falsity of the Base Case Projections. *See* Dkt. 42, at 15. Here, plaintiff alleges that defendants knew that the Base Case Projections were materially false and misleading because they were (1) significantly lower than Management Case Projections, (2) inconsistent with Papa Murphy's positive financial performance trends and strong growth prospects, and (3) used solely in connection with the MTY merger and the financial advisor's fairness opinion and not used in any other negotiations. *See* Dkt. 36, at 16–17.

Standing alone, plaintiff's allegation that the Base Case Projections must be false or misleading because they were lower than the Management Case Projections is insufficient. "[T]he fact that [a financial advisor's] fairness opinion[] differed from [a company's valuation] does not demonstrate that [either] opinion [was] objectively false. There can be more than one appropriate price." *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1146 (N.D. Cal. 2006), *aff'd*, 551 F.3d 1156 (9th Cir. 2009); *see also Ridler v. Hutchinson Tech. Inc.*, 216 F. Supp. 3d 982, 989 (D. Minn. 2016) ("[B]ecause the valuation of a company is an inherently

REPORT AND RECOMMENDATION - 8

subjective exercise, plaintiffs must point to something more than mere disagreement in order to render the share price ranges misleading.").

However, plaintiff also alleges that prior to the MTY merger announcement, Papa Murphy's was "in the midst of a significant turnaround," noting that in 2017, defendants initiated a refranchising plan that was expected to cause "temporary decreases in store sales and revenues" but that "long-term prospects would be much stronger" upon completion of the plan in 2020. Dkt. 36, at 12 (emphasis omitted). Plaintiff further alleges that between January to March 2019—several months prior to announcement of the MTY merger—Papa Murphy's stock price increased 36% and was preceded by defendant Spangler's own statements in November 2018 "heralding" third quarter financial results as a "success," that "sales trend[s] have continued to improve and are currently tracking slightly positive," and that Papa Murphy's business strategy and marketing initiatives "will drive profitable and sustainable comp [sic] sales growth in both the short and long-term." *Id.* at 12–13 (emphasis omitted). Plaintiff further identifies a February 2019 release announcing that 2018 fourth quarter and fiscal year results were "better than guidance and sales trends [were] improving." *Id.* at 13 (emphasis omitted). Plaintiff further identifies a March 2019 press release and conference call announcing "positive trending results—which exceeded previous guidance." *Id.* at 14 (emphasis omitted). Finally, plaintiff alleges that defendants used and relied upon the Management Case Projections during the entirety of the strategic review process; however, defendants failed to disclose the Base Case Projections to other potential bidders, which were used only in connection with the MTY merger. *See id.* at 4, 16–17.

Plaintiff argues that defendants' positive statements regarding Papa Murphy's prospects are hard to square with the contemporaneous decision to downwardly revise the Management

1  Case Projections and further confirm that the Base Case Projections may not reflect a reasonable
2  view of Papa Murphy's prospects.  *See* Dkts. 42, at 17–19;43, at 2–3.  In a similar case, a district
3  court denied a motion to dismiss because the alleged facts were similarly "hard to square."  *Karri*
4  *v. Oclaro, Inc.*, No. 18-CV-03435-JD, 2020 WL 5982097, at *6 (N.D. Cal. Oct. 8, 2020); *see*
5  *also In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 WL 7499375, at *6
6  (C.D. Cal. May 2, 2014) (denying motion to dismiss where downwardly revised projections were
7  contradicted by company's positive statements and improved growth prior to merger).
8  Additionally, defendants' use of the Management Case Projections, and not the Base Case
9  Projections, for all other potential bidders further supports the inference that defendants were
10 allegedly aware that the Base Case Projections were flawed or inaccurate.  *See In re Hot Topic*,
11 2014 WL 7499375, at *6.
12     Further, given defendants' alleged statements presenting a rosier view of Papa Murphy's
13 financial prospects just before announcing the MTY merger, and defendant Spangler's direct
14 involvement in preparing the Management Case Projections, it is a reasonable inference that
15 defendants did not actually believe that the Base Case Projections were reasonable or that the
16 Merger Consideration was fair to Papa Murphy's shareholders.  *See City of Dearborn Heights*,
17 856 F.3d at 615–16; *see also Lane v. Page*, 649 F. Supp. 2d 1256, 1291 (D.N.M. 2009) ("[W]hen
18 it comes to the underlying facts that will support a conclusion that a statement is objectively or
19 subjectively false, there may be significant overlap.").
20     Finally, plaintiff alleges that defendants made material misrepresentations about Papa
21 Murphy's financial condition that deceived shareholders as to the value of their shares and the
22 fairness of the Merger Consideration.  Dkt. 36, at 6.  "Information regarding a company's
23 financial condition is material to investment."  *S.E.C. v. Todd*, 642 F.3d 1207, 1221 (9th Cir.
24

