# Exhibit B

# SUPREME COURT
# OF THE UNITED STATES

IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - - - -

EMULEX CORPORATION, ET AL.,          )

        Petitioners,          )

           v.          ) No. 18-459

GARY VARJABEDIAN, ET AL.,          )

        Respondents.          )

- - - - - - - - - - - - - - - - - - - -

Pages:  1 through 76

Place:  Washington, D.C.

Date:  April 15, 2019

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
www.hrccourtreporters.com

Official Subject to Final Review

1

IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - - -

EMULEX CORPORATION, ET AL.,            )

                Petitioners,           )

                v.                     ) No. 18-459

GARY VARJABEDIAN, ET AL.,              )

                Respondents.           )

- - - - - - - - - - - - - - - - - - -


                Washington, D.C.

             Monday, April 15, 2019


        The above-entitled matter came on for

oral argument before the Supreme Court of the

United States at 11:04 a.m.


APPEARANCES:

GREGORY G. GARRE, ESQ., Bethesda, Maryland;

    on behalf of the Petitioners.

MORGAN L. RATNER, Assistant to the Solicitor General,

    Department of Justice, Washington, D.C.;

    for the United States, as amicus curiae,

    in support of neither party.

DANIEL L. GEYSER, ESQ., Dallas, Texas;

    on behalf of the Respondents.


                Heritage Reporting Corporation

Official Subject to Final Review

2

                    C O N T E N T S

ORAL ARGUMENT OF:                              PAGE:

GREGORY G. GARRE, ESQ.

    On behalf of the Petitioners                 3

ORAL ARGUMENT OF:

MORGAN L. RATNER, ESQ.

    For the United States,

    as amicus curiae, in support of

    neither party                               28

ORAL ARGUMENT OF:

DANIEL L. GEYSER, ESQ.

    On behalf of the Respondents                39

REBUTTAL ARGUMENT OF:

GREGORY G. GARRE, ESQ.

    On behalf of the Petitioners                71

Heritage Reporting Corporation

Official Subject to Final Review

28

part of this Court that interpreting Section 14(e) to go all the way to negligence, which would be unprecedented in the 50-year history here, would result in the dumping of information, would be -- ultimately be counterproductive.

And I would ask this Court to reserve the remainder of my time.

CHIEF JUSTICE ROBERTS: Thank you, counsel.

Ms. Ratner.

ORAL ARGUMENT OF MORGAN L. RATNER
FOR THE UNITED STATES, AS AMICUS CURIAE,
IN SUPPORT OF NEITHER PARTY

MS. RATNER: Mr. Chief Justice, and may it please the Court:

Section 14(e) does cover negligent misrepresentations, but it does not authorize private enforcement.

JUSTICE SOTOMAYOR: Even if we find a private cause of action, Mr. Garre says that you didn't answer that question in your brief. So assume we were to find an implied cause of action. Would you still say it covers negligence?

Heritage Reporting Corporation

Official Subject to Final Review

39

and 14(e) in terms of their enforceability, but that's an anomaly as a result of Sandoval.

Thank you.

CHIEF JUSTICE ROBERTS:  Thank you, counsel.

Mr. Geyser.

ORAL ARGUMENT OF DANIEL L. GEYSER
ON BEHALF OF THE RESPONDENTS

MR. GEYSER:  Thank you, Mr. Chief Justice, and may it please the Court:

Although we submit only one question is properly presented, this entire dispute can be resolved looking to this Court's usual tools of statutory construction and the text, context, purpose, and history of Section 14(e).

As for the culpability standard, scienter is not required under the plain words that Congress chose for this statute or this Court's decisions construing materially indistinguishable language in 17(a) in Aaron, and even in Ernst & Ernst itself, where it said that a standalone reading of Rule 10b-5 would, in fact, support a negligence standard.

As for the private right of action, this case presents the exceptionally rare

Heritage Reporting Corporation

situation where Congress unmistakably intended this very statute to be privately enforceable, despite not including an express private remedy.

CHIEF JUSTICE ROBERTS: Well, we -- we now know that that was not the right approach, right, in Borak?