2011) (citations omitted). "[H]ow officers and directors of a public corporation describe revenue growth to investors is important." *Id.* Thus, the Court finds that defendants' allegedly false and misleading statements in the Recommendation Statement are material.

Defendants argue that the difference in total projected revenue between the Management Case Projections and the Base Case Projections is at most 4.2%, which is "immaterial as a matter of law." Dkt. 41, at 26. Defendants cite to a Ninth Circuit case for the proposition that revenue differences less than 10% are not actionable. *Id.* (citing *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 514 (9th Cir. 1991)). However, the Ninth Circuit in *Convergent Technologies* did not categorically hold that only revenue differences greater than 10% are actionable. *See* 948 F.2d at 514. And, as plaintiff alleges, the overall impact of using the Base Case Projections in determining and endorsing the fairness of the MTY merger to Papa Murphy's shareholders resulted in the alleged aggregate loss of millions of dollars, which is not an immaterial sum. *See* Dkt. 36, at 23–24; *Basic*, 485 U.S. at 231–32. Therefore, the Court declines to adopt defendants' view of materiality at this point in the proceedings.

In sum, taking plaintiff's allegations as true, the alleged circumstances support a plausible inference that the Base Case Projections were unreasonably prepared in order to justify the allegedly unfair Merger Consideration. Further, the Court finds that defendants' alleged statements in the Recommendation Statement endorsing the Base Case Projections and fairness of the Merger Consideration would be material to a reasonable investor considering the MTY merger. Although defendants maintain that the Base Case Projections and their endorsement thereof were reasonable, on a motion to dismiss, the Court must make all reasonable inferences in favor of the nonmoving party—plaintiff.

Accordingly, the Court recommends denying defendants' motion to dismiss (Dkt. 41)

1  plaintiff's second amended complaint on this ground.

2  **B.  Negligence**

3  Defendants next argue that plaintiff fails to allege sufficient facts that create a strong inference that defendants acted with negligence. *See* Dkt. 41, at 28–32. The Court disagrees, as discussed below.

6  The Ninth Circuit has held that the requisite state of mind for Section 14(e) violations is negligence. *See Varjabedian v. Emulex Corp.*, 888 F.3d 399, 408 (9th Cir. 2018), *cert. dismissed*, 139 S.Ct. 1407 (2019) (per curium). Therefore, plaintiff must plead with particularity facts giving rise to a strong inference that defendants acted with negligence. 15 U.S.C. § 78u-4(b)(2)(A); *Varjabedian*, 888 F.3d at 408; *see also In re Ocera Therapeutics, Inc. Sec. Litig.*, No. 17-CV-06687-RS, 2018 WL 7019481, at *3 (N.D. Cal. Oct. 16, 2018). Additionally, under the PSLRA, a corporate officer's actions in making false or misleading statements can be imputed to his corporate employer. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015).

15  As with their first motion to dismiss (Dkt. 25), defendants again argue that under the Ninth Circuit's *Varjabedian* decision, the following negligence standard applies: "[T]he plaintiff must plead a highly unreasonable [misrepresentation or] omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." 888 F.3d at 408 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). For the same reasons discussed in this Court's prior Report and Recommendation (Dkt. 34, at 9–10, *adopted by* Dkt. 35), the Court is not convinced that the quoted language establishes the Ninth Circuit's

particularized pleading standard necessary to show negligence for Section 14(e) claims. *See also Varjabedian v. Emulex Corp.*, No. SACV 15-00554-CJC (JCGx), 2020 WL 1847708, at *10 (C.D. Cal. Feb. 25, 2020) (declining to adopt of "heightened" negligence standard and concluding that the PSLRA's "strong inference" requirement does not apply to Section 14(e) claims), *on remand from* 888 F.3d 399 (9th Cir. 2018).