MR. GEYSER: Well, Borak was on --

CHIEF JUSTICE ROBERTS: Borak would not be decided the same way today.

MR. GEYSER: Borak may not be decided the same way today, but, again, our position is not rooted in Borak at all. We -- we agree that Sandoval rejected Borak's method, and we're not trying to revive it.

We're looking specifically at the usual tools of construction.

And my friend suggested today, he agrees that Congress -- this was, I believe, a direct quote -- Congress transplanted the text of Rule 10b-5 into Section 14(e). That's undisputed in this case.

And it's a traditional rule of construction that when Congress uses words that have a settled legal meaning --

CHIEF JUSTICE ROBERTS:  Right.  But, I mean, the -- the Borak basis, in other words, from today's perspective, what we did back then was a mistake.  And it's one thing to say, well, it's -- it's done, you know, don't necessarily overrule it just because you view it differently now, but there's certainly -- a strong argument could be made that you shouldn't repeat the mistake, you shouldn't carry it.  You shouldn't expand it, even if you would have made that same decision back under the -- I think as Justice Scalia called it -- the ancien regime.

MR. GEYSER:  Exactly, Your Honor.  And if our position was that you should imply the exact Borak -- Borak methodology because this falls in Section 14(t), then I would agree with you and we should lose.  That is not our position at all.

Our position is that, if you look at Congress's intent, and as Cannon confirmed, the question is not whether Congress was correct. It's how did they perceive the state of the law at the time?

JUSTICE KAVANAUGH:  But it wasn't the

Official Subject to Final Review

42

statute. It was the -- the rule language, and, you know, this type of provision is used in multiple places where it's not been recognized to create a private right of action.

So how do you respond to those arguments on the other side?

MR. GEYSER: So, for -- looking first to the fact that this came from a rule, I don't think that -- I think that is a distinction without a difference. I don't know why that would matter.

If the question is did that rule have a settled legal meaning at the time that Congress decided to use those exact words, and looking at this Court's decision in Herman and -- and MacLean, the Court said, by 1969, 10 of the 11 courts of appeals said that Section 10(b) and Rule 10b-5 were privately enforceable.

So Congress, understanding the existing state of law in 1968, those were within one year of the Williams Act passage, would have understood well that the -- that Rule 10b-5 was considered to be privately enforced.

Heritage Reporting Corporation

Official Subject to Final Review

43

JUSTICE KAVANAUGH: Well, we usually look -- to pick up on the Chief Justice's point, we look at the text of the statute these days, and if it's not a private cause of action, we're not overruling ones that recognize private rights of action before, but we're not expanding it either.

Central Bank makes that clear and Sandoval and lots -- lots of other cases.

MR. GEYSER: We -- we fully agree, Justice Kavanaugh. The question is looking at the text of this statute, this is a traditional tool --

JUSTICE KAVANAUGH: There's no -- just to state the obvious, there's no private right of action in the text.

MR. GEYSER: Exactly. And if you look at United States versus Kwai Fun Wong, the Court was unanimous. There was no -- there was no statement anywhere whether that particular language is jurisdictional or not. But, as both Justice Alito's dissent and Justice Kagan's majority opinion confirmed, when Congress uses words that have been attributed as having jurisdictional significance, then

Official Subject to Final Review

44

Congress is understood to import that same significance, have the same meaning and the same effect in the new provision.

CHIEF JUSTICE ROBERTS:  But it's not just a question of Congress's words or even Congress's intent.  It goes to the authority of the courts to engage in the sort of fundamental law-making enterprise that inferring a private cause of action involves.

In other words, the reason we do it differently is not because we have any different view on the tools of congressional intent.  It's because we have a different view on the appropriate limits on our authority.

And I don't know why if we exceeded those limits, you know, back in the -- the bad old days, why -- why we should feel free to exceed those limits today?

MR. GEYSER:  Mr. Chief Justice, I think exceeding the court's limit is doing something Congress did not intend.  The ultimate lodestar for Sandoval was, what is the statutory intent?

And I don't think that Sandoval said that you throw out all tools of construction,