However, the dispute over the applicable standard for defendants' state of mind—heightened negligence versus ordinary negligence—is immaterial. Even applying a heightened standard, requiring a highly unreasonable departure from the standards of ordinary care, the Court finds that plaintiff has sufficiently alleged a strong inference of negligence.

As discussed above, plaintiff has sufficiently alleged that defendants made materially false and misleading statements in the Recommendation Statement by including the Base Case Projections and endorsing the Merger Consideration as fair to shareholders based on those same projections. *See supra*, Section I(A). Further, plaintiff alleges that defendant Spangler knew that the Management Case Projections represented the best estimates with respect to Papa Murphy's operations and financial conditions, yet he allowed the Base Case Projections, and the fairness opinion on which the Base Case Projections were premised, to be included in the Recommendation Statement. *See* Dkt. 36, at 22. Plaintiff further alleges that despite defendant Spangler's knowledge and belief that the Base Case Projections were not accurate reflections of Papa Murphy's financial condition, defendant Spangler nonetheless endorsed the Base Case Projections and fairness of the Merger Consideration to Papa Murphy's shareholders. *See id.* at 22. Plaintiff concludes that as Papa Murphy's CEO, defendant Spangler had a duty to ensure that the Recommendation Statement did not contain materially false and misleading statements

1  and that he knowingly approved of and disseminated those false and misleading statements to
2  shareholders. *See id.*

3  A "deliberate decision" to disclose and endorse false and/or misleading information
4  "demonstrates a culpable state of mind far in excess of negligence." *Wilson v. Great Am. Indus.,*
5  *Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057,
6  1061 (9th Cir. 2000) (stating that a corporate officer should be held responsible for statements
7  made in documents signed on behalf of corporation); *Brown v. Brewer*, No. CV 06-3731-GHK
8  (SHx), 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010) ("[T]he preparation of a
9  [recommendation] statement by corporate [officers] containing materially false or misleading
10 statements . . . is sufficient to satisfy the . . . negligence standard." (citation omitted)).

11 Thus, at this stage in the proceeding and viewing the allegations in the light most
12 favorable to plaintiff, the Court finds that plaintiff has plausibly alleged a strong inference of
13 negligence based on defendant Spangler's alleged knowledge, inclusion, and endorsement of the
14 allegedly false and misleading Base Case Projections and endorsement of the allegedly unfair
15 Merger Consideration. The Court further finds that Papa Murphy's may be held responsible for
16 defendant Spangler's conduct alleged in the second amended complaint. *See In re ChinaCast*
17 *Educ. Corp.*, 809 F.3d at 476.

18 Therefore, the Court recommends denying defendants' motion to dismiss (Dkt. 41)
19 plaintiff's second amended complaint on this ground.

20        **C.**    **Loss Causation**

21 Defendants next argue that plaintiff has failed to adequately allege loss causation with
22 particularity, as required by the PSLRA. *See* Dkt. 41, at 32–25. This Court again disagrees, as
23 discussed below.

24


In stating a claim under Section 14(e), plaintiff must plead loss causation with particularity. *See* 15 U.S.C. § 78u-4(b)(4). Loss causation requires a showing that a defendant caused the loss for which plaintiff seeks to recover damages. *Id.* To prove loss causation, plaintiff need only show a "causal connection" between the alleged misleading statement and the loss by tracing the loss back to the facts about which the defendant(s) misstated. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (internal citations omitted). "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343–46 (2005)).

Here, plaintiff alleges that defendants' material misrepresentations in the Recommendation Statement were an "essential link in the consummation of the unfair [MTY] [m]erger" that "misled Papa Murphy's shareholders to tender their shares into the undervalued [t]ender [o]ffer." Dkt. 36, at 24. Plaintiff alleges that Papa Murphy's shares were "worth up to $12.34" per share and that other bidders valued the shares at a higher value than was provided in the MTY tender offer. *Id.* at 23. Plaintiff further alleges that defendants' materially misleading statements in the Recommendation Statement also "prompted Papa Murphy's shareholders to accept the unfair Merger Consideration . . . rather than recoup a greater value through appraisal remedies available" in the MTY Merger. *Id.* Plaintiff alleges that as a direct result of defendants' actions, Papa Murphy's shareholders "were impeded from making a decision on a fully formed basis" regarding the tender offer, which "misled and harmed" shareholders "millions of dollars in the aggregate." *Id.* at 24–25. Thus, plaintiff concludes that "[a]s a direct and proximate result of the dissemination of the misleading Recommendation Statement," which

defendants "used to obtain shareholder approval of the [m]eger," plaintiff "suffered damages and actual economic loss (*i.e.* the difference between the value [plaintiff] received as a result of the [t]ransaction and the true value of [the] shares)." *Id.* at 26.

In viewing the facts in the light most favorable to plaintiff, the Court finds that for the purpose of withstanding a motion to dismiss, plaintiff has sufficiently pled loss causation with particularity. *See* 15 U.S.C. §78u-4(b)(4). Plaintiff sufficiently pled with particularity that the alleged material misstatements by defendants caused plaintiff to accept the undervalued MTY tender offer, thus resulting in the alleged economic harm. *See Lloyd*, 811 F.3d at 1210. The difference between the value that plaintiff received as a result of the MTY merger and the speculative "true value" of the shares may not alone establish loss causation. *In re Ocera Therapeutics, Inc.*, 2018 WL 7019481, at *11 (stating that merely alleging "the difference between the price [] stockholders received and the 'true value' of their shares . . . is a mere legal conclusion."). However, plaintiff also alleges that another company actually assessed the value of Papa Murphy's shares at a higher value at the time of the MTY merger *and* that Papa Murphy's Management Case Projections reflected significantly higher projections in the company's financial performance, and that those projections were accurate, thus increasing the potential value of the company. *See id.* at 2, 23–24. Thus, taken together, plaintiff's allegations are sufficient to show that he allegedly suffered economic damages as a result of defendants alleged misrepresentations. *See Azar v. Blount Int'l, Inc.*, No. 3:16-CV-483-SI, 2017 WL 1055966, at *11 (D. Or. Mar. 20, 2017) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389 (1970) (holding that shareholders may suffer loss if "if the merger resulted in a reduction of the earnings or earnings potential of their holdings")).

1        Defendants argue that a stockholder vote was not necessary to approve the MTY merger,
2 and therefore, plaintiff's allegations that the misleading Recommendation Statement caused Papa
3 Murphy's shareholders to accept any undervalued tender offer is untenable. Dkt. 41, at 24
4 (citing Dkt. 27-1, at 4). Plaintiff counters that the cited portions of the Recommendation
5 Statement are disputed factual assertions that should not be accepted as true on a motion to
6 dismiss and that putative class members would have withdrawn support of the MTY merger had
7 they not been misled by the Recommendation Statement. *See* Dkt. 42, at 34. Even accepting
8 that a shareholder vote may not have been necessary upon issuance of the Recommendation
9 Statement, the issue remains regarding whether shareholders would have declined or withdrawn
10 support of the tender offer but for defendants' allegedly false and misleading statements.
11 Therefore, the Court does not find defendants' argument persuasive.

12       Defendants also argue that defendant Spangler's alleged negligence could not have
13 caused approval of the Recommendation Statement or the MTY merger without majority
14 approval of other Papa Murphy's directors. Dkt. 41, at 34–35. However, despite plaintiff's
15 choice to omit other Papa Murphy's directors as defendants, plaintiff has sufficiently alleged
16 with particularity that defendant Spangler's allegedly false and misleading statements in the
17 Recommendation Statement caused shareholders to accept the allegedly undervalued Merger
18 Consideration and forfeit appraisal rights. *See* Dkt. 36, at 24. Thus, at this stage, plaintiff has
19 plausibly alleged that defendant Spangler's actions caused the loss complained of in the second
20 amended complaint. *See Mineworkers' Pension Scheme*, 881 F.3d at 753 (stating that a plaintiff
21 "simply" need "adequately plead[] a causal connection between the material misrepresentation
22 and the loss." (internal quotation omitted)).

1     In sum, taking plaintiff's allegations as true, it is plausible that defendants' alleged

2 material misstatements in the Recommendation Statement foreseeably caused plaintiff to accept

3 the allegedly undervalued MTY tender offer and forfeit appraisal remedies, thus resulting in

4 economic harm.  *See* Dkt. 36, at 22–25; *Mineworkers' Pension Scheme*, 881 F.3d at 754; *see also*

5 *of In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (agreeing with the Second

6 Circuit that loss causation "is a matter of proof at trial and not to be decided on a [Fed. R. Civ.

7 P.] 12(b)(6) motion to dismiss," so long as "the complaint alleges facts, that taken as true,

8 plausibly establish loss causation."  (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath*

9 *Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) (other internal citations omitted)).  Accordingly, the

10 Court recommends denying defendants' motion to dismiss plaintiff's second amended complaint

11 on this ground.

12         **D.**     **Private Right of Action**

13     Finally, defendants argue that plaintiff's second amended complaint should be dismissed

14 because there is no private right of action for negligence-based Section 14(e) claims.  Dkt. 41, at

15 36–38.

16     As previously discussed in this Court's prior Report and Recommendation (Dkt. 34, at

17 21–22), Ninth Circuit precedent clearly establishes an implied private right of action under

18 Section 14(e).  *See Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir. 1986).  And although

19 defendants again urge the Court to depart from Ninth Circuit precedent by finding that Section

20 14(e), like Section 17(a) of the Exchange Act, does not establish a private right of action for

21 claims premised on negligence, defendants fail to cite any case law adopting this position.

22 Indeed, at least one district court in this Circuit has explicitly declined to so.  *See Varjabedian*,

23 2020 WL 1847708, at *5–6; *see also Edenbrook Capital, LLC v. RhythmOne PLC*, No. 19-CV-

24

1  00615-WHO, 2019 WL 1791419, at *1 n. 1 (N.D. Cal. Apr. 24, 2019) (declining to address

2  whether there is a private right of action under Section 14(e)).

3        Again, while the Court finds some logic in defendants' argument, the Court concludes

4  that it will not disturb Ninth Circuit precedent that plaintiff does indeed have a private right of

5  action under Section 14(e). *See Plaine*, 797 F.2d at 718. Accordingly, the Court recommends

6  denying defendants' motion to dismiss plaintiff's second amended complaint on this ground

7      **II.**    **Section 20(a) Claim against Defendant Spangler**

8        Section 20(a) of the Exchange Act provides for joint and several liability of "controlling

9  persons" where an underlying securities law violation is found. *See* 15 U.S.C. § 78t(a). To

10  establish a cause of action under Section 20(a), a plaintiff must prove (1) a primary violation of

11  underlying securities laws; and (2) that the defendant exercised power or control over the

12  primary violator. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014); *see also*

13  *Varjabedian*, 888 F.3d at 401 (stating that because a plaintiff's Section 14(e) claim survives, his

14  claim under Section 20(a) also remains). "Whether [a defendant] is a controlling person is an

15  intensely factual question, involving scrutiny of the defendant's participation in the day-to-day

16  affairs of the corporation and the defendant's power to control corporate actions." *Howard*, 228

17  F.3d at 1065 (internal citations omitted). "[I]t is not necessary to show actual participation or the

18  exercise of actual power;" however, a defendant is entitled to a defense that he "acted in good

19  faith and did not directly or indirectly induce" the alleged securities law violations. *Id.*

20        As discussed above, plaintiff has plausibly alleged a primary violation of Section 14(e).

21  *See supra*, Section I(A); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1052. Additionally, plaintiff

22  alleges that as Papa Murphy's CEO, defendant Spangler had "direct and supervisory

23  involvement in the day-today operations of the Company, and . . . had the power to control and

24

influence" the MTY merger.  Dkt. 36, at 27.  Plaintiff further alleges that defendant Spangler exercised his power and influence to control the content and dissemination of the allegedly false and misleading statements contained in the Recommendation Statement.  *See id.* at 26–27.  Taken together, plaintiff has plausibly alleged that defendant Spangler violated the PLSRA's Section 20(a).  *See* 15 U.S.C. § 78t(a); *In re NVIDIA Corp.*, 768 F.3d 1046 at 1052.

Accordingly, the Court recommends denying defendants' motion to dismiss (Dkt. 41) plaintiff's second amended complaint on this ground.

## CONCLUSION

For the reasons set forth above, the Court recommends that defendants' motion to dismiss (Dkt. 41) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 29, 2021,** as noted in the caption.

Dated this 12th day of January, 2021.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20